# EXHIBIT D

STATE COURT OF COBB COUNTY
STATE OF GEORGIA

KIM HILL and ADAM HILL, surviving :
children and Co-Administrators of the :
Estates of Melvin Hill and Voncile Hill, :
deceased, :
                                    :

       Plaintiffs, :
                                   :    CIVIL ACTION FILE NO.:
v.                            :        14A3455-3
                                   :
FORD MOTOR COMPANY, COOPER :
TIRE & RUBBER COMPANY, THE PEP :
BOYS-MANNY, MOE & JACK (Inc.), :
CURTIS CLINTON THOMPSON, JR., :
WILLIE BRASWELL, and DONALD :
TAYLOR, :
                                   :
       Defendants. :

**FILED** IN THIS OFFICE
THIS 14 DAY OF Sept, 2015

*Angie J. Davis*

Clerk, State Court of Cobb County

---

## STIPULATED SHARING AND NON-SHARING PROTECTIVE ORDER

---

       In order to preserve and maintain the confidentiality of certain confidential, commercial

and/or proprietary documents and information produced or to be produced by FORD MOTOR

COMPANY ("Ford") in this action, it is ordered that:

       1.    Documents to be produced by Ford in this litigation that contain confidential,

commercially sensitive and/or proprietary information shall hereafter be referred to as "Protected

Documents." A document or portion of a document that Ford determines in good faith to be a

Protected Document may be designated as confidential by marking or placing the applicable

notice "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential,"

or substantially similar language on media containing Protected Documents, on the document

itself, or on a copy of the document, in such a way that it does not obscure the text or other

content of the document.

2.     As used in this Order, the term "documents" means all written material, videotapes and all other tangible items, produced in whatever format (e.g., hard copy, electronic, digital, etc.) and on whatever media (e.g., hard copy, videotape, computer diskette, CD-ROM, DVD, hard drive or otherwise).

3.     Any document or any information designated as "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential," or substantially similar language in accordance with the provisions of this Order shall only be used, shown or disclosed as provided in this Order.  However, nothing in this Order shall limit a party's use or disclosure of his or her own information designated as Confidential Material.

4.     If a party disagrees with the "Protected" designation of any document, the party will so notify Ford in a written letter, within 60 days of receipt of the confidential documents and information, identifying the challenged document(s) with specificity, including Bates-number(s) where available.  If the parties are unable to resolve the issue of confidentiality regarding the challenged document(s), Ford will thereafter timely apply to the Court to set a hearing for the purpose of establishing that the challenged document(s) is/are confidential.  Any document so marked as "Protected" will continue to be treated as such pending determination by the Court as to its confidential status.

5.     Protected Documents and any copies thereof received pursuant to paragraph 8 below shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, and shall be used only for preparation for the trial of this matter, subject to the limitations set forth herein.

6.     The following Volvo documents, which contain trade secrets or other confidential research, development and commercial information, are subject to the provisions contained

2

herein.   Except as otherwise indicated, all Volvo documents designated as "Confidential,"
"Subject to Protective Order," or words to that effect, and corresponding testimony, shall be
Protected Documents and be given confidential treatment as described herein.

a.  Roof Strength Related to Weight Volvo XC90, page 30-012 of Binder 4.
References FKB & Test Report 270720 (bates numbers: FKB = VLVl
0346-0437, Test 270720 = VLVl 0438-0457).

b.  Chart: FMVSS 216 Plot Comparison 1997-2007 Ford Econoline v. Volvo
XC90, page 30-024 of Binder 4. Uses data from Test Report 270720
(bates numbers Test 270720 = VLVl 0438-0457).

c.  Slides entitled "According to a Volvo document," and "According to a
Volvo Test Report," pages 30-198 to 30-204 of Binder 4. These
documents all contain pages from Volvo's protected FKB or Volvo's
protected test reports (bates numbers: FKB = VLVl 0346-0437, Test
256272 = VLVl 0253-0274, Test 258834 = VLVl 0275-0291, Test 260663
= VLVl 0229-0252, Test 261760 = VLVl 0203-0228, Test 262279 = VLVl
0292-0313, Test 270720 = VLVl 0438-0457).

d.  FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

e.  P28 Drop Test. Test No 003051. 4 August 2000, bates numbered VCC4
0050-0054.

f.  Dynamic drop-test of a Volvo S80, Test No. 003035, bates numbered
VLVl 0229-0252.

g.  XC90 Rollover. 8 May 2003, bates numbered VCC4 0048-0049.

h.     Volvo P28 S3-1 CAE analyses of rollover drop test. 1 April 2001 - 5 August 2002, bates numbered VL V 1 0314-0345.

i.     Volvo Inverted Drop Test Video.m2v, bates numbered VL V 1 1866.

j.     Pages from Volvo's Confidential "Crashworthiness FKB," pages 30-206 to 30-217 of Binder 4, bates numbered VL V 1 0346-043 7.

k.     Test report 256272, pages 30-219 to 30-240 of Binder 4, bates numbered VLVl 0253-0274.

l.     Test report 258834, pages 30-242 to 30-258 of Binder 4, bates numbered VLVl 0275-0291.

m.     Test report 260663, pages 30-260 to 30-283 of Binder 4, bates numbered VL V 1 0229-0252.

n.     P28 drop test, pages 30-285 to 30-292 of Binder 4, bates numbered VCC4 0050-0057.

o.     Test report 261760, pages 30-294 to 30-319 of Binder 4, bates numbered VLVl 0203-0228.

p.     Test report 262279, pages 30-321 to 30-342 of Binder 4, bates numbered VLVl 0292-0313.

q.     "Volvo P28 S3:1 MU2, S022, and Test 003051 and R2831 –CAE Analyses of Rollover Drop Test," pages 30-344 to 30-375 of Binder 4, bates numbered VL V 1 0314-0345.

r.     Test report 270720, pages 30-390 to 30-396 of Binder 4, bates numbered VLVl 0438-0444.

s.     Volvo Technical Report LM-135581, bates numbered 004629-004896.

t.     1992 Rollover Advanced Engineering Study, bates numbered VLV2 0213-0251.

u.     1992 Rollover Advanced Engineering Study in Swedish bates numbered VL V 1 1872-1911.

v.     TF Rollover MU 1997 bates numbered VL V 4 0001-0026.

w.     TF Rollover MU 1997 in Swedish bates numbered VL V 1 0664-0689.

x.     Volvo P28 S3:1 CAE Analysis of Rollover Drop Test bates numbered VLVl 0314-0345.

y.     FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

z.     FKB Complete Vehicle P28, bates numbered VL V 1 0346-043 7.

aa.    Test Report 260663, bates numbered VLVl 0229-0252.

bb.    Test Report 256272, bates numbered VLVl 0253-0274.

cc.    Test Report 258834, bates numbered VLVl 0275-0291.

dd.    Test Report 262279, bates numbered VLVl 0292-0313.

ee.    Test Report 270720, bates numbered VLVl 0438-0444

ff.    Rollover, bates numbered VCC4 0009-0021.

gg.    Memo from Ehrs re Report re Volvo Cars Safety Centre, bates numbered VCC6 0339-0341.

hh.    Test Report 262279, bates numbered VLVl 0292-0313.

ii.    Test Report 256272, bates numbered VLVl 0253-0274.

jj.    Test Report 258834, bates numbered VLVl 0275-0291

7.     If Ford or Volvo learns of other trade secret or proprietary Volvo documents in the Possession of Plaintiffs' counsel or expert, Ford and Volvo reserve the right to seek protection of those documents and corresponding testimony under this Order.

8.      Protected Documents shall be disclosed only to "Qualified Persons."   Qualified Persons are limited to:

  a.      Counsel of Record for the parties, and the parties;

  b.      Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

  c.      Experts and non-attorney consultants retained by the parties for the preparation and/or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford; and

  d.      The Court, the Court's staff, witnesses, and the jury in this case; and

  e.      With respect to documents designated as "Sharing" or "Subject to Protective Order," attorneys representing Plaintiff(s) and the experts and non-attorney consultants retained by such attorneys in other cases pending against Ford involving a 1999-2007 Ford F-250, F-350, F-450, or F-550 involved in a rollover with claims that the roof or restraint system were defective, provided no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

9.      Counsel for all parties in this case must make reasonable efforts to ensure the individuals described in paragraphs 8(c) and 8(e) above are Qualified Persons.

10.      Before receiving access to any Protected Document or the information contained therein, each person described in paragraphs 8(c) and 8(e) above shall execute a "Written Assurance" in the form contained in Exhibit A, attached hereto.   Counsel for all parties in this case shall retain each such executed Written Assurance and shall keep a list identifying (a) all

persons described in paragraphs 8(c) and 8(e) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons. In the event that Ford seeks to compel the production of each unredacted and executed Exhibit A for good cause, Counsel for all parties in this case shall submit each unredacted and executed Exhibit A and list to the Court for *in camera* inspection. Persons described in paragraph 8(b) shall be covered under the signature of Counsel of Record.

11. As the Protected Documents may only be distributed to Qualified Persons, Plaintiff's/Plaintiffs' Counsel, and all persons described in paragraph 8 above, may not post Protected Documents on any website or internet accessible document repository and shall not under any circumstance sell, offer for sale, advertise, or publicize either the Protected Documents and the Confidential information contained therein or the fact that such persons have obtained Ford's Protected Documents and Confidential information.

12. To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.

13. All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed under seal pursuant to local court practice or in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of the action to which it pertains, an indication of the nature of the contents of such sealed envelope or other container, the phrase "Subject to Protective Order" or "Subject To Non-Sharing Protective Order," and a statement substantially in the following

form: "This envelope or container shall not be opened without order of the Court, except by officers of the Court and counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container."

14.     Any court reporter or transcriber who reports or transcribes testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

15.     To the extent Ford is requested to produce documents it has determined should not be subject to the sharing provision of this protective order in paragraph 8(e), Ford will designate such documents as "Non-Sharing." Documents designated as "Non-Sharing" shall not be shared under paragraph 8(e).

16.     With respect to Protected Documents designated as "Non-Sharing," within one hundred and twenty (120) days after the conclusion of this case, counsel for the parties who received Protected Documents, including any documents that any such party disclosed to any person described in paragraph 8(c) above, shall either (a) return to Ford the Protected Documents; or (b) securely destroy the Protected Documents and certify such destruction to Ford within one hundred and fifty (150) days after the conclusion of this case.

17.     With respect to documents designated as "Sharing" or "Subject to Protective Order," Counsel for the parties shall not be required to return the Protected Documents to Ford after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

18.    Inadvertent or unintentional production of documents or information containing confidential information that should have been designated as Protected Document(s) shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

19.    The parties may disclose and produce responsive documents to each other in this litigation, and seek to do so without risking waiver of any attorney-client privilege, work product or other applicable privilege or protection.  As such, the parties will adhere to the following procedures with regard to the production of privileged or protected material, should that occur:

a.    The production of documents (including both paper documents and electronically stored information or "ESI") subject to protection by the attorney-client and/or work product doctrine or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the producing party notifies the receiving party, in writing, of the production after its discovery of the same.

b.    If the producing party notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party.  The producing party will provide a privilege log providing information required by the Georgia Civil Practice Act and applicable case law to the receiving party at the time the producing party provides the receiving party notice of the Identified Materials.  If the receiving party has any notes or other work product

9

reflecting the contents of the Identified Materials, the receiving party will not review or use those materials unless a court later designates the Identified Materials as not privileged or protected.

c.    The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents.  The receiving party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents have been designated by a court as not privileged or protected.

d.    The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made.  The receiving party must take reasonable steps to retrieve the Identified Materials if the receiving party disclosed the Identified Materials before being notified.

e.    If any receiving party is in receipt of a document from a producing party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production of that document so that the producing party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Stipulation and Order.

f.    The party returning the Identified Materials may move the Court for an order compelling production of some or all of the Identified Material

returned or destroyed, but the basis for such motion may not be based on the fact or circumstances of the production.

g.     The disclosure of Identified Materials in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding.

20.    In the event that a party produces a document without a confidentiality designation as permitted by this Order, the following procedures shall apply:

a.     The producing party shall, within fourteen (14) days of the discovery of the disclosure, notify the other party in writing.  The party receiving such notice shall promptly destroy the document, including any copies it has, or return the document on request of the producing party.  Within ten (10) days after such document is returned or its destruction certified, the producing party will produce a new version of any such document that was returned or destroyed, which will contain the appropriate confidentiality designation.

b.     If the receiving party disputes the producing party's claim of confidentiality, that party may move the Court to challenge the confidential designation in accordance with Paragraph 4 of this Order.  If the receiving party elects to file such a motion, the receiving party may retain possession of the document, but shall treat it in accordance with the terms of the Protective Order pending resolution of the motion.  If the receiving party's motion is denied, the parties shall promptly comply with Paragraph 20(a) of this Order.

c.       The production of such document does not constitute a waiver of any claim of confidentiality as set forth in this order or any other matter in any other jurisdiction, unless otherwise ordered by the Court.

21.     This Protective Order may not be waived, modified, abandoned or terminated, in whole or part, except by an instrument in writing signed by the parties.  If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

22.     After termination of this litigation, the provisions of this Order shall continue to be binding.  This Court retains and shall have jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

23.     This Protective Order shall be binding upon the parties in this case, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

James E. Butler, Jr., Esq.
Georgia Bar No. 099625
Brandon L. Peak, Esq.
Georgia Bar No. 141605
Morgan E. Duncan, Esq.
Georgia Bar No. 159929
BUTLER WOOTEN CHEELEY & PEAK, LLP
105 13th Street
Post Office Box 2766
Columbus, Georgia 31902

DATED: July 8              , 2015.

12

_(signature)_            DATED: _(signature)_ July 9 _____, 2015.

Michael R. Boorman, Esq.
Georgia Bar No. 067798
David A. Terry, Esq.
Georgia Bar No. 051508
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street NE
Suite 950
Atlanta, Georgia 30309
**_Attorneys for Defendant Ford_**
**_Motor Company_**

So Ordered, this _14th_ day of _September_, 2015.

_(signature)_ Irma B Glover

Honorable Irma Glover
Judge, State Court of Cobb County

**IN THE STATE COURT OF GWINNETT COUNTY**
**STATE OF GEORGIA**

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

17 MAR 20 PM 3: 02

RICHARD ALEXANDER, CLERK

KIM HILL and ADAM HILL, surviving           :
children and Co-Administrators of the        :
Estates of Melvin Hill and Voncile Hill,     :
deceased,                                     :
                                             :
        Plaintiffs,                          :
                                             :        CIVIL ACTION FILE NO.:
v.                                           :        16 C 04179-2
                                             :
FORD MOTOR COMPANY, THE PEP                  :
BOYS-MANNY, MOE & JACK (Inc.),               :
CURTIS CLINTON THOMPSON, JR.,                :
WILLIE BRASWELL, and DONALD                  :
TAYLOR,                                      :
                                             :
        Defendants.                          :
                                             :

---

## STIPULATED SHARING AND NON-SHARING PROTECTIVE ORDER

---

In order to preserve and maintain the confidentiality of certain confidential, commercial and/or proprietary documents and information produced or to be produced by FORD MOTOR COMPANY ("Ford") in this action, it is ordered that:

1.      Documents to be produced by Ford in this litigation that contain confidential, commercially sensitive and/or proprietary information shall hereafter be referred to as "Protected Documents."  A document or portion of a document that Ford determines in good faith to be a Protected Document may be designated as confidential by marking or placing the applicable notice "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential," or substantially similar language on media containing Protected Documents, on the document itself, or on a copy of the document, in such a way that it does not obscure the text or other content of the document.

2.      As used in this Order, the term "documents" means all written material, videotapes and all other tangible items, produced in whatever format (e.g., hard copy, electronic, digital, etc.) and on whatever media (e.g., hard copy, videotape, computer diskette, CD-ROM, DVD, hard drive or otherwise).

3.      Any document or any information designated as "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential," or substantially similar language in accordance with the provisions of this Order shall only be used, shown or disclosed as provided in this Order.  However, nothing in this Order shall limit a party's use or disclosure of his or her own information designated as Confidential Material.

4.      If a party disagrees with the "Protected" designation of any document, the party will so notify Ford in a written letter, within 60 days of receipt of the confidential documents and information, identifying the challenged document(s) with specificity, including Bates-number(s) where available.  If the parties are unable to resolve the issue of confidentiality regarding the challenged document(s), Ford will thereafter timely apply to the Court to set a hearing for the purpose of establishing that the challenged document(s) is/are confidential.  Any document so marked as "Protected" will continue to be treated as such pending determination by the Court as to its confidential status.

5.      Protected Documents and any copies thereof received pursuant to paragraph 8 below shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, and shall be used only for preparation for the trial of this matter, subject to the limitations set forth herein.

6.      The following Volvo documents, which contain trade secrets or other confidential research, development and commercial information, are subject to the provisions contained

2

herein. Except as otherwise indicated, all Volvo documents designated as "Confidential," "Subject to Protective Order," or words to that effect, and corresponding testimony, shall be Protected Documents and be given confidential treatment as described herein.

a.  Roof Strength Related to Weight Volvo XC90, page 30-012 of Binder 4. References FKB & Test Report 270720 (bates numbers: FKB = VLVI 0346-0437, Test 270720 = VLVI 0438-0457).

b.  Chart: FMVSS 216 Plot Comparison 1997-2007 Ford Econoline v. Volvo XC90, page 30-024 of Binder 4. Uses data from Test Report 270720 (bates numbers Test 270720 = VLV1 0438-0457).

c.  Slides entitled "According to a Volvo document," and "According to a Volvo Test Report," pages 30-198 to 30-204 of Binder 4. These documents all contain pages from Volvo's protected FKB or Volvo's protected test reports (bates number: FKB = VLV1 0346-0437, Test 256272 = VLV1 0253-0274, Test 258834 = VLV1 0275-0291, Test 260663 = VLV1 0229-0252, Test 261760 = VLV1 0203-0228, Test 262279 = VLV1 0292-0313, Test 270720 = VLV1 0438-0457).

d.  FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

e.  P28 Drop Test. Test No. 003051. 4 August 2000, bate numbered VCC4 0050-0054.

f.  Dynamic drop-test of a Volvo S80, Test No. 003035, bates numbered VLV1 0229-0252.

g.  XC90 Rollover. 8 May 2003, bates numbered VCC4 0048-0049.

h.  Volvo P28 S3-1 CAE analyses of rollover drop test. 1 April 2001- 5 August 2002, bates number VLV1 0314-0345.

i.  Volvo Inverted Drop Test Video.m2v, bates numbered VLV1 1866.

j.  Pages from Volvo's Confidential "Crashworthiness FKB," pages 30-206 to 30-217 of Binder 4 bates numbered VLV1 0346-0437.

k.  Test report 256272, pages 30-219 to 30-240 of Binder 4, bates numbered VLV1 0253-0274.

l.  Test report 258834, pages 30-242 to 30-258 of Binder 4, bates numbered VLV1 0275-0291.

m.  Test report 260663, pages 30-260 to 30-283 of Binder 4, bates numbered VLV1 0229-0252.

n.  P28 drop test, pages 30-285 to 30-292 of Binder 4, bates numbered VCC4 0050-0057.

o.  Test report 261760, pages 30-294 to 30-319 of Binder 4, bates numbered VLV1 0203-0228.

p.  Test report 262279, pages 30-321 to 30-342 of Binder 4, bates numbered VLV1 0292-0313.

q.  "Volvo P28 S3:1 MU2, S022, and Test 003051 and R2831 — CAE Analyses of Rollover Drop Test," pages 30-344 to 30-375 of Binder 4, bates numbered VLV1 0314-0345.

r.  Test report 270720, pages 30-390 to 30-396 of Binder 4, bates numbered VLV1 0438-0444.

s.  Volvo Technical Report LM-135581, bates numbered 004629-004896.

t.    1992 Rollover Advanced Engineering Study, bates numbered VLV2 0213- 0251.

u.    1992 Rollover Advanced Engineering Study in Swedish bates numbered VLV1 1872-1911.

v.    TF Rollover MU 1997 bates numbered VLV4 0001-0026.

w.    TF Rollover MU 1997 in Swedish bates numbered VLV1 0664-0689.

x.    Volvo P28 S3:1 CAE Analysis of Rollover Drop Test bates numbered VLVI 0314-0345.

y.    FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

z.    FKB Complete Vehicle P28, bates numbered VLV1 0346-0437.

aa.    Test Report 260663, bates numbered VLVI 0229-0252.

bb.    Test Report 256272, bates numbered VLVI 0253-0274.

cc.    Test Report 258834, bates numbered VLV1 0275-0291.

dd.    Test Report 262279, bates numbered VLV1 0292-0313.

ee.    Test Report 270720, bates numbered VLVI 0438-0444.

ff.    Rollover, bates numbered VCC4 0009-0021.

gg.    Memo from Ehrs re Report re Volvo Cars Safety Centre, bates numbered VCC6 0339-0341.

hh.    Test Report 262279, bates numbered VLVI 0292-0313.

ii.    Test Report 256272, bates numbered VLV1 0253-0274.

jj.    Test Report 258834, bates numbered VLV1 0275-0291.

7.     If Ford or Volvo learns of other trade secret or proprietary Volvo documents in the Possession of Plaintiffs' Counsel or expert, Ford and Volvo reserve the right to seek protection of those documents and corresponding testimony under this Order.

8.     Protected Documents shall be disclosed only to "Qualified Persons." Qualified Persons are limited to:

      a.     Counsel of Record for the parties, and the parties;

      b.     Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

      c.     Experts and non-attorney consultants retained by the parties for the preparation and/or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford; and

      d.     The Court, the Court's staff, witnesses, and the jury in this case; and

      e.     With respect to documents designated as "Sharing" or "Subject to Protective Order," attorneys representing Plaintiff(s) and the experts and non-attorneys consultants retained by such attorneys in other cases pending against Ford involving a 1999-2007 Ford F-250, F-350, F-450, or F-550 involved in a rollover with claims that the roof or restraint system were defective, provided no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

9.     Counsel for all parties in this case must make reasonable efforts to ensure the individuals described in paragraphs 8(c) and 8(e) above are Qualified Persons.

10.    Before receiving access to any Protected Document or the information contained therein, each person described in paragraphs 8(c) and 8(e) above shall execute a "Written Assurance" in the form contained in Exhibit A, attached hereto. Counsel for all parties in this case shall retain each such executed Written Assurance and shall keep a list identifying (a) all persons described in paragraphs 8(c) and 8(e) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons. In the event that Ford seeks to compel the production of each unredacted and executed Exhibit A  for good cause, Counsel for all parties in this case shall submit each unredacted and executed Exhibit A and list to the Court for *in camera* inspection. Persons described in paragraph 8(b) shall be covered under the signature of Counsel of Record.

11.    As the Protected Documents may only be distributed to Qualified Persons, Plaintiff's/Plaintiffs' Counsel, and all persons described in paragraph 8 above, may not post Protected Documents on any website or internet accessible document repository and shall not under any circumstance sell, offer for sale, advertise, or publicize either the Protected Documents and the Confidential information contained therein or the fact that such persons have obtained Ford's Protected Documents and Confidential information.

12.    To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.

7

13.     All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed under seal pursuant to local court practice or in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of the action to which it pertains, an indication of the nature of the contents of such sealed envelope or other container, the phrase "Subject to Protective Order," or "Subject To Non-Sharing Protective Order," and a statement substantially in the following form:  "This envelope or container shall not be opened without order of the Court, except by officers of the Court and counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container."

14.     Any court reporter or transcriber who reports or transcribes testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

15.     To the extent Ford is requested to produce documents it has determined should not be subject to the sharing provision of this protective order in paragraph 8(e), Ford will designate such documents as "Non-Sharing." Documents designated as "Non-Sharing" shall not be shared under paragraph 8(e).

16.     With respect to Protected Documents designated as "Non-Sharing," within one hundred and twenty (120) days after the conclusion of this case, counsel for the parties who received Protected Documents, including any documents that any such party disclosed to any person described in paragraph 8(c) above, shall either (a) return to Ford the Protected

Documents; or (b) securely destroy the Protected Documents and certify such destruction to Ford within one hundred and fifty (150) days after the conclusion of this case.

17.    With respect to documents designated as "Sharing" or Subject to Protective Order," Counsel for the parties shall not be required to return the Protected Documents to Ford after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

18.    Inadvertent or unintentional production of documents or information containing confidential information that should have been designated as Protected Documents(s) shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

19.    The parties may disclose and produce responsive documents to each other in this litigation, and seek to do so without risking waiver of any attorney-client privilege, work product or other applicable privilege or protection.  As such, the parties will adhere  to the following procedures with regard to the production of privileged or protected  material, should that occur:

        a.    The production of documents (including both paper documents and electronically stored information or "ESI") subject to protection by the attorney-client and/or work product doctrine or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the producing party notifies the receiving party, in writing, of the production after its discovery of the same.

        b.    If producing party notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials")

9

have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party. The producing party will provide a privilege log providing information required by the Georgia Civil Practice Act and applicable case law to the receiving party at the time the producing party provides the receiving party notice of the Identified Materials. If the receiving party has any notes or other work product reflecting the contents of the Identified Materials, the receiving party will not review or use those materials unless a court later designates the Identified Materials as not privileged or protected.

c.    The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents. The receiving party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents have been designated by a court as not privileged or protected.

d.    The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made. The receiving party must take reasonable steps to retrieve the Identified Materials if the receiving party disclosed the Identified Materials before being notified.

e.    If any receiving party is in receipt of a document from a producing party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production of that document so that the producing party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Stipulation and Order.

f.    The party returning the Identified Materials may move the Court for an order compelling production of some or all of the Identified Material returned or destroyed, but the basis for such motion may not be based on the fact or circumstances of the production.

g.    The disclosure of Identified Materials in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding.

20.    In the event that a party produces a document without a confidentiality designation as permitted by this Order, the following procedures shall apply:

a.    The producing party shall, within fourteen (14) days of the discovery of the disclosure, notify the other party in writing. The party receiving such notice shall promptly destroy the document, including any copies it has, or return the document on request of the producing party. Within ten (10) days after such document is returned or its destruction certified, the producing party will

11

produce a new version of any such document that was returned or destroyed, which will contain the appropriate confidentiality designation.

b.  If the receiving party disputes the producing party's claim of confidentiality, that party may move the Court to challenge the confidential designation in accordance with Paragraph 4 of this Order. If the receiving party elects to file such a motion, the receiving party may retain possession of the document, but shall treat it in accordance with the terms of the Protective Order pending resolution of the motion. If the receiving party's motion is denied, the parties shall promptly comply with Paragraph 20(a) of this Order.

c.  The production of such document does not constitute a waiver of any claim of confidentiality as set forth in this order or any other matter in any other jurisdiction, unless otherwise ordered by the Court.

21.  This Protective Order may not be waived, modified, abandoned or terminated, in whole or part, except by an instrument in writing signed by the parties. If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

22.  After termination of this litigation, the provisions of this Order shall continue to be binding. This Court retains and shall have jurisdiction over the parties and recipients of the

Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

23.     This Protective Order shall be binding upon the parties in this case, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representative, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

_James E. Butler, Jr., Esq._                                    DATED:       March 13, 2017
James E. Butler, Jr., Esq.
Georgia Bar No. 099625
(signed with express permission by Audrey K. Berland)
Brandon L. Peak, Esq.
Georgia Bar No. 141605
David T. Rohwedder, Esq.
Georgia Bar No. 104056
Christopher B. McDaniel, Esq.
Georgia Bar No. 101357
BUTLER WOOTEN CHEELEY & PEAK, LLP
105 13th Street
Post Office Box 2766
Columbus, Georgia 31902

Michael G. Gray, Esq.
Georgia Bar No. 306282
WALKER, HULBERT, GRAY & MOORE, LLP
909 Ball Street
P.O. Box 1770
Perry, Georgia 31069

Gerald Davidson, Jr.
Georgia Bar No. 206600
MAHAFFEY PICKENS TUCKER LLP
1550 North Brown Road, Suite 125
Lawrenceville, Georgia 30043

*Attorneys for Plaintiff*

13

DATED:     March 13, 2017.

Michael R. Boorman, Esq.
Georgia Bar No. 067798
Audrey K. Berland, Esq.
Georgia Bar No. 591485
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street NE
Suite 950
Atlanta, Georgia 30309

Paul F. Malek, Esq.
*Admitted Pro Hac Vice*
D. Alan Thomas, Esq.
*Admitted Pro Hac Vice*
HUIE, FERNAMBUCQ & STEWART, LLP
2801 Highway 280 South, Ste. 200
Birmingham, Alabama 35223-2484

Michael W. Eady, Esq.
*Admitted Pro Hac Vice*
THOMPSON COE COUSINS & IRONS
701 Brazos, Suite 1500
Austin, Texas 78701

J. Randolph Evans, Esq.
Georgia Bar No. 252336
DENTONS
303 Peachtree Street NE
Suite 5300
Atlanta, Georgia 30308
***Attorneys for Defendant Ford***
***Motor Company***

So Ordered, this _20_ day of _March_____, 2017

The Honorable Shawn F. Bratton
Judge, State Court of Gwinnett County

14