# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION**

JAMES EDWARD ("Dusty") BROGDON, Jr.,   *
as Executor of the Estate of Debra Sue Mills,   *
deceased, and JAMES EDWARD BROGDON, Jr.,   *
and RONALD BRIAN ("Rusty") BROGDON,   *
Individually and as surviving children of   *   CIVIL ACTION FILE
Debra Sue Mills,   *
  *   NO. 4:23-cv-00088-CDL
and   *
  *
JAMES EDWARD BROGDON, Jr.,   *
as Executor of the Estate of Herman Edwin Mills,   *
deceased, and JASON EDWIN MILLS,   *
Individually and as surviving child   *
of Herman Edwin Mills,   *
  *
  *
         Plaintiffs,   *
  *
  *
v.   *
  *
FORD MOTOR COMPANY,   *
  *
  *
         Defendant.   *

**<u>JOINT MOTION FOR PROTECTIVE ORDER</u>**

Pursuant to Mr. Gunn's August 10, 2023 instructions via email, the parties file this their

Joint Motion for Protective Order. Attached as Exhibit A is a copy of Plaintiffs' proposed

confidentiality order with Ford's explanation of reasons for opposition to provisions therein.

Attached as Exhibit B is a copy of Ford's proposed protective order with Plaintiffs' explanation

of reasons for opposition to provisions therein.

Respectfully submitted this 17th day of August, 2023.

<u>s/James E. Butler, Jr.</u>
James E. Butler, Jr.

BUTLER PRATHER LLP
105 13th Street
P.O. Box 2766
Columbus, GA 31902
Telephone:  706-322-1990
Facsimile:  706-323-2962
jim@butlerprather.com

*s/Elizabeth B. Wright*
Elizabeth B. Wright
*Admitted Pro Hac Vice*
THOMPSON HINE LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
elizabeth.wright@thompsonhine.com

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| JAMES EDWARD ("Dusty") BROGDON, Jr., | * | |
| as Executor of the Estate of Debra Sue Mills, | * | |
| deceased, and JAMES EDWARD BROGDON, Jr., | * | |
| and RONALD BRIAN ("Rusty") BROGDON, | * | |
| Individually and as surviving children of | * | CIVIL ACTION FILE |
| Debra Sue Mills, | * | |
| | * | NO. 4:23-cv-00088-CDL |
| and | * | |
| | * | |
| JAMES EDWARD BROGDON, Jr., | * | |
| as Executor of the Estate of Herman Edwin Mills, | * | |
| deceased, and JASON EDWIN MILLS, | * | |
| Individually and as surviving child | * | |
| of Herman Edwin Mills, | * | |
| | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| | * | |
| v. | * | |
| | * | |
| FORD MOTOR COMPANY, | * | |
| | * | |
| | * | |
| Defendant. | * | |

**STIPULATED CONFIDENTIALITY ORDER**

**Ford's General Objections to Plaintiffs' Proposed Order:**

Ford's proposed Protective Order is modeled after, and nearly identical to, the Protective

Order this Court entered in February 2023 in *Christian v. Ford* (Case No. CV-4:22-CV-00062-

CDL; Doc. 24), another automotive products liability case.  Ford's proposed Protective Order is

also strikingly similar to the one agreed to by Plaintiffs' counsel here when they represented the

Plaintiffs in *Hill v. Ford*, a case they have referenced repeatedly throughout this case (both when

the *Hill* case was in Cobb County and again after they dismissed it and refiled it in Gwinnett

1

County).  (*See* **Exhibit 1**, Stipulated Protective Orders from *Hill v. Ford*).  Plaintiffs' Counsel admitted as much in email correspondence when discussing the Protective Order to be entered in this case.  (*See* **Exhibit 2**, July 28, 2023 Email from Jim Butler, "[The *Christian* Protective Order] appears to be much like the PO Ford obtained in *Hill v. Ford*").

Thus, when Ford sought to provide the Court here with an agreed Protective Order, it looked to (1) an order this Court recently entered in another product liability case involving Ford, and (2) an order Plaintiffs' Counsel twice agreed to in another case involving "similar" allegations against Ford.  Plaintiffs' counsel's proposed Protective Order in this case, however, is radically different than both the Order this Court entered in *Christian* and the one Plaintiffs' counsel twice agreed to in *Hill*.  Most notably, Plaintiffs' proposed Protective Order here provides for wholesale, unfettered sharing of all confidential documents produced in this case with other "plaintiffs attorneys and expert witnesses" for use in unspecified "litigation" against Ford.  And further, Plaintiffs' proposed Protective Order strips, at trial and even before trial, the protections bestowed upon confidential documents by allowing for their unconditional use "for any appropriate purpose at trial or other hearing, subject to evidentiary objections, if any, and for any legitimate purpose during discovery."

Good cause exists here for entry of Ford's proposed Protective Order to govern the use of ***confidential*** documents Ford produces in this case; Ford's proposed Protective Order is not over-reaching and does not cover all documents produced.  The global automotive industry is among the most highly competitive industries in the world.  Thus, dissemination of information beyond those permitted by Ford's proposed Protective Order would likely cause untold financial harm to Ford.  *See Seattle Times Co. v Rhinehart*, 467 U.S. 20, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1984) at 35-36; ("The prevention of the abuse that can attend the coerced production of information under

a state's discovery rule is sufficient justification for the authorization of protective orders."). Certain documents and other materials concerning the research, design, and development of certain technologies of Ford vehicles contain highly confidential and proprietary trade secret information, including testing data and related materials generated as part of ongoing development and research efforts that are exclusive to Ford and its licensees, that will greatly impact the companies' competitive advantage in their industries. Ford has invested significant time and money over many years to develop the information and processes described in these documents.

Many documents Ford will produce are commercially sensitive, contain trade secrets, would be invaluable to many of Ford's competitors, and would cause irreparable injury to Ford if publicly disseminated. This proprietary information is still used today and is valuable to Ford, both as its property and because its competitors lack access to it. Ford has gone to great lengths to protect this information and these documents from widespread dissemination and to keep this information secret.

Ford's proposed Protective Order should be entered because it permits production of these documents in such a way as to protect Ford's legitimate interests in the documents and the information they contain, while allowing Plaintiffs access to such documents to prosecute their claims. Plaintiffs will still get *all* of the documents for this case, and this is *not* an attempt in any way to preclude the production of documents. Ford simply wants to protect the release of its proprietary documents outside of this case, to protect its competitive advantage in the industry. Ford's proposed Order will safeguard Ford – *at no cost to these Plaintiffs* – from unauthorized disclosure of Ford's proprietary and commercially sensitive business information.

It is hereby stipulated and agreed by and between the respective parties hereto and their counsel and ordered by the Court, that

3

1. This Stipulated Confidentiality Order ("Order") governs the production and handling of documents, testimony, interrogatory responses and other information (collectively "discovery materials") produced by the parties in connection with this lawsuit.

2. A party producing discovery materials in response to a discovery request (hereinafter the "Producing Party"), may designate as "Confidential" any discovery materials which it in good faith believes to contain commercially sensitive or proprietary information. The Producing Party shall mark, label, or stamp the document as "CONFIDENTIAL" on the face of the document. The "Confidential" stamp will not obliterate or obfuscate any information on the document.

3. Notwithstanding the designation of discovery materials as "Confidential," the restrictions of this Confidentiality Order shall not apply to discovery materials that are:

(a) Otherwise publicly available; or

(b) Provided to one or more of the parties from a source other than the Producing Party, provided that such source did not:

      (i) Receive the discovery materials in question or the information contained therein under any confidentiality or other restriction; or

      (ii) Fail to provide the discovery material in question or the information contained therein under such applicable confidentiality restrictions.

4. In the event that a party to this agreement objects to or disagrees with the Producing Party's designation of any item as confidential and subject to this Confidentiality Order, that party shall send a written notice to counsel for the Producing Party specifying the item(s) in question. Should the parties fail to reach agreement, the Producing Party must, within thirty (30) days of receiving a written notice specifying the documents or information in question, file a

4

Motion to Preserve Confidential Status. Any item in dispute shall continue to be treated as confidential and subject to this Order until such time as the Court rules that it is not. Should the designating party fail to file, within thirty (30) days of receiving such written notice, a motion with the Court to preserve the confidential status of such document or information, the document or information shall be deemed not confidential. It will be the burden of the Producing Party to prove that such items are entitled to confidentiality and/or protection.

5. Designation of a portion of a deposition transcript (including exhibits) as confidential shall be made by a statement to such effect on the record in the course of the deposition or, within thirty (30) days after receipt of the deposition transcript, counsel for the Producing party shall identify by page and line number the specific portion of the transcript or material that the Producing party intends to designate as confidential or subject to this Confidentiality Order in a written letter served to all counsel of record. During those thirty days, the entire deposition transcript, including exhibits, shall be deemed confidential. However, all deposition transcripts or portions thereof designated as confidential or subject to this Confidentiality Order shall be subject to the challenge provisions set forth above in Section 4 of this Confidentiality Order.

6. Designation of discovery materials produced in a non-paper media or electronic form (e.g. video or audio recordings, computer disks, computer hard drives, thumb drives, etc.) may be made by any means practicable, including producing the materials in an envelope or container marked "CONFIDENTIAL," or by making the Confidential designation in the text of a transmittal email or message accompanying a drop box containing such materials.

7. Access to all materials designated Confidential and produced for inspection or received in this lawsuit shall be limited to counsel of record for the named parties, in-house counsel and

the firms of counsel of record, including any employees of in-house counsel and/or firms of counsel of record, except as stated below.

8. Discovery materials designated as Confidential also may be disclosed to:

(a) The parties to this action, including such employees, agents and/or representatives of the parties as are necessary for the prosecution or defense of this litigation;

(b) Any expert (including both consulting and/or testifying experts);

(c) Any person testifying at a deposition or at any hearing in this litigation, provided that questioning that person about confidential materials is within the scope of F.R.C.P. 26(b)(1);

(d) Other persons who may be designated by written consent of the Producing Party or pursuant to a court order;

(e) Plaintiffs attorneys and expert witnesses involved in similar litigation against Ford Motor Company. For the purposes of this order, similar litigation means allegations of roof crush in model year 1999-2016 Ford Super Duty trucks (F250, F350, F450, and F550) resulting in injury or death.

**Ford's Objections to Section 7(e):**

Ford objects to this provision which allows for sharing of ***all*** confidential documents produced in this case. Instead, Ford should be permitted to designate all confidential documents as either "Sharing" or "Non-Sharing". Documents marked as "Sharing" may be shared with other plaintiffs' attorneys as spelled out in Section 6(f) of Ford's proposed Protective Order.

Where a plaintiff seeks to include a sharing provision in a protective order, other federal district courts in Georgia have held that the "Plaintiff bears the burden to show that dissemination of [the defendant's] confidential information is necessary." *Porter v. Tyco Healthcare Group, LP*,

6

No. 1:08-CV-1203-CC, 2008 WL 11320000, at *2 (N.D. Ga. 2008). If a plaintiff fails to meet that burden, the court should deny the request to share the produced information. *Id.* Furthermore, where there exists a lack of any information regarding the other claims, parties, or attorneys with whom the documents will be shared, "the Court has no way to determine whether the discovery in this matter is even relevant to any other cases, which is a preliminary finding this Court should make in considering whether to permit the sharing of protected discovery." *Id.* (citing *Wilk v. American Med. Assoc.*, 635 F.2d 1295, 1300 (2d Cir. 1981) (a relevance finding should be made before a court permits protected discovery to be shared with litigants in collateral proceedings); *Gil v. Ford Motor Co.*, Civil Action No. 1:06CV122, 2007 WL 2580792, at *6 (N.D. W.Va. 2007) ("The case law suggests that the court that entered the protective order should satisfy itself that the protected discovery is sufficiently relevant to the collateral litigation that a substantial amount of duplicative discovery will be avoided by modifying the protective order")).

Plaintiffs fail to meet this burden. Plaintiffs have not offered any explanation as to why the unfettered dissemination of confidential information gathered and produced in this case is warranted or appropriate. More specifically, Ford's proposed Protective Order allows for sharing of *certain* designated confidential documents, but not all. Plaintiffs have not shown why they should be allowed to share *all* of Ford's confidential documents. Further, Plaintiffs' proposed language governing the dissemination itself is equally unclear, stating that Plaintiffs are permitted to share the information with unidentified "plaintiffs' attorneys and expert witnesses" for use in unspecified "litigation" against Ford, without making clear whether "litigation" involves cases that are pending currently or future matters.

Indeed, federal courts in Georgia have rightly expressed concerns with protective orders containing sharing provisions – namely, it unduly heightens the risk that the defendant's

7

competitors will gain access to the defendant's confidential information since "the more widely confidential documents are disseminated, it becomes more likely that those documents will be released, and more difficult for the Court to enforce the terms of its protective order." *Williams v. Taser Int'l, Inc., No.* 1:06-CV-0051-RWS, 2006 WL 1835437, at *1-2 (N.D. Ga. 2006). Other Courts in this Circuit have reached similar conclusions. *See Gunson v. BMO Harris Bank, NA.*, 300 F.R.D. 581, 584 (S.D. Fla. 2014) ("The court determines that Defendants' interests to protect confidential, proprietary documents and confine their use to this litigation outweigh Plaintiffs effort to obtain discovery that could be used for other plaintiffs in other out-of-state proceedings …"); *Lohr v. Zehner*, No. 2:12CV533-MHT, 2014 WL 12742197, at *2 (M.D. Ala. 2014) ("[A]lthough plaintiffs goal to help future plaintiffs in future litigation may be laudable, he has not established that further dissemination of [the defendant's] confidential information is relevant and necessary to *this* action.") (emphasis in original); *Ginn v. Stryker Corp.*, No. 1:09-cv-01939-HGD, 2010 WL 11561215, at *1 (N.D. Ala. 2010) ("[T]he inclusion of a 'sharing' provision in the protective order is not necessary nor warranted for the purposes of this litigation, and that is the only important consideration. Attorneys in other litigation can do their own work with respect to discovery.").

Ford agrees to the sharing of certain confidential documents, but with some limitations. This is a more reasonable, narrowly tailored approach. As such, Ford asks the Court to include language in the Protective Order in this case that allows for Sharing *and* Non-Sharing of confidential documents.

(f) Any disclosure to any such persons as set forth in paragraphs (a)–(e) above shall be made only upon the following terms and conditions:

(i) Such persons must agree to abide by the terms of this Confidentiality Order as evidenced by his or her signature on the form annexed hereto as Exhibit A ("Agreement Concerning Material Covered by the Confidentiality Order"). Counsel shall maintain each executed Agreement Concerning Material Covered by the Confidentiality Order. Should anyone decline to execute the Confidentiality Agreement, the parties will work together to find an alternative means of protecting confidential information, such as redaction.

9. All discovery materials designated as Confidential shall be used by the party receiving such discovery material (hereinafter the "Receiving Party") solely for the purposes of conducting this litigation or similar litigation as defined in paragraph 8(e). The material designated Confidential may be used by either party for any appropriate purpose at trial or other hearing, subject to evidentiary objections, if any, and for any legitimate purpose during discovery. The Receiving Party and all persons acting by, through, or on behalf of the Receiving Party of material designated Confidential pursuant to the terms of this Confidentiality Order are prohibited from using such designated materials for any purpose other than for purposes of this litigation or similar litigation as defined in paragraph 8(e).

**Ford's Objections to Section 9:**

Ford objects to the language "material designated Confidential may be used by either party for any appropriate purpose at trial or other hearing, subject to evidentiary objections, if any, and for any legitimate purpose during discovery."  This language effectively erases all protections afforded by this Order to confidential documents merely by using them in discovery, at a hearing or at trial.

Plaintiffs' position here that confidential documents marked as protected lose their protected status simply by being used at a hearing or at trial is not supported by the law. Indeed, the United States Supreme Court has noted the right to access judicial records is not absolute. *See Nixon v. Warner Commc'ns,* 435 U.S. 589, 598 (1978) ("It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes…courts have refused to permit their files to serve as…sources of business information that might harm a litigant's competitive standing."). Likewise, the Georgia Supreme Court has held that trial courts may "limit access to court records if the court finds that 'the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest.'" *Savannah College of Art & Design, Inc. v. School of Visual Arts, Inc.*, 270 Ga. 791, 792 (1999) (the Court reversed a trial court's ruling that confidential documents should be open for public inspection and held that the trial court had abused its discretion by concluding that the moving party's privacy interest did not outweigh the public's interest in access to court records). More specifically, though, the type of confidential documents that Ford may seek to protect in this case have frequently been sealed by the federal district courts in Georgia. *See, e.g., Chemence Med. Prods. v. Medline Indus., Inc.*, No. 1:13–CV–500–TWT, 2015 WL 149984, at *3-6 (N.D. Ga. 2015) (granting several motions to seal excerpts and exhibits of depositions where product specifications and confidential business transactions were discussed); *Cognotion, Inc. v. Grace Hill, LLC*, CV 115-201, 2016 WL 1529904 at *1-2 (S.D. Ga. 2016) (granting motion to seal Complaint that contained confidential business information). There is no substantial justification for waiving the confidentiality of a document simply because excerpts may be shown in a courtroom at trial or during a hearing.

10

Ford has a significant interest in protecting its proprietary information and trade secrets. Potentially sealing proprietary and trade secret documents during trial will not prejudice Plaintiffs - Plaintiffs will still be able to use the documents in the furtherance of their case. However, failing to seal protected documents during trial would prejudice Ford and impair its competitive advantage. Ford recognizes the important First Amendment right to judicial records, however, the United States Supreme Court has noted that right is not absolute. *See Nixon v. Warner Commc'ns,* 435 U.S. 589, 598 (1978) ("It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes…courts have refused to permit their files to serve as…sources of business information that might harm a litigant's competitive standing.")

Indeed, this Court provides for and contemplates the sealing of confidential documents used at trial. In its Rules 16 and 26 Order [Doc. 12], the Court addresses "Orders Regarding Confidentiality", stating therein that filings "shall only be sealed from public disclosure in limited circumstances by order of the Court." Ford does not seek any protections beyond what this Court contemplates in its Rules 16 and 26 Order. Notably, following the second trial in the *Hill* case, of the dozens of exhibits tendered at that trial, Ford only sought to seal the record regarding eight exhibits. Ford was reasonable in seeking to seal a limited number of confidential documents used at trial in the *Hill* case and has no intention of doing anything different here.

It is also important to note that Plaintiffs' Counsel is merely trying to circumvent the Protective Orders entered in *Hill v. Ford*. In *Hill*, this same Plaintiffs' counsel twice agreed to a stipulated Protective Order that contained the following provision that maintains the status of protected documents even if used in depositions or at trial:

11

> To the extent that Protected Documents or information obtained
> therefrom are used in the taking of depositions and/or used as
> exhibits at trial, such documents or information shall remain subject
> to the provisions of this Order, along with the transcript pages of the
> deposition testimony and/or trial testimony dealing with, referring
> to or referencing the Protected Documents or information.

Exhibit 1, Para. 12.  That Protective Order provides a mechanism for challenging the confidential

designation of any documents designated by Ford as protected.  (Id., Para. 4).  Plaintiffs' counsel

had no qualms with raising discovery issues with Ford throughout the *Hill* litigation, yet not once

did they ever raise an issue with any of Ford's designations of confidential documents.

After the second trial in *Hill* in August 2022, Plaintiffs sought to modify the agreed-to

Protective Order to allow for free sharing of any exhibit used at trial, including sharing with the

media.  Ford opposed that Motion, which was argued in December 2022, but has not been ruled

on and remains pending.  (*See* **Exhibit 3**, Plaintiffs' Motion to Modify Protective Order, Ford's

Response to Plaintiffs' Motion, and Plaintiffs' Reply in Support of Motion).

With their refusal to agree to any Protective Order that allows for protection of confidential

documents used at a hearing or at trial in this case, Plaintiffs' Counsel's intent is clear – in the

event the Court in *Hill* denies their Motion to Modify Protective Order, they will circumvent that

ruling by obtaining an entirely different Protective Order in this case that contains no such

language.  In essence, Plaintiffs are seeking to modify the Protective Order entered in *Hill* by

having this Court enter a far less thorough Protective Order in this case that would apply to many

of the same confidential documents produced (and protected) in *Hill*.[1]  Such a maneuver is

impermissible.  *See Lohr v. Zehner*, No. 2:12CV533-MHT, 2014 WL 12742197, at *3 (M.D. Ala.

---

[1] In addition, Plaintiffs have asked that Ford enter into a Stipulation that would deem all discovery
taken and produced in *Hill* also taken and produced in this case.  Ford is willing to agree to the
Stipulation, but only if those documents are afforded the same protections in this case as they were
in *Hill*.

2014) (noting "a collateral court [does] not have jurisdiction to decide a motion to enforce or modify this court's protective order.");  *see also United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed.").

10. The inadvertent failure of a Producing Party to designate discovery materials as Confidential shall not be deemed to be a waiver of the party's right to designate such discovery materials and correct any inadvertent failure to designate any material as Confidential.

11. The production of such documents, depositions, or information shall not constitute a waiver of any privilege or other claim or right of withholding or Confidentiality that it may have.

12. Entering into, agreeing to and/or producing materials or otherwise complying with the terms of this Order shall not:

(a) Prejudice in any way the rights of the Producing Party to object to the production of documents it considers not subject to discovery; or

(b) Prejudice in any way the rights of a party to seek a determination of whether particular discovery materials should be produced.

13. No part of the restrictions imposed by this Confidentiality Order may be terminated, except by written agreement executed by counsel of record for each designating party, or by an order of the Court for good cause shown. The termination of this litigation shall not automatically terminate this Confidentiality Order.

14. The parties agree that this Confidentiality Order may be executed in a number of counterparts, each of which shall be considered an original instrument, but all of which together shall be considered one and the same instrument.

It is **SO ORDERED**, this the _____ day of _____, 2023.

_____
Clay D. Land
United States District Judge

14

## EXHIBIT A

**Agreement Concerning**
**Material Covered by the Confidentiality Order**

I, _____(Name), hereby agree to be bound by the

Confidentiality Order in this case, a copy of which has been provided to me.

Signature:_____

Printed name:_____

# Exhibit 1

STATE COURT OF COBB COUNTY
STATE OF GEORGIA

KIM HILL and ADAM HILL, surviving :
children and Co-Administrators of the :
Estates of Melvin Hill and Voncile Hill, :
deceased, :
                                   :

       Plaintiffs, :
                                     :        CIVIL ACTION FILE NO.:
v. :             14A3455-3
                                     :

FORD MOTOR COMPANY, COOPER :
TIRE & RUBBER COMPANY, THE PEP :
BOYS-MANNY, MOE & JACK (Inc.), :
CURTIS CLINTON THOMPSON, JR., :
WILLIE BRASWELL, and DONALD :
TAYLOR, :
                                     :

       Defendants. :

**FILED** IN THIS OFFICE
THIS 14 DAY OF Sept, 2015

*Angie J. Davis*

Clerk, State Court of Cobb County

---

## STIPULATED SHARING AND NON-SHARING PROTECTIVE ORDER

---

       In order to preserve and maintain the confidentiality of certain confidential, commercial

and/or proprietary documents and information produced or to be produced by FORD MOTOR

COMPANY ("Ford") in this action, it is ordered that:

       1.      Documents to be produced by Ford in this litigation that contain confidential,

commercially sensitive and/or proprietary information shall hereafter be referred to as "Protected

Documents." A document or portion of a document that Ford determines in good faith to be a

Protected Document may be designated as confidential by marking or placing the applicable

notice "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential,"

or substantially similar language on media containing Protected Documents, on the document

itself, or on a copy of the document, in such a way that it does not obscure the text or other

content of the document.

2.      As used in this Order, the term "documents" means all written material, videotapes and all other tangible items, produced in whatever format (e.g., hard copy, electronic, digital, etc.) and on whatever media (e.g., hard copy, videotape, computer diskette, CD-ROM, DVD, hard drive or otherwise).

3.      Any document or any information designated as "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential," or substantially similar language in accordance with the provisions of this Order shall only be used, shown or disclosed as provided in this Order. However, nothing in this Order shall limit a party's use or disclosure of his or her own information designated as Confidential Material.

4.      If a party disagrees with the "Protected" designation of any document, the party will so notify Ford in a written letter, within 60 days of receipt of the confidential documents and information, identifying the challenged document(s) with specificity, including Bates-number(s) where available. If the parties are unable to resolve the issue of confidentiality regarding the challenged document(s), Ford will thereafter timely apply to the Court to set a hearing for the purpose of establishing that the challenged document(s) is/are confidential. Any document so marked as "Protected" will continue to be treated as such pending determination by the Court as to its confidential status.

5.      Protected Documents and any copies thereof received pursuant to paragraph 8 below shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, and shall be used only for preparation for the trial of this matter, subject to the limitations set forth herein.

6.      The following Volvo documents, which contain trade secrets or other confidential research, development and commercial information, are subject to the provisions contained

2

herein.   Except as otherwise indicated, all Volvo documents designated as "Confidential," "Subject to Protective Order," or words to that effect, and corresponding testimony, shall be Protected Documents and be given confidential treatment as described herein.

      a.     Roof Strength Related to Weight Volvo XC90, page 30-012 of Binder 4. References FKB & Test Report 270720 (bates numbers: FKB = VLVl 0346-0437, Test 270720 = VLVl 0438-0457).

      b.     Chart: FMVSS 216 Plot Comparison 1997-2007 Ford Econoline v. Volvo XC90, page 30-024 of Binder 4. Uses data from Test Report 270720 (bates numbers Test 270720 = VLVl 0438-0457).

      c.     Slides entitled "According to a Volvo document," and "According to a Volvo Test Report," pages 30-198 to 30-204 of Binder 4. These documents all contain pages from Volvo's protected FKB or Volvo's protected test reports (bates numbers: FKB = VLVl 0346-0437, Test 256272 = VLVl 0253-0274, Test 258834 = VLVl 0275-0291, Test 260663 = VLVl 0229-0252, Test 261760 = VLVl 0203-0228, Test 262279 = VLVl 0292-0313, Test 270720 = VLVl 0438-0457).

      d.     FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

      e.     P28 Drop Test. Test No 003051. 4 August 2000, bates numbered VCC4 0050-0054.

      f.     Dynamic drop-test of a Volvo S80, Test No. 003035, bates numbered VLVl 0229-0252.

      g.     XC90 Rollover. 8 May 2003, bates numbered VCC4 0048-0049.

h.   Volvo P28 S3-1 CAE analyses of rollover drop test. 1 April 2001 - 5 August 2002, bates numbered VL V 1 0314-0345.

i.   Volvo Inverted Drop Test Video.m2v, bates numbered VL V 1 1866.

j.   Pages from Volvo's Confidential "Crashworthiness FKB," pages 30-206 to 30-217 of Binder 4, bates numbered VL V 1 0346-043 7.

k.   Test report 256272, pages 30-219 to 30-240 of Binder 4, bates numbered VLVl 0253-0274.

l.   Test report 258834, pages 30-242 to 30-258 of Binder 4, bates numbered VLVl 0275-0291.

m.   Test report 260663, pages 30-260 to 30-283 of Binder 4, bates numbered VL V 1 0229-0252.

n.   P28 drop test, pages 30-285 to 30-292 of Binder 4, bates numbered VCC4 0050-0057.

o.   Test report 261760, pages 30-294 to 30-319 of Binder 4, bates numbered VLVl 0203-0228.

p.   Test report 262279, pages 30-321 to 30-342 of Binder 4, bates numbered VLVl 0292-0313.

q.   "Volvo P28 S3:1 MU2, S022, and Test 003051 and R2831 –CAE Analyses of Rollover Drop Test," pages 30-344 to 30-375 of Binder 4, bates numbered VL V 1 0314-0345.

r.   Test report 270720, pages 30-390 to 30-396 of Binder 4, bates numbered VLVl 0438-0444.

s.   Volvo Technical Report LM-135581, bates numbered 004629-004896.

t.      1992 Rollover Advanced Engineering Study, bates numbered VLV2 0213-0251.

u.      1992 Rollover Advanced Engineering Study in Swedish bates numbered VL V 1 1872-1911.

v.      TF Rollover MU 1997 bates numbered VL V 4 0001-0026.

w.      TF Rollover MU 1997 in Swedish bates numbered VL V 1 0664-0689.

x.      Volvo P28 S3:1 CAE Analysis of Rollover Drop Test bates numbered VLVl 0314-0345.

y.      FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

z.      FKB Complete Vehicle P28, bates numbered VL V 1 0346-043 7.

aa.     Test Report 260663, bates numbered VLVl 0229-0252.

bb.     Test Report 256272, bates numbered VLVl 0253-0274.

cc.     Test Report 258834, bates numbered VLVl 0275-0291.

dd.     Test Report 262279, bates numbered VLVl 0292-0313.

ee.     Test Report 270720, bates numbered VLVl 0438-0444

ff.     Rollover, bates numbered VCC4 0009-0021.

gg.     Memo from Ehrs re Report re Volvo Cars Safety Centre, bates numbered VCC6 0339-0341.

hh.     Test Report 262279, bates numbered VLVl 0292-0313.

ii.     Test Report 256272, bates numbered VLVl 0253-0274.

jj.     Test Report 258834, bates numbered VLVl 0275-0291

7.     If Ford or Volvo learns of other trade secret or proprietary Volvo documents in the Possession of Plaintiffs' counsel or expert, Ford and Volvo reserve the right to seek protection of those documents and corresponding testimony under this Order.

8.      Protected Documents shall be disclosed only to "Qualified Persons." Qualified Persons are limited to:

a.      Counsel of Record for the parties, and the parties;

b.      Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

c.      Experts and non-attorney consultants retained by the parties for the preparation and/or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford; and

d.      The Court, the Court's staff, witnesses, and the jury in this case; and

e.      With respect to documents designated as "Sharing" or "Subject to Protective Order," attorneys representing Plaintiff(s) and the experts and non-attorney consultants retained by such attorneys in other cases pending against Ford involving a 1999-2007 Ford F-250, F-350, F-450, or F-550 involved in a rollover with claims that the roof or restraint system were defective, provided no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

9.      Counsel for all parties in this case must make reasonable efforts to ensure the individuals described in paragraphs 8(c) and 8(e) above are Qualified Persons.

10.     Before receiving access to any Protected Document or the information contained therein, each person described in paragraphs 8(c) and 8(e) above shall execute a "Written Assurance" in the form contained in Exhibit A, attached hereto. Counsel for all parties in this case shall retain each such executed Written Assurance and shall keep a list identifying (a) all

6

persons described in paragraphs 8(c) and 8(e) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons.  In the event that Ford seeks to compel the production of each unredacted and executed Exhibit A for good cause, Counsel for all parties in this case  shall submit each unredacted and executed Exhibit A and list to the Court for *in camera* inspection.  Persons described in paragraph 8(b) shall be covered under the signature of Counsel of Record.

11.     As the Protected Documents may only be distributed to Qualified Persons, Plaintiff's/Plaintiffs' Counsel, and all persons described in paragraph 8 above, may not post Protected Documents on any website or internet accessible document repository and shall not under any circumstance sell, offer for sale, advertise, or publicize either the Protected Documents and the Confidential information contained therein or the fact that such persons have obtained Ford's Protected Documents and Confidential information.

12.     To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.

13.     All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed under seal pursuant to local court practice or in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of the action to which it pertains, an indication of the nature of the contents of such sealed envelope or other container, the phrase "Subject to Protective Order" or "Subject To Non-Sharing Protective Order," and a statement substantially in the following

form: "This envelope or container shall not be opened without order of the Court, except by officers of the Court and counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container."

14.    Any court reporter or transcriber who reports or transcribes testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

15.    To the extent Ford is requested to produce documents it has determined should not be subject to the sharing provision of this protective order in paragraph 8(e), Ford will designate such documents as "Non-Sharing." Documents designated as "Non-Sharing" shall not be shared under paragraph 8(e).

16.    With respect to Protected Documents designated as "Non-Sharing," within one hundred and twenty (120) days after the conclusion of this case, counsel for the parties who received Protected Documents, including any documents that any such party disclosed to any person described in paragraph 8(c) above, shall either (a) return to Ford the Protected Documents; or (b) securely destroy the Protected Documents and certify such destruction to Ford within one hundred and fifty (150) days after the conclusion of this case.

17.    With respect to documents designated as "Sharing" or "Subject to Protective Order," Counsel for the parties shall not be required to return the Protected Documents to Ford after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

18.     Inadvertent or unintentional production of documents or information containing confidential information that should have been designated as Protected Document(s) shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

19.     The parties may disclose and produce responsive documents to each other in this litigation, and seek to do so without risking waiver of any attorney-client privilege, work product or other applicable privilege or protection.  As such, the parties will adhere to the following procedures with regard to the production of privileged or protected material, should that occur:

a.     The production of documents (including both paper documents and electronically stored information or "ESI") subject to protection by the attorney-client and/or work product doctrine or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the producing party notifies the receiving party, in writing, of the production after its discovery of the same.

b.     If the producing party notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party.  The producing party will provide a privilege log providing information required by the Georgia Civil Practice Act and applicable case law to the receiving party at the time the producing party provides the receiving party notice of the Identified Materials.  If the receiving party has any notes or other work product

9

reflecting the contents of the Identified Materials, the receiving party will not review or use those materials unless a court later designates the Identified Materials as not privileged or protected.

c.     The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents.  The receiving party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents have been designated by a court as not privileged or protected.

d.     The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made.  The receiving party must take reasonable steps to retrieve the Identified Materials if the receiving party disclosed the Identified Materials before being notified.

e.     If any receiving party is in receipt of a document from a producing party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production of that document so that the producing party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Stipulation and Order.

f.     The party returning the Identified Materials may move the Court for an order compelling production of some or all of the Identified Material

returned or destroyed, but the basis for such motion may not be based on the fact or circumstances of the production.

 g. The disclosure of Identified Materials in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding.

20. In the event that a party produces a document without a confidentiality designation as permitted by this Order, the following procedures shall apply:

 a. The producing party shall, within fourteen (14) days of the discovery of the disclosure, notify the other party in writing. The party receiving such notice shall promptly destroy the document, including any copies it has, or return the document on request of the producing party. Within ten (10) days after such document is returned or its destruction certified, the producing party will produce a new version of any such document that was returned or destroyed, which will contain the appropriate confidentiality designation.

 b. If the receiving party disputes the producing party's claim of confidentiality, that party may move the Court to challenge the confidential designation in accordance with Paragraph 4 of this Order. If the receiving party elects to file such a motion, the receiving party may retain possession of the document, but shall treat it in accordance with the terms of the Protective Order pending resolution of the motion. If the receiving party's motion is denied, the parties shall promptly comply with Paragraph 20(a) of this Order.

c.      The production of such document does not constitute a waiver of any claim of confidentiality as set forth in this order or any other matter in any other jurisdiction, unless otherwise ordered by the Court.

21.     This Protective Order may not be waived, modified, abandoned or terminated, in whole or part, except by an instrument in writing signed by the parties.  If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

22.     After termination of this litigation, the provisions of this Order shall continue to be binding.  This Court retains and shall have jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

23.     This Protective Order shall be binding upon the parties in this case, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.


_____                          DATED: July  8          , 2015.
James E. Butler, Jr., Esq.
Georgia Bar No. 099625
Brandon L. Peak, Esq.
Georgia Bar No. 141605
Morgan E. Duncan, Esq.
Georgia Bar No. 159929
BUTLER WOOTEN CHEELEY & PEAK, LLP
105 13th Street
Post Office Box 2766
Columbus, Georgia 31902

12

[signature] DATED: July 9, 2015.

Michael R. Boorman, Esq.
Georgia Bar No. 067798
David A. Terry, Esq.
Georgia Bar No. 051508
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street NE
Suite 950
Atlanta, Georgia 30309
***Attorneys for Defendant Ford Motor Company***

So Ordered, this 14th day of September, 2015.

[signature]
Honorable Irma Glover
Judge, State Court of Cobb County

IN THE STATE COURT OF GWINNETT COUNTY
STATE OF GEORGIA

FILED IN OFFICE
CLERK STATE COURT
GWINNETT COUNTY, GA

17 MAR 20 PM 3: 02

RICHARD ALEXANDER, CLERK

| | | |
|---|---|---|
| KIM HILL and ADAM HILL, surviving children and Co-Administrators of the Estates of Melvin Hill and Voncile Hill, deceased, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | CIVIL ACTION FILE NO.: |
| v. | : | 16 C 04179-2 |
| | : | |
| FORD MOTOR COMPANY, THE PEP BOYS-MANNY, MOE & JACK (Inc.), CURTIS CLINTON THOMPSON, JR., WILLIE BRASWELL, and DONALD TAYLOR, | : | |
| | : | |
| Defendants. | : | |

---

**STIPULATED SHARING AND NON-SHARING PROTECTIVE ORDER**

---

In order to preserve and maintain the confidentiality of certain confidential, commercial and/or proprietary documents and information produced or to be produced by FORD MOTOR COMPANY ("Ford") in this action, it is ordered that:

1.    Documents to be produced by Ford in this litigation that contain confidential, commercially sensitive and/or proprietary information shall hereafter be referred to as "Protected Documents." A document or portion of a document that Ford determines in good faith to be a Protected Document may be designated as confidential by marking or placing the applicable notice "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential," or substantially similar language on media containing Protected Documents, on the document itself, or on a copy of the document, in such a way that it does not obscure the text or other content of the document.

2.     As used in this Order, the term "documents" means all written material, videotapes and all other tangible items, produced in whatever format (e.g., hard copy, electronic, digital, etc.) and on whatever media (e.g., hard copy, videotape, computer diskette, CD-ROM, DVD, hard drive or otherwise).

3.     Any document or any information designated as "Subject to Non-Sharing Protective Order," "Subject to Protective Order," "Confidential," or substantially similar language in accordance with the provisions of this Order shall only be used, shown or disclosed as provided in this Order. However, nothing in this Order shall limit a party's use or disclosure of his or her own information designated as Confidential Material.

4.     If a party disagrees with the "Protected" designation of any document, the party will so notify Ford in a written letter, within 60 days of receipt of the confidential documents and information, identifying the challenged document(s) with specificity, including Bates-number(s) where available. If the parties are unable to resolve the issue of confidentiality regarding the challenged document(s), Ford will thereafter timely apply to the Court to set a hearing for the purpose of establishing that the challenged document(s) is/are confidential. Any document so marked as "Protected" will continue to be treated as such pending determination by the Court as to its confidential status.

5.     Protected Documents and any copies thereof received pursuant to paragraph 8 below shall be maintained confidential by the receiving party, his/her attorney, other representatives, and expert witnesses, and shall be used only for preparation for the trial of this matter, subject to the limitations set forth herein.

6.     The following Volvo documents, which contain trade secrets or other confidential research, development and commercial information, are subject to the provisions contained

2

herein. Except as otherwise indicated, all Volvo documents designated as "Confidential," "Subject to Protective Order," or words to that effect, and corresponding testimony, shall be Protected Documents and be given confidential treatment as described herein.

     a.    Roof Strength Related to Weight Volvo XC90, page 30-012 of Binder 4. References FKB & Test Report 270720 (bates numbers: FKB = VLVI 0346-0437, Test 270720 = VLVI 0438-0457).

     b.    Chart: FMVSS 216 Plot Comparison 1997-2007 Ford Econoline v. Volvo XC90, page 30-024 of Binder 4. Uses data from Test Report 270720 (bates numbers Test 270720 = VLV1 0438-0457).

     c.    Slides entitled "According to a Volvo document," and "According to a Volvo Test Report," pages 30-198 to 30-204 of Binder 4. These documents all contain pages from Volvo's protected FKB or Volvo's protected test reports (bates number: FKB = VLV1 0346-0437, Test 256272 = VLV1 0253-0274, Test 258834 = VLV1 0275-0291, Test 260663 = VLV1 0229-0252, Test 261760 = VLV1 0203-0228, Test 262279 = VLV1 0292-0313, Test 270720 = VLV1 0438-0457).

     d.    FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

     e.    P28 Drop Test. Test No. 003051. 4 August 2000, bate numbered VCC4 0050-0054.

     f.    Dynamic drop-test of a Volvo S80, Test No. 003035, bates numbered VLV1 0229-0252.

     g.    XC90 Rollover. 8 May 2003, bates numbered VCC4 0048-0049.

h.  Volvo P28 S3-1 CAE analyses of rollover drop test. 1 April 2001- 5 August 2002, bates number VLV1 0314-0345.

i.  Volvo Inverted Drop Test Video.m2v, bates numbered VLV1 1866.

j.  Pages from Volvo's Confidential "Crashworthiness FKB," pages 30-206 to 30-217 of Binder 4 bates numbered VLV1 0346-0437.

k.  Test report 256272, pages 30-219 to 30-240 of Binder 4, bates numbered VLV1 0253-0274.

l.  Test report 258834, pages 30-242 to 30-258 of Binder 4, bates numbered VLV1 0275-0291.

m.  Test report 260663, pages 30-260 to 30-283 of Binder 4, bates numbered VLV1 0229-0252.

n.  P28 drop test, pages 30-285 to 30-292 of Binder 4, bates numbered VCC4 0050-0057.

o.  Test report 261760, pages 30-294 to 30-319 of Binder 4, bates numbered VLV1 0203-0228.

p.  Test report 262279, pages 30-321 to 30-342 of Binder 4, bates numbered VLV1 0292-0313.

q.  "Volvo P28 S3:1 MU2, S022, and Test 003051 and R2831 — CAE Analyses of Rollover Drop Test," pages 30-344 to 30-375 of Binder 4, bates numbered VLV1 0314-0345.

r.  Test report 270720, pages 30-390 to 30-396 of Binder 4, bates numbered VLV1 0438-0444.

s.  Volvo Technical Report LM-135581, bates numbered 004629-004896.

4

t.    1992 Rollover Advanced Engineering Study, bates numbered VLV2 0213- 0251.

u.    1992 Rollover Advanced Engineering Study in Swedish bates numbered VLV1 1872-1911.

v.    TF Rollover MU 1997 bates numbered VLV4 0001-0026.

w.    TF Rollover MU 1997 in Swedish bates numbered VLV1 0664-0689.

x.    Volvo P28 S3:1 CAE Analysis of Rollover Drop Test bates numbered VLVI 0314-0345.

y.    FKB Complete Vehicle P2X, bates numbered VCC2 2059-2127.

z.    FKB Complete Vehicle P28, bates numbered VLV1 0346-0437.

aa.    Test Report 260663, bates numbered VLVI 0229-0252.

bb.    Test Report 256272, bates numbered VLVI 0253-0274.

cc.    Test Report 258834, bates numbered VLV1 0275-0291.

dd.    Test Report 262279, bates numbered VLV1 0292-0313.

ee.    Test Report 270720, bates numbered VLVI 0438-0444.

ff.    Rollover, bates numbered VCC4 0009-0021.

gg.    Memo from Ehrs re Report re Volvo Cars Safety Centre, bates numbered VCC6 0339-0341.

hh.    Test Report 262279, bates numbered VLVI 0292-0313.

ii.    Test Report 256272, bates numbered VLV1 0253-0274.

jj.    Test Report 258834, bates numbered VLV1 0275-0291.

7.      If Ford or Volvo learns of other trade secret or proprietary Volvo documents in the Possession of Plaintiffs' Counsel or expert, Ford and Volvo reserve the right to seek protection of those documents and corresponding testimony under this Order.

8.      Protected Documents shall be disclosed only to "Qualified Persons." Qualified Persons are limited to:

        a.      Counsel of Record for the parties, and the parties;

        b.      Non-technical and clerical staff employed by Counsel of Record and involved in the preparation and trial of this action;

        c.      Experts and non-attorney consultants retained by the parties for the preparation and/or trial of this case, provided that no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford; and

        d.      The Court, the Court's staff, witnesses, and the jury in this case; and

        e.      With respect to documents designated as "Sharing" or "Subject to Protective Order," attorneys representing Plaintiff(s) and the experts and non-attorneys consultants retained by such attorneys in other cases pending against Ford involving a 1999-2007 Ford F-250, F-350, F-450, or F-550 involved in a rollover with claims that the roof or restraint system were defective, provided no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford.

9.      Counsel for all parties in this case must make reasonable efforts to ensure the individuals described in paragraphs 8(c) and 8(e) above are Qualified Persons.

10.     Before receiving access to any Protected Document or the information contained therein, each person described in paragraphs 8(c) and 8(e) above shall execute a "Written Assurance" in the form contained in Exhibit A, attached hereto. Counsel for all parties in this case shall retain each such executed Written Assurance and shall keep a list identifying (a) all persons described in paragraphs 8(c) and 8(e) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons. In the event that Ford seeks to compel the production of each unredacted and executed Exhibit A for good cause, Counsel for all parties in this case shall submit each unredacted and executed Exhibit A and list to the Court for *in camera* inspection. Persons described in paragraph 8(b) shall be covered under the signature of Counsel of Record.

11.     As the Protected Documents may only be distributed to Qualified Persons, Plaintiff's/Plaintiffs' Counsel, and all persons described in paragraph 8 above, may not post Protected Documents on any website or internet accessible document repository and shall not under any circumstance sell, offer for sale, advertise, or publicize either the Protected Documents and the Confidential information contained therein or the fact that such persons have obtained Ford's Protected Documents and Confidential information.

12.     To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.

7

13.     All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed under seal pursuant to local court practice or in a sealed envelope or other appropriate sealed container on which shall be endorsed the title of the action to which it pertains, an indication of the nature of the contents of such sealed envelope or other container, the phrase "Subject to Protective Order," or "Subject To Non-Sharing Protective Order," and a statement substantially in the following form: "This envelope or container shall not be opened without order of the Court, except by officers of the Court and counsel of record, who, after reviewing the contents, shall return them to the clerk in a sealed envelope or container."

14.     Any court reporter or transcriber who reports or transcribes testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

15.     To the extent Ford is requested to produce documents it has determined should not be subject to the sharing provision of this protective order in paragraph 8(e), Ford will designate such documents as "Non-Sharing." Documents designated as "Non-Sharing" shall not be shared under paragraph 8(e).

16.     With respect to Protected Documents designated as "Non-Sharing," within one hundred and twenty (120) days after the conclusion of this case, counsel for the parties who received Protected Documents, including any documents that any such party disclosed to any person described in paragraph 8(c) above, shall either (a) return to Ford the Protected

Documents; or (b) securely destroy the Protected Documents and certify such destruction to Ford within one hundred and fifty (150) days after the conclusion of this case.

17.     With respect to documents designated as "Sharing" or Subject to Protective Order," Counsel for the parties shall not be required to return the Protected Documents to Ford after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

18.     Inadvertent or unintentional production of documents or information containing confidential information that should have been designated as Protected Documents(s) shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

19.     The parties may disclose and produce responsive documents to each other in this litigation, and seek to do so without risking waiver of any attorney-client privilege, work product or other applicable privilege or protection.  As such, the parties will adhere  to the following procedures with regard to the production of privileged or protected  material, should that occur:

        a.     The production of documents (including both paper documents and electronically stored information or "ESI") subject to protection by the attorney-client and/or work product doctrine or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the producing party notifies the receiving party, in writing, of the production after its discovery of the same.

        b.     If producing party notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials")

have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted, on request of the producing party. The producing party will provide a privilege log providing information required by the Georgia Civil Practice Act and applicable case law to the receiving party at the time the producing party provides the receiving party notice of the Identified Materials. If the receiving party has any notes or other work product reflecting the contents of the Identified Materials, the receiving party will not review or use those materials unless a court later designates the Identified Materials as not privileged or protected.

c.    The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents. The receiving party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents have been designated by a court as not privileged or protected.

d.    The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made. The receiving party must take reasonable steps to retrieve the Identified Materials if the receiving party disclosed the Identified Materials before being notified.

e.    If any receiving party is in receipt of a document from a producing party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production of that document so that the producing party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Stipulation and Order.

f.    The party returning the Identified Materials may move the Court for an order compelling production of some or all of the Identified Material returned or destroyed, but the basis for such motion may not be based on the fact or circumstances of the production.

g.    The disclosure of Identified Materials in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding.

20.    In the event that a party produces a document without a confidentiality designation as permitted by this Order, the following procedures shall apply:

a.    The producing party shall, within fourteen (14) days of the discovery of the disclosure, notify the other party in writing. The party receiving such notice shall promptly destroy the document, including any copies it has, or return the document on request of the producing party. Within ten (10) days after such document is returned or its destruction certified, the producing party will

11

produce a new version of any such document that was returned or destroyed, which will contain the appropriate confidentiality designation.

b.    If the receiving party disputes the producing party's claim of confidentiality, that party may move the Court to challenge the confidential designation in accordance with Paragraph 4 of this Order. If the receiving party elects to file such a motion, the receiving party may retain possession of the document, but shall treat it in accordance with the terms of the Protective Order pending resolution of the motion. If the receiving party's motion is denied, the parties shall promptly comply with Paragraph 20(a) of this Order.

c.    The production of such document does not constitute a waiver of any claim of confidentiality as set forth in this order or any other matter in any other jurisdiction, unless otherwise ordered by the Court.

21.    This Protective Order may not be waived, modified, abandoned or terminated, in whole or part, except by an instrument in writing signed by the parties. If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

22.    After termination of this litigation, the provisions of this Order shall continue to be binding. This Court retains and shall have jurisdiction over the parties and recipients of the

Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

23.     This Protective Order shall be binding upon the parties in this case, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representative, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

James E. Butler, Jr., Esq.                                                    DATED:        March 13, 2017
Georgia Bar No. 099625
(signed with express permission by Audrey K. Berland)
Brandon L. Peak, Esq.
Georgia Bar No. 141605
David T. Rohwedder, Esq.
Georgia Bar No. 104056
Christopher B. McDaniel, Esq.
Georgia Bar No. 101357
BUTLER WOOTEN CHEELEY & PEAK, LLP
105 13th Street
Post Office Box 2766
Columbus, Georgia 31902

Michael G. Gray, Esq.
Georgia Bar No. 306282
WALKER, HULBERT, GRAY & MOORE, LLP
909 Ball Street
P.O. Box 1770
Perry, Georgia 31069

Gerald Davidson, Jr.
Georgia Bar No. 206600
MAHAFFEY PICKENS TUCKER LLP
1550 North Brown Road, Suite 125
Lawrenceville, Georgia 30043

*Attorneys for Plaintiff*

13

DATED:        March 13, 2017.

Michael R. Boorman, Esq.
Georgia Bar No. 067798
Audrey K. Berland, Esq.
Georgia Bar No. 591485
HUFF, POWELL & BAILEY, LLC
999 Peachtree Street NE
Suite 950
Atlanta, Georgia 30309

Paul F. Malek, Esq.
*Admitted Pro Hac Vice*
D. Alan Thomas, Esq.
*Admitted Pro Hac Vice*
HUIE, FERNAMBUCQ & STEWART, LLP
2801 Highway 280 South, Ste. 200
Birmingham, Alabama 35223-2484

Michael W. Eady, Esq.
*Admitted Pro Hac Vice*
THOMPSON COE COUSINS & IRONS
701 Brazos, Suite 1500
Austin, Texas 78701

J. Randolph Evans, Esq.
Georgia Bar No. 252336
DENTONS
303 Peachtree Street NE
Suite 5300
Atlanta, Georgia 30308
**Attorneys for Defendant Ford
Motor Company**

So Ordered, this 20 day of March , 2017

The Honorable Shawn F. Bratton
Judge, State Court of Gwinnett County

14

# Exhibit 2

## Philip A. Henderson

| | |
|---|---|
| **From:** | Jim Butler <jim@butlerprather.com> |
| **Sent:** | Friday, July 28, 2023 8:12 PM |
| **To:** | 'Peeler, Charles E.'; Elizabeth Wright (Elizabeth.wright@thompsonhine.com); Melton, Harold D. |
| **Cc:** | Philip A. Henderson; Michael R. Boorman; Michelle L. H. Miller; Ramsey Prather; Dan Philyaw; Allison Bailey; Kim McCallister; Sarah Andrews; Nick Giles; Waldbeser, Elizabeth P. |
| **Subject:** | RE: Mills v. Ford - JPRSO  - Ford proposed "protective order" |
| **Attachments:** | 2023-07-15 Plaintiffs' proposed Stipulation re Discovery from Hill v. Ford.docx; 2023-07-18 - Plaintiffs second REVISED proposed Stipulation regarding Documents TENDERED IN evidence in Hill v. Ford_.docx; 2023-07-28 - Ps redline edits to proposed stip sent by Ford counsel though dated 7-24-23 - Ford Proposed Stipulation re 6 depos of Ford roof engineers .docx; 2022-02-28 Order Granting Confidentiality Agreement and Consent Protective Order + Ex A (Doc 37, 37-1).pdf |

Ford Counsel:

It really is unfortunate that communications with Ford are so difficult.  Once again you did not respond to all of my email.  I asked "Also state whether that was a stipulated, that is to say, agreed, PO or one Judge Land entered based on his adjudication of the parties' respective positions. "  No response.  Which meant we had to look it up.  That was unnecessary, since Ford counsel in this case is also Ford counsel in the Christian, and of course knew the answer.

The answer is that the PO in the Christian case was a consent, stipulated PO – in other words the PO prepared by Ford.  It appears to be much like the PO Ford obtained in *Hill v. Ford,* which we already told you was the kind of order to which these Plaintiffs will not agree.  Ford's proposal in the Christian case, repeated in this case, is not a sharing order. For example it allows Ford unilaterally and without proving any entitlement to concealment from others to designate whatever documents Ford wants to so designate as "non-sharing." There is also no carve-out for documents already in the public domain, because either tendered and/or admitted into evidence in the public and televised trial of *Hill v. Ford.*  As Ford knows, and as Ford counsel knows, since Ford counsel in this case was also counsel in the *Hill* case, there is a pending motion to modify the PO Ford got in the *Hill* case.

Ford could have sent that same-as-Christian case draft PO as promised on 7/19, rather than waiting until 720 pm yesterday.

Plaintiffs' counsel could of course send Ford a redline of the PO draft you sent last night. But it seems that would be a waste of time, and we have much else to do by August 2, while I am supposed to be on 'vacation,' as I advised Ford days ago, with a weekend intervening and a full day of travel back to Georgia, for me.  (I had expected to be able to mostly wrap all these things quickly- based on what Ford counsel told us on 7/18 about when they would provide a proposed PO, Ford's inserts to the JPRSO, and Ford's responses to our two proposed stipulations.)

To determine if it would be a waste of time to send Ford a redline of its *Hill/Christian* form PO, *just tell us* (1) if Ford will agree to a sharing PO, where if Ford want to label some document "confidential" and Plaintiffs do not agree then Ford must do what the law requires – petition the Court for a determination whether said document is entitled to 'confidentiality,'  and (2) if Ford will carve out of the PO entirely all those documents produced by Ford that were tendered into evidence in either of the *Hill* trials.

If Ford will not agree to those two things, or if Ford elects to not respond, then Ford needs to go ahead and file its motion for protective order with the Court, and there demonstrate Ford's claimed legal entitlement to the 'confidentiality' (and entitlement to designate some document 'non-sharing') which Ford seeks.

In hopes to save us all some work on at least this one thing – a proposed PO – attached please find the Order entered by Judge Land in the Harris case ("H&L Farms" et. al) - a case we tried in April 2023.  That was a 'consent' order – we, as Plaintiffs' counsel, worked it out by agreement with defense counsel for five defendants in that case.  The Plaintiffs in this *Mills* case would agree to such a confidentiality order, with the addition of the usual sharing provisions (Plaintiffs may share documents with other plaintiffs' counsel who have similar cases).

The work we have to now do in limited time includes finalizing the JPRSO – which has been delayed because Ford did not get its inserts to until 720 pm yesterday (7/27), after promising it by 7/21, and is made more difficult by your failure to send to us a redline of the redline we sent to you of our edits to the Ford version of our proposed JPRSO, which proposed JPRSO we first sent to you on 7/12  That work also includes trying to sort out what Ford's position is regarding stipulations.  We sent to Ford counsel two proposed stipulations on 7/15 – before the R26 conference – one about written discovery obtained in the Hill case (attached) and the other about documents used in the Hill case (the latter was revised on 7/18 after the R26 conference, which revised version is attached).  Ford counsel promised during the R26 conference to promptly respond to both proposed stipulations, as I recall.  Unless I'm missing something (entirely possible, given the blizzard of emails we've had to wade through), Ford has not responded about either of Plaintiffs' proposed stipulations.

You did send to us, last night, a Ford proposed "Stipulation Regarding Depositions," limited to the six videotaped trial depositions of Ford roof engineers about the subject Super Duty trucks which we took in the *Hill* case (with Ford counsel present, of course).  That proposed stipulation stated that said depositions "shall be deemed taken" in this case but "Ford reserves all objections to the admissibility and use" of those depositions in this case, which would seem to eviscerate the stipulation.  That proposed stipulation also purports to make any use of those six depositions subject to the *Hill* PO Ford obtained, which PO we've told you is unacceptable to us in this case and which PO is the subject of pending litigation in the *Hill* case itself, as noted above.  (The document that is the said proposed stipulation you sent last night bears the date "7/24/23," but you sent it to us last night (7/27)).

A third stipulation, specific to those videotaped depositions of six Ford roof engineers we took in *Hill,* is fine with us, but not with he odd and objectionable wording of the document Ford sent last night.  A redline of the proposed stipulation limited to those six depositions is attached (3rd attachment).   Plaintiffs will not agree that use in this case of those depositions will be subject to any PO, since all six depositions were played at both of the two *Hill* trials – in public, and telecast, and have been reproduced in the trial transcript of the second *Hill* trial, which is publicly available in the Gwinnett County Clerk's Office.  Use of those six depositions in this case certainly should not be subject to the PO Ford obtained in the *Hill* case.

Jim Butler


**From:** Peeler, Charles E. <Charles.Peeler@troutman.com>
**Sent:** Friday, July 28, 2023 4:20 PM
**To:** Jim Butler <jim@butlerprather.com>; Elizabeth Wright (Elizabeth.wright@thompsonhine.com) <Elizabeth.wright@thompsonhine.com>; Melton, Harold D. <Harold.Melton@troutman.com>
**Cc:** phenderson@watsonspence.com; mboorman@watsonspence.com; Michelle L. H. Miller <mmiller@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; Nick Giles <nick@butlerprather.com>; Waldbeser, Elizabeth P. <Elizabeth.Waldbeser@troutman.com>
**Subject:** RE: Mills v. Ford - JPRSO - Ford proposed "protective order"

Jim,

Attached is the stipulated sharing and non-sharing protective order from the Christian case.

Charlie

## Charles E. Peeler
**Partner**
**troutman** pepper
Direct: 404.885.3409 | Mobile: 229.343.3905 | Internal: 11-3409
charles.peeler@troutman.com

---

**From:** Jim Butler <jim@butlerprather.com>
**Sent:** Thursday, July 27, 2023 7:17 PM
**To:** Peeler, Charles E. <Charles.Peeler@troutman.com>; Elizabeth Wright (Elizabeth.wright@thompsonhine.com) <Elizabeth.wright@thompsonhine.com>; Melton, Harold D. <Harold.Melton@troutman.com>
**Cc:** phenderson@watsonspence.com; mboorman@watsonspence.com; Michelle L. H. Miller <mmiller@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; Nick Giles <nick@butlerprather.com>; Waldbeser, Elizabeth P. <Elizabeth.Waldbeser@troutman.com>
**Subject:** RE: Mills v. Ford - JPRSO - Ford proposed "protective order"

CAUTION: This message came from outside the firm. DO NOT click links or open attachments unless you recognize this sender (look at the actual email address) and confirm the content is safe.

Ford Counsel:

We see no possible connection between a "protective order" in this case and Plaintiffs' proposed Stipulation regarding documents tendered in evidence in Hill v. Ford. Said documents were used in a public and televised trial. If you see some connection, kindly tell us what it is. We ask again that Ford agree to said Stipulation, which is attached again. If Ford is not going to do so before August 2, let us know so we can file a motion.

Kindly send "the protective order Judge Land entered recently in February of this year in Christian v. Ford. "

Also state whether that was a stipulated, that is to say, agreed, PO or one Judge Land entered based on his adjudication of the parties' respective positions.

Jim Butler

---

**From:** Peeler, Charles E. <Charles.Peeler@troutman.com>
**Sent:** Thursday, July 27, 2023 7:02 PM
**To:** Jim Butler <jim@butlerprather.com>; Elizabeth Wright (Elizabeth.wright@thompsonhine.com) <Elizabeth.wright@thompsonhine.com>; Melton, Harold D. <Harold.Melton@troutman.com>
**Cc:** phenderson@watsonspence.com; mboorman@watsonspence.com; Michelle L. H. Miller <mmiller@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>;

Sarah Andrews <sarah@butlerprather.com>; Nick Giles <nick@butlerprather.com>; Waldbeser, Elizabeth P. <Elizabeth.Waldbeser@troutman.com>
**Subject:** RE: Mills v. Ford - JPRSO - Ford proposed "protective order"

Dear Jim –

Apologies for the delay in returning the JPRSO, but we are attempting to work through the protective order and stipulation issues at the same time.  To that end, attached are:

1.      Ford's revised draft of the JPRSO;
2.      Stipulation on Ford employee depositions; and
3.      Protective Order, modeled after and similar to the protective order Judge Land entered recently in February of this year in Christian v. Ford.

The scope of the stipulation regarding the use of discovery responses and documents from *Hill* is dependent, in part, on entry of an agreeable protective order in this matter.  As reflected in the JPRSO, we feel it is appropriate to work that out first then anticipate returning to you that stipulation with some slight revisions.

Thanks, Charlie


## Charles E. Peeler
**Partner**
**troutman pepper**
Direct: 404.885.3409 | Mobile: 229.343.3905 | Internal: 11-3409
charles.peeler@troutman.com

---

**From:** Jim Butler <jim@butlerprather.com>
**Sent:** Thursday, July 27, 2023 4:07 PM
**To:** Peeler, Charles E. <Charles.Peeler@troutman.com>; Elizabeth Wright (Elizabeth.wright@thompsonhine.com) <Elizabeth.wright@thompsonhine.com>; Melton, Harold D. <Harold.Melton@troutman.com>
**Cc:** phenderson@watsonspence.com; mboorman@watsonspence.com; Michelle L. H. Miller <mmiller@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; Nick Giles <nick@butlerprather.com>
**Subject:** FW: Mills v. Ford - JPRSO - Ford proposed "protective order"

CAUTION: This message came from outside the firm. DO NOT click links or open attachments unless you recognize this sender (look at the actual email address) and confirm the content is safe.

Ford Counsel:

At the R26 conference on 7/18 Ford counsel said Ford would get to us Ford's inserts to the JPRSO "by the end of the week."  The "end of the week" was 7/21.  Where is Ford's version?  After the R26 conference on 7/18 I sent to you redline edits to Ford's edits to the JPRSO we had prepared pursuant to the R26 conference.  See 1st attachment.

The JPRSO is due to be filed with the Court on 8/2.  As I told you earlier, I am supposedly "on vacation" this week.  I will be traveling all day 7/31.  Autopsies will be underway on 8/2.  We hope Ford provides us Ford's inserts to the JPRSO before 'the last minute'.

At the R26 conference on 7/18 Ms. Wright said Ford would get its proposed "protective order" to us by 7/19.  Where is it?  (Please recall that we told you then that Plaintiffs in this case would not agree to the onerous terms in the protective order Ford obtained in the *Hill* case, so *please* don't waste everyone's time by sending a variant of that document.)

At the R26 conference on 7/18 Ford counsel said Ford would get back to us expeditiously regarding Ford's response to Plaintiffs' proposed stipulation.  See 2nd attachment. What IS Ford's response?

Thank you.

Jim Butler


-----Original Message-----
From: Jim Butler
Sent: Monday, July 24, 2023 10:47 AM
To: Charles Peeler <charles.peeler@troutman.com>; Elizabeth Wright <Elizabeth.wright@thompsonhine.com>
Cc: Harold Melton <Harold.Melton@troutman.com>; Philip A. Henderson <phenderson@watsonspence.com>; mmiller@watsonspence.com; Boorman Mike <mboorman@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; LaRae Moore <ldm@psstf.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>
Subject: Mills v. Ford - Ford proposed protective order

Ford counsel: you said at the R26 conference that you would have this draft to us by last Wednesday 7/19.  Where is it?

Thank you.

---

**From:** Jim Butler
**Sent:** Tuesday, July 18, 2023 4:42 PM
**To:** 'Philip A. Henderson' <phenderson@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; 'Harold.melton@troutman.com' <Harold.melton@troutman.com>; 'Charles.peeler@troutman.com' <Charles.peeler@troutman.com>; Elizabeth Wright (Elizabeth.wright@thompsonhine.com) <Elizabeth.wright@thompsonhine.com>
**Cc:** Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; 'Wright, Elizabeth' <elizabeth.wright@thompsonhine.com>; 'Michelle L. H. Miller' <mmiller@watsonspence.com>; mboorman@watsonspence.com
**Subject:** RE: Mills v. Ford - JPRSO &

Ford Counsel:

To expedite consideration of a proposed SO I prepared the attached redline edits to the version Charlie sent to me at 234 pm today before the 300 pm R26 conference.   No other member of Plaintiffs' Team has had a chance to review this, as both Ramsey and Dan are literally on the road this afternoon.

But this should be near-to-final with respect to our parts.

Also attached is the second revised proposed stipulation regarding FORD documents tendered at the two Hill trials – clarifying this particular stipulation regards Ford documents.

We look forward to getting Ford's proposed "protective order" tomorrow.

And getting Ford's responses to our two proposed stipulations asap before 8/2, when the JPRSO has to be submitted.

If Ford has any other proposals to streamline this litigation and avoid the disputatiousness and delay which attended the *Hill v. Ford* case and necessitated so much written discovery and so many motions, Plaintiffs' counsel would love to see such proposals.

Thank you.

Jim Butler

**From:** Jim Butler
**Sent:** Tuesday, July 18, 2023 1:38 PM
**To:** 'Philip A. Henderson' <phenderson@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; 'Harold.melton@troutman.com' <Harold.melton@troutman.com>; 'Charles.peeler@troutman.com' <Charles.peeler@troutman.com>; 'Michael R. Boorman' <mboorman@watsonspence.com>
**Cc:** Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; 'Wright, Elizabeth' <elizabeth.wright@thompsonhine.com>; 'Michelle L. H. Miller' <mmiller@watsonspence.com>
**Subject:** RE: Mills v. Ford - Conference Under FRCP 16 and 26

Ford Counsel:

My apologies – see revised version of the proposed stipulation regarding documents used in the two Hill trials. I changed one word – "admitted" to "tendered." ("Tendered" was what I had in mind.) Note the proposed stipulation states " subject however to Ford's right to object to the admissibility of any such document in this *Mills* case. "

This stipulation should great streamline and simplify things for both sides, and save a LOT of time and effort for all parties.

Jim Butler

**From:** Jim Butler
**Sent:** Saturday, July 15, 2023 4:16 PM
**To:** 'Philip A. Henderson' <phenderson@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; 'Harold.melton@troutman.com' <Harold.melton@troutman.com>; 'Charles.peeler@troutman.com' <Charles.peeler@troutman.com>; 'Michael R. Boorman' <mboorman@watsonspence.com>
**Cc:** Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; 'Wright, Elizabeth' <elizabeth.wright@thompsonhine.com>; 'Michelle L. H. Miller' <mmiller@watsonspence.com>
**Subject:** RE: Mills v. Ford - Conference Under FRCP 16 and 26

Ford Counsel:

Attached is another proposed Stipulation. Kindly let us know if Ford agrees to it.

Thank you.

Jim Butler

**From:** Jim Butler
**Sent:** Saturday, July 15, 2023 11:50 AM
**To:** 'Philip A. Henderson' <phenderson@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; 'Harold.melton@troutman.com' <Harold.melton@troutman.com>; 'Charles.peeler@troutman.com' <Charles.peeler@troutman.com>; 'Michael R. Boorman' <mboorman@watsonspence.com>
**Cc:** Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; 'Wright, Elizabeth' <elizabeth.wright@thompsonhine.com>; 'Michelle L. H. Miller' <mmiller@watsonspence.com>
**Subject:** RE: Mills v. Ford - Conference Under FRCP 16 and 26

Ford Counsel:

Please see the attached proposed Stipulation, and let us know if Ford agrees to it.

Thank you.

Jim Butler

---

**From:** Jim Butler
**Sent:** Wednesday, July 12, 2023 4:32 PM
**To:** 'Philip A. Henderson' <phenderson@watsonspence.com>; Ramsey Prather <ramsey@butlerprather.com>; Harold.melton@troutman.com; Charles.peeler@troutman.com; Michael R. Boorman <mboorman@watsonspence.com>
**Cc:** Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; 'Wright, Elizabeth' <elizabeth.wright@thompsonhine.com>; Michelle L. H. Miller <mmiller@watsonspence.com>
**Subject:** RE: Mills v. Ford - Conference Under FRCP 16 and 26

Mr. Henderson:

Attached is Plaintiffs' draft Joint Report & Proposed Scheduling Order. We followed the format of the most recent Scheduling Order entered by Judge Land in one of our cases, also attached.

We have endeavored to insert therein the things Ford put in its proposal, but if we missed any or erred, please send us a redline of the attached.

Jim Butler

---

**From:** Philip A. Henderson <phenderson@watsonspence.com>
**Sent:** Tuesday, July 11, 2023 1:19 PM
**To:** Ramsey Prather <ramsey@butlerprather.com>; Harold.melton@troutman.com; Charles.peeler@troutman.com; Michael R. Boorman <mboorman@watsonspence.com>
**Cc:** Jim Butler <jim@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; 'Wright, Elizabeth' <elizabeth.wright@thompsonhine.com>; Michelle L. H. Miller <mmiller@watsonspence.com>
**Subject:** RE: Mills v. Ford - Conference Under FRCP 16 and 26

Ramsey,

Ford is available on July 18 between 1:30 - 5:00 PM for the Rule 26(f) Conference. Ford is also available between 9:00 - 11:30 AM and 1:30 - 5:00 PM on July 20. Please let us know the date and time you prefer within those windows and we can send out a Zoom invite.

In preparation for the upcoming Conference, we went ahead and put together a proposed draft of the Joint Proposed Scheduling Order and Discovery Plan, as directed in the Court's Rules 16 and 26 Order. See attached draft for your review, which we can discuss during the Conference.

We are also working on a proposed Protective Order to govern the production of confidential documents in this case. We will send that over for your review, as well, in the coming days.

Regards,
Philip



**PHILIP A. HENDERSON**
999 Peachtree Street, N.E.
Suite 1130
Atlanta, Georgia 30309
Main: 229-436-1545

---

**From:** Philip A. Henderson
**Sent:** Monday, July 10, 2023 8:21 AM
**To:** Ramsey Prather <ramsey@butlerprather.com>; Harold.melton@troutman.com; Charles.peeler@troutman.com; Michael R. Boorman <mboorman@watsonspence.com>
**Cc:** Jim Butler <jim@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>; 'Wright, Elizabeth' <elizabeth.wright@thompsonhine.com>; Michelle L. H. Miller <mmiller@watsonspence.com>
**Subject:** RE: Mills v. Ford - Conference Under FRCP 16 and 26

Ramsey,

Thank you for reaching re: the Rule 26(f) Conference. Counsel for Ford are still conferring about your proposed dates, but at this time it looks like we are <u>not</u> available on July 14 or the morning of July 18. We will get back with you shortly about our preference between July 20 or the afternoon of July 18.

Of note, please make sure to include Elizabeth Wright on all email correspondence in this case – her pro hac vice admission was granted on June 28 and she is also counsel of record for Ford.

Please also include my firm's paralegal, Michelle Miller.

Thank you.

-Philip



**PHILIP A. HENDERSON**
999 Peachtree Street, N.E.
Suite 1130
Atlanta, Georgia 30309
Main: 229-436-1545

---

**From:** Ramsey Prather <ramsey@butlerprather.com>
**Sent:** Thursday, July 6, 2023 6:06 PM
**To:** Harold.melton@troutman.com; Charles.peeler@troutman.com; Michael R. Boorman <mboorman@watsonspence.com>; Philip A. Henderson <phenderson@watsonspence.com>
**Cc:** Jim Butler <jim@butlerprather.com>; Dan Philyaw <dan@butlerprather.com>; Allison Bailey <allison@butlerprather.com>; Kim McCallister <kim@butlerprather.com>; Beth Glen <beth@butlerprather.com>; Sarah Andrews <sarah@butlerprather.com>
**Subject:** Mills v. Ford - Conference Under FRCP 16 and 26

Defense Counsel:

Pursuant to Judge Land's Rule 16 and 26 Order, we are required to confer about a discovery plan no later than July 21, 2023.  Plaintiffs' counsel are available on July 14, 18, and 20.  Please let us know which of those dates is preferable.  If you have a preferred time on that date, please let us know that as well.

Thanks.

Ramsey Prather


Ramsey B. Prather
Butler Prather LLP
(404) 321-1700
www.butlerprather.com

**Columbus Office**
P.O. Box 2766
Columbus, GA 31902

**Atlanta Office**
12 Lenox Pointe
Atlanta, GA 30324

**Savannah Office**
7 East Congress Street
Suite 400
Savannah, GA 31401

This e-mail (and any attachments) from a law firm may contain legally privileged and confidential information solely for the intended recipient. If you received this message in error, please notify the sender and delete it. Any unauthorized reading, distribution, copying, or other use of this e-mail (and attachments) is strictly prohibited. We have taken precautions to minimize the risk of transmitting computer viruses, but you should scan attachments for viruses and other malicious threats; we are not liable for any loss or damage caused by viruses.

# Exhibit 3

E-FILED IN OFFICE - MB
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA
16-C-04179-S2
10/5/2022 10:12 AM
TIANA P. GARNER, CLERK

## STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

KIM HILL and ADAM HILL, surviving children    \*
and Co-Administrators of the Estates of Melvin    \*
Hill and Voncile Hill, Deceased,    \*
   \*
      Plaintiffs,    \*
   \*    CIVIL ACTION
   v.    \*
   \*    FILE NO. 16 C 04179-2
FORD MOTOR COMPANY,    \*
THE PEP BOYS- MANNY, MOE & JACK (Inc.), \*
CURTIS CLINTON THOMPSON, JR., WILLIE \*
BRASWELL, and DONALD TAYLOR,    \*
   \*
      Defendants.

## <u>MOTION TO MODIFY</u>
## <u>PROTECTIVE ORDER ENTERED MARCH 20, 2017</u>

Plaintiffs respectfully move this Court to modify the Protective Order

entered on March 20, 2017.[1]  There are several reasons for this, among them: (1)

matters discussed in open court accessible to the public should not be off-limits to

the public – particularly when those matters were broadcast by Courtroom View

Network (CVN); (2) there have been press inquiries for documents; (3) Plaintiffs'

counsel are sensitive to being accused by Ford of "violating" the Protective Order;

_____

[1] Plaintiffs requested Ford's consent to this motion by letter and email. *See* Exhibit
A, 09/30/2022 Ltr. from Plaintiffs' Counsel to Ford Counsel; *see also* Exhibit B,
10/3/2022 1:14 P.M. Email from Plaintiffs' Counsel to Ford Counsel. Ford has
stated only that it will "get back with you soon."  *See* Exhibit C, 10/4/2022 3:41
P.M. Email from Ford Counsel to Plaintiffs' Counsel.

and (4) Ford labeled an enormous number of documents as "confidential," most of which were not entitled to such treatment.

The Protective Order indicates that supposedly "confidential" documents, and testimony relating to supposedly "confidential" documents, will remain subject to the terms of the Protective Order *even though presented in public at a public trial.*[2] First, that makes no sense at all, and is contrary to the public interest in open courts. Second, Ford has failed to do that which is required to lock out the public. *Ford has not objected* to the public disclosure and distribution of such documents and testimony admitted in the public trial, meaning there is no longer any reason for the Court to protect such information. Third, Ford has publicly challenged the legitimacy of the jury's verdict, making public disclosure of the documents and testimony admitted at trial critical to protect the integrity of the verdict and our State's judicial system.

---

[2] Plaintiffs agreed to that back in 2017 merely to avoid another litigious fight with Ford. This case was then, as now, afflicted by incessant and long filings by Ford. That agreement by Plaintiffs' counsel was unfortunate and will not be repeated in future cases with anyone. Obviously, an exhibit and testimony shown in public in a public courtroom and broadcast to the public on Courtroom View Network cannot be considered 'confidential' any longer – even if same ever was entitled to 'confidentiality,' and the vast majority of exhibits Ford so labeled were not remotely entitled to 'confidential' treatment. Plaintiffs should have fought a battle about that, but as stated, this case was afflicted by too many 'battles' forced by Ford's litigiousness.

On July 28, 2022, the Court notified the parties that CVN had requested an order in accordance with Georgia Uniform State Court Rule 22 "to be allowed to record and televise the trial." *See* Exhibit D, 07/28/2022 Emails Between Court and All Counsel. Ford responded that it had "no objection" to such an order. *Id.*

On July 29, 2022, the Court issued an Order permitting CVN to "install equipment in the courtroom . . . in order to record and stream images and sound, from opening statements forward, of the proceedings" during the second trial. *See* Exhibit E, 07/29/2022 Order Approving Request to Install Recording, and/or Photographic Equipment Pursuant to the Rules and Guidelines for Electronic and Photographic News Coverage of Judicial Proceedings. A letter from CVN to the Court, which was attached to the Order, clearly explains that CVN provides unlimited access to its materials to 50 law schools; that CVN provides video clips and updates of trials to the public for free; that CVN provides on demand coverage of court proceedings; and, that CVN makes video available to other news organizations around the world, including the New York Times, Wall Street Journal, Bloomberg, Reuters, Law360, the Associated Press, and others. *Id*. at 4. Ford did not subsequently object to the Court's Order.

Starting on August 3, 2022, CVN streamed video of the trial to viewers anywhere in the world on its website and CVN has kept the video recordings there so that they may be re-watched. *See Hill v. Ford Motor Co.,* Courtroom View

3

Network, https://cvn.com/proceedings/hill-v-ford-motor-co-trial-2022-08-01.  The

footage captured images of documents that were prior to such public disclosure

ostensibly subject to the Protective Order and testimony relating to those

documents. Interested persons may purchase DVDs of the trial.  Ford has not

requested that the trial footage be edited in any way or requested any other relief.[3]

    Ford's decisions and actions have demonstrated a complete disinterest in

keeping documents and testimony from the public trial subject to the Protective

Order.  Ford failed to object to the Court's Order permitting CVN to film the

second trial.  Ford also had notice, knowledge, and ample opportunities to object to

CVN's public disclosure of protected documents and testimony admitted during

the second trial. It failed to do so. Further, Ford has failed to request that the Court

---

[3] This Court also previously issued an Order permitting CVN to live stream and
record the proceedings in the first trial, which took place in March and April 2018.
*See* Exhibit G, 03/14/2018 Order. The Order provided that "[t]he Court retains
jurisdiction to order the edit of the video" and "*[t]he parties* or any juror *can
request such action* by the Court to the extent they would like relief." *Id*. at 1.
The footage taken at the first trial was saved to CVN's video archives and has been
accessible to subscribers for more than four years. *See Hill v. Ford Motor Co.*,
CVN, https://cvn.com/proceedings/hill-vford-motor-co-trial-2018-03-19. The
footage captured testimony regarding documents Ford caused to be subject to the
Protective Order.  For example, the CVN footage includes testimony from Ford
engineer Jason Balzer where he is asked questions about and passages are read
directly from PX 133, which was marked "Subject to Sharing Protective Order"
and "Ford Secret." That testimony is still available for viewing on CVN to this
day. *Ford has never asked the Court to order that the trial footage be edited.*

do anything to edit the CVN videos of the second trial. There has been a complete waiver by Ford.

The Court's Protective Order should be modified in light of Ford's waiver and Ford's demonstrated disinterest in protecting such information from disclosure.

The Court's Protective Order provides that documents or information "designated as 'Subject to Non-Sharing Protective Order,' 'Subject to Protective Order,' 'Confidential,' or substantially similar language . . . shall only be used, shown or disclosed" to certain persons. *See* Exhibit F, Protective Order ¶ 3. Such persons include counsel of record for the parties; staff employed by counsel; experts and consultants; the Court, Court staff, witnesses, and the jury; and, attorneys and consultants involved in certain other cases pending against Ford involving 1999-2007 Ford Super Duty trucks. *Id*. at ¶ 8. Protected documents also cannot be posted "on any website or internet accessible document repository." *Id*. at ¶ 11.

Documents which were used as exhibits at depositions and trial remain under the sphere of the current Protective Order.

> To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.

5

*Id.* at ¶ 12.

The circumstances now require that the Protective Order be modified. Ford's failure to make any reasonable effort to prohibit disclosure of its supposedly confidential information presented at trial means that the provision of the Protective Order keeping trial exhibits and testimony subject to its terms is no longer necessary. But most importantly, modification of the Protective Order is now needed to protect the integrity of the jury's verdict and comport with Georgia's policy goal of promoting better access to and understanding of its courts.

*First*, Ford has failed to assert protection over documents and testimony which it claimed were "confidential" but which have been used in a public trial in a public courtroom and also have been broadcast to the public. Ford obviously knew that the testimony and documents admitted into evidence at the second trial would be made available to the public. Ford was notified prior to the second trial that CVN would be filming. In fact, *Ford's corporate representative and its counsel had to walk past the CVN cameraman every single day of the second trial to get to counsel's table.*

Georgia statutory law provided Ford with the ability to object to the Court's Order permitting the filming of the trial, and the Court even asked Ford whether it objected to such an order. O.C.G.A. § 15-1-10.1(c) ("The court may hear from the parties, witnesses, or other interested persons and from the person or entity

requesting coverage during the court's consideration" of whether to grant a request

to televise or videotape judicial proceedings.). Ford stated that it had "no

objection" prior to the trial and did not object at the start of the proceedings. *See*

Exhibit D. Under the Uniform Superior Court Rules, Ford waived its ability to

object to the recording of the proceedings.  *See* Ga. Unif. Sup. Ct. R. 22(F)(4) ("A

properly notified party . . . waives an objection to a request for recording of a

proceeding if the party . . . does not object to the request in writing or on the record

before or at the start of the proceeding.").

Ford has since failed to take any reasonable efforts to protect or limit the

public disclosure of the exhibits used at trial or even try to maintain their

confidentiality. Ford's inaction, particularly considering the public interest in this

case, demonstrates that there is no longer reason to prevent disclosure of the

documents. *See Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200

F.R.D. 255, 260 (M.D.N.C. 2001) (A defendant cannot simply "sit[] back doing

nothing." "[I]n order to obtain a protective order with respect to confidential

commercial information, a party still must show reasonable efforts and

expectations under the circumstances as to maintaining the secrecy of the

information."). Nearly two months have passed since Ford's supposedly

confidential documents and testimony started being broadcast to the public during

7

the second trial. It cannot be said that Ford has acted quickly to protect such information.

*Second*, it is inconsistent with Georgia law and policy to continue to keep documents that were publicly admitted into evidence subject to such a Protective Order. **"Open courtrooms are an indispensable element of an effective and respected judicial system. It is the policy of Georgia's courts to promote access to and understanding of court proceedings not only by the participants in them but also by the general public and by news media who will report on the proceedings to the public." Ga. Unif. Sup. Ct. Rule 22(A).** Modification of the Protective Order to permit access to testimony and documents admitted into evidence at trial – by the public and the press - would support Georgia's goal of creating a better understanding of our legal system.

The public and the press are interested in and actively seeking information about this case. Since the jury reached its verdict, there has been substantial public attention from news media all over the world. Numerous articles have been written about the trial in the preceding weeks.  In fact, Plaintiffs' motion—as they notified Ford—is prompted by requests they have received from worldwide news outlets, such as the Wall Street Journal, for additional information. Making the evidence and testimony presented at trial available to the public aligns with Georgia's policy

goal of allowing individuals, and the news media who report the information to them, to have a complete and accurate understanding of the trial.

The Court must also modify the Protective Order because it is now a necessary step to prevent Ford from eroding public trust in the jury's verdict. Ford has publicly claimed to news outlets that the jury verdict is not supported by the evidence.[4] Ford's statements have made it imperative that the Court permit access to the documents admitted into evidence at trial so that the public may properly understand why the jury decided to impose meaningful punitive damages and so that the public can know what the jury understood - the risks to life and limb posed by the many similar vehicles Ford sold that are still on the road.

---

[4] *See, e.g.*, *Jury imposes $1.7 billion verdict, largest in state history, against* Ford, The Atlanta Journal-Constitution, https://www.ajc.com/news/jury-imposes-17-billion-verdict-largest-in-state-history-against-ford/E3C6WROKCFEOFCECTIO3VY7BDA/ (August 22, 2022) ("'While our sympathies go out to the Hill family, we do not believe the verdict is supported by the evidence,' Ford said in a statement."); *Georgia jury awards $1.7 billion in Ford truck crash case*, Los Angeles Times, https://www.latimes.com/world-nation/story/2022-08-21/georgia-jury-awards-1-7-billion-in-ford-truck-crash-case (August 21, 2022) ("'While our sympathies go out to the Hill family, we do not believe the verdict is supported by the evidence, and we plan to appeal,' Ford said in a statement to the Associated Press." ); *Georgia jury awards $1.7 billion in Ford F-250 truck crash*, CBS News, https://www.cbsnews.com/news/ford-f250-truck-crash-1-7-billion-jury-award-melvin-hill-voncile-hill/ (August 22, 2022) ("'While our sympathies go out to the Hill family, we do not believe the verdict is supported by the evidence, and we plan to appeal,' Ford said in a statement to The Associated Press on Sunday.").

*Third*, as a practical matter, little can now be done to prevent public distribution of documents and testimony which Ford claims are confidential. The trial was open to the public and press. CVN has been showing testimony admitted at the first trial online for more than four years and documents and testimony admitted at the second trial for two months. That amount of time, combined with significant media attention and investigation, means the information is already 'out' in the public domain. Any insistence by Ford upon trying to hide publicly admitted evidence on account of the 2017 Protective Order is silly.

*Fourth*, and finally, Plaintiffs should not be forced to withstand accusations by Ford that Plaintiffs have violated the Protective Order, and allowed persons outside the scope of the Protective Order to see confidential documents, simply by trying their case in open court. Plaintiffs simply put up the evidence necessary to prove their case. It was Ford's responsibility and burden to object to further public presentation of those documents, if Ford chose to do so. It did not so choose. As this Court has seen time and time again, this is a real risk: given any opportunity to divert attention from its own conduct by making accusations against Plaintiffs and Plaintiffs' counsel, Ford will seize that opportunity.

In light of these developments, Plaintiffs request the Court modify the Protective Order, specifically Paragraph Twelve, which requires that the documents and testimony used as exhibits at trial shall remain subject to the terms

of the Protective Order. This Court should order that documents and testimony admitted at trial, and the video deposition testimony of any witness who testified at trial, shall no longer be subject to the terms of the Protective Order.

Plaintiffs pray that this Court enter the requested proposed order attached hereto.

Respectfully submitted this 5th day of October, 2022.

BUTLER PRATHER LLP

*/s/ James E. Butler, Jr.*
James E. Butler, Jr.
Georgia Bar No. 099625
Ramsey B. Prather
Georgia Bar No. 658395
Daniel E. Philyaw
Georgia Bar No. 877765
P.O. Box 2766
105 13th Street
Columbus, GA 31902

Gerald Davidson, Jr.
Georgia Bar No. 206600
MAHAFFEY PICKENS & TUCKER LLP
1550 North Brown Road
Suite 125
Lawrenceville, GA 30043

Michael B. Terry
Georgia Bar No. 702582
Frank M. Lowrey
Georgia Bar No. 410310
Laurie Ann Taylor
Georgia Bar No. 452926
BONDURANT MIXSON & ELMORE

1201 W. Peachtree Street NW
Suite 3900
Atlanta, GA 30309

Larry Walker
Georgia Bar No. 732300
Michael G. Gray
Georgia Bar No. 306282
WALKER, HULBERT, GRAY & MOORE
P.O. Box 1770
Perry, GA 31069

12

**CERTIFICATE OF SERVICE**

I certify on this 5th day of October, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's filing system. Parties may access this filing through the Court's notice of filing.

| | |
|---|---|
| Michael R. Boorman | William N. Withrow, Jr. |
| Philip Henderson | Troutman Pepper Hamilton |
| Watson Spence LLP | Sanders LLP |
| 999 Peachtree Street, N.E. | 600 Peachtree Street NE |
| Suite 1130 | Suite 3000 |
| Atlanta, GA 30309 | Atlanta, GA 30308-2216 |
| | |
| Paul F. Malek | |
| D. Alan Thomas | J. Randolph Evans |
| Huie Fernambucq & Stewart, LLP | Francisco Rolon |
| 3291 Highway 280, Ste. 200 | SQUIRE PATTON BOGGS |
| Birmingham, AL 35243 | 1230 Peachtree Street NE |
| | Suite 1700 |
| Michael W. Eady | Atlanta, GA 30309 |
| Thompson Coe Cousins & Irons LLP | |
| 701 Brazos Street | |
| Suite 1500 | |
| Austin, TX 78701 | |

This 5th day of October, 2022.

BUTLER PRATHER LLP

BY: */s/ James E. Butler, Jr.*
James E. Butler, Jr.
Georgia Bar No. 099625

13

E-FILED IN OFFICE - GH
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

16-C-04179-S2

11/7/2022 1:46 PM
TIANA P. GARNER, CLERK

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

KIM HILL and ADAM HILL, surviving
children and Co-Administrators of the
Estates of Melvin Hill and Voncile Hill,
deceased,

      Plaintiffs,

v.

FORD MOTOR COMPANY, THE PEP
BOYS-MANNY, MOE & JACK (Inc.),
CURTIS CLINTON THOMPSON, JR.,
WILLIE BRASWELL, and DONALD
TAYLOR,

      Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION FILE NO.:
16 C 04179-2

---

## FORD'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY PROTECTIVE ORDER ENTERED MARCH 20, 2017

---

Ford Motor Company ("Ford") files this, its Response in Opposition to Plaintiffs' Motion to Modify Protective Order Entered March 20, 2017, and hereby states as follows:

## **INTRODUCTION**

Plaintiffs' Motion attempts to usurp one of the few agreements that the parties in this litigation were able to reach. In fact, Plaintiffs and Ford agreed to this Protective Order with identical terms, not once, but twice – once in Cobb County, and then again when the case was refiled in Gwinnett. Now, following trial, Plaintiffs seek to have this Court modify the Stipulated Protective Order entered years ago, to allow wholly unfettered sharing of documents covered by the Stipulated Protective Order. Plaintiffs' Motion should be denied for several reasons.

First, the Stipulated Protective Order expressly provides that the documents covered by this Protective Order are to remain subject to the terms of the Protective Order following the

litigation.

Second, the Stipulated Protective Order expressly provides that documents produced as confidential under the Protected Order that are used at trial shall be sealed and remain confidential. Thus, the use of documents as trial cannot be deemed a waiver of confidentiality.

Third, the public's right to access court records is not unlimited, and it can be restricted where a party shows good cause and compelling interest to shield documents from public disclosure. The competitive harm to Ford that will be caused by Plaintiffs' proposed modification, which would allow any person anywhere to become a custodian of Ford's confidential documents and eviscerate Ford's control or use of its documents, constitutes good cause that overrides any interest the public may have to access Ford's confidential documents.

Fourth, Courtroom View Network's ("CVN") broadcast of the trial did not automatically put these documents into the public forum.

Lastly, Plaintiffs seek to disclose deposition testimony that was never used at trial.

I.   **Background and Procedural History**

A.      **The Parties' Stipulated Protective Order**

The genesis of the case is a single-vehicle rollover accident that occurred on April 3, 2014. Both occupants, Melvin and Voncile Hill, perished in that accident.  Seven months later (October, 2014), their surviving adult children filed a wrongful death lawsuit in Cobb County blaming Ford, Cooper Tire and Rubber Company, and The Pep Boys-Manny, Moe & Jack (Inc.) for causing the deaths of their parents.  In that case, the Court entered a Stipulated Protective Order governing use of Ford's documents on September 14, 2015 that was agreed to by Plaintiffs and Ford.  *See* Exhibit A. In July 2016, the Hills abruptly dismissed that lawsuit and filed this lawsuit in Gwinnett County. Almost a year later and over a year and a half following entry of the original protective order in

Cobb County, Plaintiffs and Ford again agreed to and entered the protective order at issue with an *identical* Paragraph 12 on March 20, 2017. *See* Exhibit B.

The Stipulated Protective Order at issue contains provisions relating to use of documents at trial and subsequent treatment of documents.  The at-issue Paragraph 12 states that:

> To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pagers of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.

While not at issue in this Motion on its face, the Stipulated Protective Order also importantly provides a mechanism for challenging the confidential designation of any protected documents that Plaintiffs are attempting to usurp by filing this Motion.  Paragraph 4 provides:

> If a party disagrees with the "Protected" designation of any document, the party will so notify Ford in a written letter, within 60 days of receipt of the confidential documents and information, identifying the challenged document(s) with specificity, including Bates-number(s) where available. If the parties are unable to resolve the issue of confidentiality regarding the challenged document(s), Ford will thereafter timely apply to the court to set a hearing for the purpose of establishing that the challenged document(s) is/are confidential.  Any document so marked as "Protected" will continue to be treated as such pending determination by the Court as to its confidential status.

Rather than follow the agreed-upon provisions of Paragraph 4 of the Protective Order which provide the proper procedure to challenge a confidential designation, Plaintiffs instead seek to modify the protective order.  In their attempt to "meet and confer" with Ford, Plaintiffs sent Ford's counsel correspondence on October 3 seeking free sharing of any exhibit used at trial on the basis that the documents were used at trial.  In particular, Plaintiffs wanted to share documents with the Wall Street Journal.  *See* Exhibit C.  Ford's counsel responded on October 4 that it would

consult with Ford on the issue. *See* Exhibit D. The very next day, Plaintiffs filed the Motion to Modify the Protective Order before Ford even had a chance to review the at-issue documents.[1]

### B.    The Confidential Documents Used at Trial

Certain documents that were produced subject to the Stipulated Protective Order in this case were admitted into evidence at trial. As stated *supra*, the Stipulated Protective Order contained a provision that required those documents to be treated as confidential throughout and following the litigation. *See* Exhibit B. These documents include various presentations and engineering documents that contain commercially sensitive business information or personally identifiable information, including:

- Plaintiffs' Exhibit 114 - 2006 Annual Engineering Technical Excellence TMM Awards Entry

- Plaintiffs' Exhibit 133 - HFTA Nomination Committee Enhanced Roof Strength Structure Memo

- Plaintiffs' Exhibit 133A - HFTA Nomination Committee Enhanced Roof Strength Structure Memo Mike Leigh Edits

- Plaintiffs' Exhibit 135 - 2005 Annual Engineering Technical TMM Awards Entry

- Plaintiffs' Exhibit 138 - 2007 Ford Technology Award Program Individual Personal History - Joseph C. Weishaar

- Plaintiffs' Exhibit 154 - August 2002 U251 Roof Crush Design Review

- Plaintiffs' Exhibit 236 - September 2005 NA Fleet Roof Strength Assessment & FMVSS 216 NPRM Presentation

- Plaintiffs' Exhibit 643 - Competitive Roof Crush Performance: Volvo Body Structure

---

[1] Ford has learned that the Wall Street Journal is in possession of at least some of the documents identified in Plaintiffs' correspondence. Ford asked Mr. Butler whether he provided the documents to the Wall Street Journal, but he refused to respond.

## C.     Plaintiffs' Proposed Modification and its Ramifications

Plaintiffs' Motion accuses Ford of over-designation and waiver of confidentiality over any confidential document used at trial.  It also seeks to allow for deposition testimony of any witness who testified at trial to be shared.  There is simply no justification for either of these outcomes. Plaintiffs accuse Ford of "over-designating," however, the grand sum of documents used at trial that Ford is seeking to protect subject to the terms of the Stipulated Protective Order amounts to **eight** documents out of dozens of trial exhibits.  Moreover, there is simply no reason that testimony relating to matters not addressed at trial or deposition testimony of witnesses who testified at trial should be shared as they are not part of the public record, and to the extent deposition testimony was not marked as confidential, the testimony would not be at issue in this Motion.

Plaintiffs seek to have this Court essentially strike Paragraph 12 of the Stipulated Protective Order.  Modifying Paragraph 12 would eviscerate Ford's protections over the above-referenced documents that Ford designated as confidential.  These documents relate to Ford's advanced research into proposed changes to Federal Motor Vehicle Safety Standard ("FMVSS") 216 and vehicle specific roof design documents that contain competitive benchmarking, confidential design information, including design iterations, material usage, material gauges, characteristics of body structure design beyond test performance (noise, vibration, and harshness characteristics, aesthetic design and its relationship to driver visibility, etc.), supplier information, and business information, such as projected cost savings, potential profit, and staffing considerations.  This sort of information is critical to Ford's business.

In essence, Plaintiffs are not seeking to modify the protective order – Plaintiffs are seeking to have this Court determine that Ford's documents are no longer confidential because they were

used at trial under the guise of a modification to the protective order in a direct effort to circumvent Paragraph 4 of the protective order governing challenges to confidentiality.

## II.    Argument

### A.    The Order Agreed to By the Parties and Entered By the Court Requires that Ford's Confidential Documents Remain Confidential.

Plaintiffs' primary argument is that because Ford used certain documents at trial, they should no longer be subject to the Protective Order. Plaintiffs' position contradicts the express language of the Stipulated Protective Order. Paragraph 12 of the Stipulated Protective Order states:

> To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information **shall remain** subject to the provisions of this Order, along with the transcript pagers of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.

See Exhibit B.

Thus, the Court has already ordered that the documents used as exhibits at trial are to remain subject to the provisions of the Order. There was no additional step for Ford to take – the documents remain subject to the Protective Order even after their use at trial.

Plaintiffs assert that because Ford did not object to public disclosure or use of documents at trial the confidentiality status has been waived. That argument is nonsensical and directly contradicts the plain language of the Order. Under the Court's Order, which was agreed to by the parties, there was no obligation to do so. Ford cannot be punished for not taking affirmative actions to protect the confidentiality of documents at trial when the Court already ordered that such documents shall remain confidential. Plaintiffs' argument that Ford has "waived" its right to confidentiality is fundamentally flawed, particularly because "the concept of waiver presupposes

the intentional or voluntary relinquishment of a known right." *Rock v. Ready Trucking*, 218 Ga. App. 774, 775 (1995). Ford did not "intentionally" or "voluntarily" waive its right to protection as the Stipulated Protective Order did not require Ford to take any affirmative steps to maintain confidentiality.

Rather than abide by the terms of the Protective Order that they agreed to, Plaintiffs, in a footnote to their Motion, now claim that they "agreed to that back in 2017 merely to avoid another litigious fight with Ford." *See* Plaintiffs' Motion at 2. Plaintiffs' newly-found regrets in entering into this Protective Order – not once, but twice – are not valid grounds to set the Order aside. Plaintiffs stipulated to each and every term contained within this Protective Order and cannot now change the parties' agreement, which was endorsed by the Court. Ultimately, the Stipulated Protective Order is binding on the parties and this Court has inherent authority to compel compliance with it. *See* O.C.G.A. § 15-1-3 ("Every court has power: …. (3) To compel obedience to its judgments, orders, and process…."); *see also Cook v. Thomas*, 175 Ga. App. 836, 837 (1985) ("Every court has the power to compel obedience to its judgment"); *Hulsey v. Hulsey*, 212 Ga. App. 269, 270 (1994) ("the trial court has the duty to control the trial of the case and to ensure a fair trial to all parties.") (citation omitted).

Courts are wary of post hoc modifications to protective orders in light of the strong reliance interests at stake. Ford produced these documents in discovery pursuant to the Protective Order. Ford had a reasonable expectation that the documents would remain confidential, and that the Protective Order would not be modified after the fact, lifting the shield of confidentiality. Courts have said it is "axiomatic" that "'[a]mong the goals furthered by protective orders is reducing conflict over discovery and facilitating the flow of information through discovery. Where that has happened, changing the ground rules later is to be avoided because

protective orders that cannot be relied upon will not foster cooperation through discovery.'" *Foltz v. State Farm Mutual Automobile Insurance Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) (quoting 8A Charles Alan Wright et al., Federal Practice & Procedure § 2044.1). If protective orders cannot be relied upon, the consequence will be a substantial increase in discovery battles, as parties will resist producing the confidential information in the first place.

Plaintiffs, throughout this litigation, had no qualms raising issues with Ford's position on discovery matters. In fact, Plaintiffs served at least **eighteen (18)** letters to Ford alleging deficiencies in Ford's discovery or disagreeing with Ford's position on discovery matters. None of those letters related to the protocols **agreed to** in Paragraph 12 that specifies that documents and testimony are to remain subject to the terms of the protective order. Plaintiffs certainly had no qualms with raising discovery issues with Ford throughout this litigation. Yet not once did they ever raise an issue with Paragraph 12. Moreover, Paragraph 21 of the Protective Order unequivocally states "[t]his Protective Order may not be waived, modified, abandoned or terminated, in whole or part, ***except by an instrument in writing signed by the parties.***" (emphasis added). Ford has not signed any such writing agreeing to modify or waive any part of this Protective Order, and thus, the inquiry should end here.

**B.    Plaintiffs' Motion Should be Denied Because it is Procedurally Improper and Violates the Protective Order**

Although Plaintiffs claim to be seeking a modification of the Protective Order, they are in fact seeking to challenge the confidentiality status of certain documents. The Protective Order provides a procedure that must be followed to challenge confidentiality designations. *See* Exhibit B at ¶ 4. As mentioned above, Plaintiffs never followed that procedure, but rather sent Ford an e-mail and filed this Motion the next day. Plaintiffs must follow the proper procedures and the

Court's Order if they want to challenge the confidentiality designations of certain documents produced by Ford. They have not done so. For that reason, Plaintiffs' Motion should be denied.[2]

**C.      Ford has Established Good Cause to Preserve the Confidentiality of Confidential Exhibits Admitted at Trial**

Plaintiffs agreed to the Stipulated Protective Order. Plaintiffs now wish to circumvent the Stipulated Protective Order by making an argument that the public has a right to access court proceedings. Ford recognizes the important First Amendment right to judicial records, however, the United States Supreme Court has noted that right is not absolute. *See Nixon v. Warner Commc'ns,* 435 U.S. 589, 598 (1978) ("It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes…courts have refused to permit their files to serve as…sources of business information that might harm a litigant's competitive standing."). Plaintiffs' argument that the mere fact that portions of documents were presented in public at open trial somehow voids the confidentiality of the entire document. But Plaintiffs cite no authority so holding.

Here, the entire documents were not shown at trial. For example, two of the protected confidential documents at issue are Plaintiffs' Exhibits 133 and 133a – the Jason Balzer Memo and Mike Leigh's edits to the Jason Balzer Memo. Exhibit 133 is a 20-page document; Exhibit 133a is a 27-page document. Plaintiffs did not present and discuss each and every page of these two documents in open court at trial. Instead, Plaintiffs chose specific excerpts of specific pages and blew them up on the television screen in the courtroom. By no means were members of the public who may have been in the courtroom (or watching on CVN) able to read the entirety, or

---

[2] Had Plaintiffs followed the procedures in the Stipulated Protective Order, Ford could have taken any steps that would have been necessary to protect its documents, e.g., filing a motion to maintain confidentiality.

even a majority, of the contents of these two documents.    The mere showing of excerpts of a document in open court should not foreclose Ford from claiming confidentiality over that document.

Putting aside the procedural problems with Plaintiffs' Motion and the fact that under the Court's Order Ford was not required to take any affirmative steps at trial to maintain the confidential status of documents used at trial, the Court has the power to assess whether certain documents should maintain their confidential status under the Stipulated Protective Order.  The Georgia Supreme Court has held that trial courts may "limit access to court records if the court finds that 'the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest.'" *Savannah College of Art & Design, Inc. v. School of Visual Arts, Inc.,* 270 Ga. 791, 792 (1999) (in which the Court reversed a trial court's ruling that confidential documents should be open for public inspection and held that the trial court had abused its discretion by concluding that the moving party's privacy interest did not outweigh the public's interest in access to court records).  Moreover, O.C.G.A. § 9-11-26(c)(7) provides that the Court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including…that a trade secret or other confidential research, development, or commercial information not be disclosed only in a designated way ... ."

Although Georgia Courts have not set forth specific factors to assess whether confidential documents introduced in Court proceedings should remain confidential after trial, the type of information that Ford seeks to maintain as confidential is routinely sealed.  *See Chemence Med. Prods. v. Medline Indus., Inc.,* No. 1:13–CV–500–TWT, 2015 WL 149984, at *3-6 (N.D. Ga. 2015) (granting several motions to seal excerpts and exhibits of depositions where product specifications and confidential business transactions were discussed); *Cognotion, Inc. v. Grace*

*Hill, LLC*, CV 115-201, 2016 WL 1529904 at *1-2 (S.D. Ga. 2016) (granting motion to seal Complaint that contained confidential business information).

It is uncontroverted that the personally identifiable information (home addresses) of Ford employees represent a legitimate privacy interest of which there is no corresponding public benefit. Similarly, Ford has a legitimate interest in protecting its confidential business information.

The documents at issue contain highly proprietary Ford information relating to Ford's Enhanced Roof Strength Project, Ford's evaluation of Notice of Proposed Rulemaking 216, and Ford documents generally related to roof design. *See* Exhibit E*, Affidavit of Ram Krishnaswami at ¶ 6. The research, development, and testing contained in the documents are undertaken at great expense to Ford. *Id*. at ¶ 7. The automotive industry is a highly competitive industry, and advance research and methodology regarding the same can confer a distinct competitive advantage to an automotive manufacturer, translatable into sales and profits. *Id*.

These documents remain highly confidential, just as they were when originally designated as such, as the documents provide insight into several Ford processes, including:

a. The process that Ford undertakes to benchmark its vehicles against competitor vehicles, including how Ford benchmarks design and performance of competitor vehicles. With this information, competitors could modify or change their own benchmarking processes. Plaintiffs' Exhibits 133, 133A, and 643 contain this information.

b. Certain factors that Ford views as critical characteristics of body structure design beyond just test performance and other process enablers that give insight into Ford's knowledge, e.g., noise, vibration, and harshness characteristics, aesthetic design and its relationship to driver visibility, and body durability. With this information, competitors could

examine their own vehicle traits in a similar manner to Ford or take certain Ford concerns and add those to their own concerns. Plaintiffs' Exhibits 114, 133, 133A, and 135 contain this information.

      c.    Insight into iteration of design. With this information, competitors could reduce the number of iterations that competitor vehicle designs may need, thereby enhancing efficiency. Plaintiffs' Exhibits 133, 133A, 154, 236, and 643 contain this information.

      d.    Design specific information. With the design information contained in the documents, competitors could gain insight into Ford's body structure assembly execution, including body joint stiffness, gussets, material gauges, and material uses. Plaintiffs' Exhibits 114, 133, 133A, 154, 236, and 643 contain this information.

      e.    Supplier information. With this information, a competitor could gain insight as to how Ford chose the supplier to assist with the Enhanced Roof Strength Project, and by extension, how Ford benchmarks suppliers. Plaintiffs' Exhibits 133, 133A, and 154 contain this information.

      f.    Business information. The documents include information as to cost, projected cost savings, potential profit, staffing considerations, and insight into how Ford undertakes projects such as the Enhanced Roof Strength Project. With this information, a competitor could build efficiencies into their own projects by gaining insight into how Ford calculates cost and profit information, how Ford spends money on advanced research, and how Ford allocates resources to projects such as the Enhanced Roof Strength Project. Plaintiffs' Exhibits 114, 133, 133A, 154, 236, and 643 contain this information. Affidavit of Ram Krishnaswami at ¶ 9(a)-(f)

      The cost to Ford can not only be measured in dollar amounts. What also must be considered is the time and expertise of Ford's engineers in undertaking these projects. *Id.* at ¶ 10. If Ford's

competitors gain access to these materials, they will be able to use such information to their benefit at the expense of Ford. *Id.* Disclosure of this research could be used in the design and development efforts of Ford's competitors without the competitors investing the substantial resources already invested by Ford. *Id.* Information relating to the process that Ford evaluates potential design challenges is the product of continuing and evolving development and research. *Id.* Such information discloses the process that Ford utilizes, along with all other aspects of vehicle planning. *Id.* This is a confidential process. *Id.* Thus, the process itself, irrespective of the time period at issue, is confidential and of significant value to Ford. *Id.* The capability of a competitor to improve its own processes and/or avoid the necessity of testing such processes or conducting its own research results would result in harm to Ford's competitive position, as well as Ford's competitors saving time and money. *Id.* This benefit to competitors would diminish Ford's competitive advantage. *Id.*

Ford is careful to prevent disclosure of the proprietary information reflected in these documents as this information is not generally known outside the company. *Id.* ¶ 12. Typically, the only mechanisms by which an outsider could gain access to such documentation are via court order, agreed protective order, or in the case of a supplier, through a confidentiality provision as part of a supplier agreement. *Id.*

If Ford's competitors were to gain access to the documents described above, they would unfairly gain a competitive advantage against Ford. *Id.* at ¶ 13. Such an advantage would consist of using Ford's work in the development of their own designs and thus to get a product to market sooner than they would have otherwise and/or to get their product to market at a lower cost, since they would not have incurred the substantial research, testing, and developmental costs that Ford had incurred, and since they would have received closely guarded information about Ford's costs

and timetables for such designs.  *Id*.  Alternatively, whether or not a competitor actually utilized the information in these design and development documents in developing its own products, possessing information about these materials would give a competitor an advantage in everything from utilizing the research underlying Ford's design concepts in order to apply such research to the competitor's own potential design concepts (whether in comparison or contrast), and/or to undercutting Ford's timetables or costs by working from Ford's information regarding same.  *Id*. Ford takes great care to protect from disclosure the materials described above, and the work and documents relating thereto are proprietary to Ford.  *Id*.

Plaintiffs request to modify the Protective Order would allow anyone to become a custodian of its documents.  Ford takes great care to protect from disclosure the materials described above, and the work and documents relating thereto are proprietary to Ford.  *See* Exhibit E ¶ 13. These documents have not been released to the public and much of the information contained therein is not known outside of Ford's business. *Id*. The documents are maintained as confidential and are available only to specific employees at Ford and the employees who utilize this information follow rules regarding its use, including password protection at work stations and the protection of hard copy records/media with appropriate physical security controls. *Id*. Similarly, when trade secret and confidential information is to be disseminated to third parties such as joint ventures or suppliers outside of Ford, such information is subject to a properly executed agreement, like a non-disclosure agreement, and the decision to grant such access is made at an appropriately high level by someone within Ford who understands the risks and benefits of granting such access and then finally approved by Ford's Office of the General Counsel. *Id*.  Finally, when this information and these documents are produced in the litigation context, Ford requests that they be produced subject to a protective order. *Id*.  Moreover, certain of the documents contain personally identifiable

information, including names, home addresses, and home phone numbers of Ford employees. *Id.* at ¶ 14.  These include Plaintiffs' Exhibits 133, 133A, 135, and 138.

### D.   Plaintiffs' Request that Entire Documents Lose their Confidential Status when Entire Documents Were Not Shown In Open Court

Although entire documents may be entered into evidence, it is clear that entire documents are not shown in open court at trial.  That is what occurred here.  Plaintiffs' Exhibits 133 and 133a may have been tendered into evidence, but as discussed above, the majority of their contents were not presented to the public in open court.  There is no substantial justification for waiving confidentiality over a document that is 20+ pages because excerpts from the document were shown at trial.  In fact, after closing arguments while the Parties were tendering exhibits into evidence, Plaintiffs' counsel himself raised issue with entire documents being admitted as evidence when only excerpts were shown.

### E.   CVN Access

Plaintiffs claim that CVN's broadcasting of the trial acted as further waiver of the protections to Ford's confidential documents afforded in this Court's Protective Order.  But, again, CVN merely broadcast the same excerpts of documents as were displayed in open court.  CVN was not provided with copies of the confidential documents, and in turn, did not disseminate or publish those documents for public consumption.  Indeed, CVN's technician that was present at trial sought permission from Ford to hardwire into Ford's digital equipment that it used to display exhibits to the jury, so that CVN could have access to the exhibits and other documents being shown by Ford – Ford denied this request.

That an online company live-streamed the trial and subsequently made videos available on its website does nothing to change the terms of the Protective Order agreed to by Plaintiffs and entered by the Court.  This is especially true where these videos are only available to paying

customers – they are not available to any member of the general public, only those willing to pay for a subscription that costs $99 a month (or pay a one-time fee to purchase a DVD or digital download).  Ford did not object to CVN broadcasting the trial online, but that in no way should translate to Ford waiving the protected status of confidential documents – the two acts are not at all the same and have far different consequences.

> **F.**     **Violation of Protective Order**

During the time between Plaintiffs' filing of this Motion and the time for the filing of Ford's Response, Ford learned that a third-party media outlet - the Wall Street Journal - is in possession of several protected documents.  Namely, the Wall Street Journal contacted Ford with specific questions regarding documents that have been marked as confidential and were produced subject to the terms of the Protective Order in this case.  Ford is still investigating but believes this to be a breach of the Protective Order and will be filing any appropriate motion(s) once that investigation is complete.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons, Ford respectfully requests that this Court deny Plaintiffs' Motion to Modify the Protective Order Entered March 20, 2017.

This 7th day of November, 2022.

<div style="margin-left: 50%;">

*/s/ Philip A. Henderson*

Michael R. Boorman
Georgia Bar No. 067798
Philip A. Henderson
Georgia Bar No. 604769
WATSON SPENCE LLP
999 Peachtree Street NE, Suite 1130
Atlanta, Georgia 30309
mboorman@watsonspence.com
phenderson@watsonspence.com

</div>

William N. Withrow, Jr.
Georgia Bar No. 772350
TROUTMAN PEPPER HAMILTON SANDERS
LLP
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308-2216
bill.withrow@troutman.com

Ambassador J. Randolph Evans (Ret.)
Georgia Bar No. 252336
SQUIRE PATTON BOGGS
1201 W. Peachtree Street, NW, Suite 3150
Atlanta, GA 30309
randy.evans@squirepb.com

Paul F. Malek
*Admitted Pro Hac Vice*
D. Alan Thomas
*Admitted Pro Hac Vice*
HUIE FERNAMBUCQ & STEWART, LLP
3291 US-280, Suite 200
Birmingham, Alabama 35243
pmalek@huielaw.com
athomas@huielaw.com

Michael W. Eady
*Admitted Pro Hac Vice*
THOMPSON COE, COUSINS & IRONS, LLP
701 Brazos, Suite 1500
Austin, Texas 78701
meady@thompsoncoe.com

***Attorneys for Defendant***
***Ford Motor Company***

## <u>CERTIFICATE OF SERVICE</u>

I certify on this 7th day of November, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's notice of filing.

James E. Butler, Jr.
Ramsey B. Prather
Michael F. Williford
Daniel E. Philyaw
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, Georgia 31902
jim@butlerprather.com
ramsey@butlerprather.com
michael@butlerprather.com
dan@butlerprather.com

Gerald Davidson, Jr.
MAHAFFEY PICKENS TUCKER, LLP
1550 North Brown Road, Suite 125
Lawrenceville, Georgia 30043
gdavidson@mptlawfirm.com

Michael G. Gray
WALKER, HULBERT, GRAY & MOORE, LLP
909 Ball Street
P.O. Box 1770
Perry, Georgia 31069
mgray@whgmlaw.com

Michael D. Terry
Frank Lowrey VI
BONDURANT MIXSON & ELMORE
1201 W. Peachtree Street NW, Suite 3900
Atlanta, Georgia 30309
terry@bmelaw.com
lowrey@bmelaw.com

/s/ Philip A. Henderson
Philip A. Henderson

E-FILED IN OFFICE - GH
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

16-C-04179-S2

12/12/2022 3:16 PM
TIANA P. GARNER, CLERK

# STATE COURT OF GWINNETT COUNTY
# STATE OF GEORGIA

| | | |
|---|---|---|
| KIM HILL and ADAM HILL, surviving children and Co-Administrators of the Estates of Melvin Hill and Voncile Hill, Deceased, | * * * * | |
| Plaintiffs, | * * | CIVIL ACTION |
| v. | * * | FILE NO. 16 C 04179-2 |
| FORD MOTOR COMPANY, THE PEP BOYS- MANNY, MOE & JACK (Inc.), CURTIS CLINTON THOMPSON, JR., WILLIE BRASWELL, and DONALD TAYLOR, | * * * * * | |
| Defendants. | | |

### PLAINTIFFS' RESPONSE TO FORD'S EMERGENCY MOTION TO MAINTAIN THE SEALING PROTECTION OF CONFIDENTIAL DOCUMENTS

### AND

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO MODIFY PROTECTIVE ORDER ENTERED MARCH 20, 2017

Come now Plaintiffs and respond to Ford's "Emergency Motion to Maintain the Sealing Protection of Confidential Documents." This filing will also serve as Plaintiffs' reply brief in support of Plaintiffs' Motion to Modify Protective Order entered March 20, 2017.

1

## I.     Introduction

Obviously there is no 'emergency' when the movant asks the Court to put off briefing on its supposed "emergency motion" for over a month and makes no effort at all to have that motion heard by the Court.

Ford's so-called "emergency motion" was all about getting the Court to pre-judge Plaintiffs' motion to modify the protective order - which had been filed over a month before the "emergency motion."   Since the Court has now, by Rule Nisi, set Plaintiffs' motion for hearing on December 19, and since Ford has not requested a hearing on the "emergency motion" Ford wants to put off even briefing, Ford's "emergency motion" is moot.  Any supposed issues about the subject eight Plaintiffs' exhibits will be decided by the Court after argument on December 19.

Ford's opposition to Plaintiffs' motion and Ford's attempt to 'short-stop' it had nothing to do with the question whether the eight Plaintiffs' exhibits should now be belatedly 'sealed'; it's all about a wounded Ford trying to gin up yet more accusations against Plaintiffs' counsel.  Ford admits that in its response to Plaintiffs' motion.  Ford Resp. to Ps' Motion at 16[1] ("F. Violation of Protective Order.")   Ford's litigiousness ought to end, someday.

---

[1] Ford did not paginate its response, but the statement is on page 16, the last page.

## II.     There is no "emergency"

After Plaintiffs filed their motion to modify the protective order on October 5, 2022, Ford filed, on November 11, 2022, an "emergency motion *to maintain the sealing* protection of confidential documents." (Emphasis added.)  But the subject eight Plaintiffs' exhibits had been used in broadcast public trials, and Ford had never, in the five years since one of them was first publicly used, ever said one word about 'sealing' them.

By email dated November 14, 2022 Ford requested that the Court enter an order proposed by Ford.  That was, of course, an obvious and transparent attempt to get this Court to rule on the subject matter of Plaintiffs' motion to modify before Plaintiffs motion was heard by the Court. *See* Exh. A, compendium of emails with the Court, November 14-16, 2022.

In a bit of disturbing misdirection, Ford's email to the Court called its motion an "emergency motion to file under seal."  Exh. A, Henderson 11/14/22 email.  Ford said the motion so described was "regarding several exhibits introduced at trial by Plaintiffs."  But, as will be further addressed in section "II" below, those Plaintiffs' exhibits had been used in an open, public, and broadcast trial 4 ½ years ago when used in open court in broadcast trial proceedings, and had then been again used in an open, public, and broadcast trial in August 2022. During all of that time up until November 11, 2022 when Ford filed its "emergency

3

motion" Ford made no request that any of those eight Plaintiffs' exhibits be put "under seal." Ford's "emergency motion" *admits* that the exhibits had been part of the public record*:* Ford asked for an order "directing the Clerk of Court to **remove** Plaintiffs' Exhibit Nos. 114, 133, 133A, 135, 138, 154, 236, and 643 *from the public record* of this case *and file them under seal.*" Ford Emerg. Mot. at 6-7.

When Plaintiffs' counsel responded to Ford's email and "emergency motion" by email to the Court, the supposed 'emergency' disappeared – and has not been heard from since. Plaintiffs' counsel responded on November 14, and on November 16 Ford stated that briefing its supposed "emergency motion" could wait a couple of months, with briefing "after the December 19, 2022 hearing" on post-trial motions. *See* Exh. A (Boorman 11/16/22 1122 am email). Then, in a second email on November 16, Ford asked Ms. Hight to "confirm" that only Ford's post trial motions would be heard on December 19. That was the last this Court heard from Ford about the supposed "emergency."

Ford clearly did not want either its "emergency motion" or Plaintiffs' motion to modify the protective order to be heard at the already-scheduled hearing set for December 19. This Court resolved that issue by its Rule Nisi issued November 29, specifying that Plaintiffs' motion to modify the protective order would be heard at the December 19 hearing. *Ford has still not asked for a hearing on its supposed "emergency" motion.*

4

The reason Ford went silent is obvious:   documents publicly revealed in a public trial then again publicly revealed in a second public trial, both broadcast by CVN from whom videos of the entirety of those two trials are available to anyone at any time (*see* Exh. B (Hockensmith Aff.) and Exh. C (Andrews Aff.)) cannot possibly be said to be entitled to "confidentiality" treatment.

There's another reason Ford went silent:  Ford knows it cannot prove and has not actually tried to prove that which must be proved to satisfy the onerous burden of concealing court proceedings and exhibits used therein from the press and public.  Ga. Unif. Sup. Ct. R. 21 is clear:

> "All court records are public and are to be available for public inspection unless public access is limited by law or by the procedure set forth below."

*See also* Ga. Unif. Sup. Ct. R. 21.2 ("An order limiting access shall not be granted except upon a finding that the harm otherwise resulting to the privacy of a person in interest clearly outweighs the public interest.")[2]

---

[2] Before entering an order to seal a court record, the trial court must hold a hearing on the issue as required by Uniform Superior Court Rule 21.1.  Ruskell, *Georgia Practice & Procedure* § 1.20, Sealing court records (October 2022 Update).   "A party seeking to seal court records carries the burden of demonstrating that the harm otherwise resulting to his or her privacy ***clearly*** outweighs the public's substantial interest in access to the records."  *In re Atlanta Journal-Constitution*, 271 Ga. 436, 437-38 (1999) (emphasis added). As a result, Georgia courts are "obligated to weigh the harm to the party's privacy interest that will result from not sealing the records against the harm to the public's right of access." *Id.* at 438. "In discharging this duty, it is not sufficient for the trial court to forego making

"In the State of Georgia, the public and the press have traditionally enjoyed a right of access to court records. Public access protects litigants both present and future, because justice faces its gravest threat when courts dispense it secretly. Our system abhors star chamber proceedings with good reason. Like a candle, court records hidden under a bushel make scant contribution to their purpose."

*Atlanta J. v. Long*, 258 Ga. 410, 411, 369 (1988), opinion corrected, 377 S.E.2d 150 (Ga. 1989).

That is why Ford has in actuality not even attempted to prove that the subject Plaintiffs' exhibits were ever 'entitled' to any sort of confidentiality.  That is why Ford refuses to make the affiant upon whom Ford's posturing about these Plaintiffs' exhibits wholly depends, Mr. Krishnaswami, available for deposition, despite Plaintiffs twice having requested that deposition.

Ford's "emergency" motion is just as moot as is Ford's opposition to Plaintiffs' motion and Ford's belated request that the Court now suddenly "seal" eight Plaintiffs' exhibits.

---

findings of fact and simply state that the public's interest in access to court records is clearly outweighed by potential harm to the parties' privacy . . . Otherwise the trial court is not justified in closing the record from public scrutiny."  *Id.*

6

### III.    The subject eight Plaintiffs' exhibits.

Ford's "emergency motion" addresses eight Plaintiffs' exhibits[3] used in two public trials of this case, both of which trials were broadcast to the public on Courtroom View Network (CVN), from which videotapes of both trials remain available to anyone at any time.

From March 19 through April 6, 2018, those Plaintiffs' exhibits were discussed and displayed in open court 50 times.   Exh. D, McCallister Aff. ¶4. From August 1 through August 19, 2022, those Plaintiffs exhibits were discussed and displayed in open court another 48 times.   *Id*. ¶5.  The final verdict in the second trial was August 19, 2022.   At no time after that verdict and prior to November 11, 2022 – over a month after Plaintiffs filed their motion to modify the protective order – did Ford make a request to this Court that those Plaintiffs' exhibits be 'sealed' so the public and press could not see them.[4]

---

[3] Ford "emergency motion" at 2, listing Plaintiffs Exhibits 114, 133, 133A, 135, 138, 154, 236, and 643; Ford response to Plaintiffs' motion at 4 (Ford did not paginate its response, but the list appears on page 4 of its response).

[4] In addition to use of the Plaintiffs' exhibits in the 2018 trial and again in the 2022 trial, at least one of those exhibits was used at public hearings held by Judge Bratton before the first trial – again without complaint by Ford that any documents should be 'sealed' or that public access to the documents should be restricted, and such exhibits were provided to the Court. *See, e.g.,* 10/30/17 Hg. Tr. at 72, 74, 174 (PX 133). Those hearings commenced October 30, 2017 – over five years ago, and went on for several days.  (What the Court did with those exhibits after the hearing is unknown to Plaintiffs' counsel, but Ford did not request that the exhibits be

7

Seven of the eight Plaintiffs' exhibits, plus one page of the eighth, were in the Clerk's office for the past 4 ½ years. Ford made no request then to this Court that those exhibits be concealed from the public and press. *There is no doubt* those Plaintiffs' exhibits were in the Clerk's office for the last 4 ½ years: they were part of the trial court record prepared by the Clerk after Ford filed its "Notice of Appeal" on August 9, 2018. *See* Exh. E, "Index" to trial court record.[5] A quick review of the trial court record compiled by the Clerk shows that the following exhibits appear on *at least* the following pages of the Clerk's trial court record,[6] meaning those exhibits were in the Clerk's office and were also transmitted to the Clerk of the Court of Appeals (page references are to the Clerk's trial court record compiled and sent to the Court of Appeals Clerk):

> PX 114 – pps. 17217, 26748
> PX 133 – pps. 27057, 27222
> PX 133A (an edited version of PX 133) – p. 27269

---

sealed or restricted in any way during or after those hearings that commenced October 30, 2017.)

[5] Plaintiffs' counsel have not researched exactly when the Clerk prepared the trial court record, but Exh. E, the "Index," was received by Plaintiffs' counsel on December 18, 2018, as the last page indicates.

[6] Plaintiffs' counsel did not take the time to study each and every one of the volumes of the Clerk's record to find every single discussion of the eight Plaintiffs' exhibits during the first trial in 2018, since the facts recited herein are sufficient to establish that the Plaintiffs' exhibits which Ford now pretends to want 'sealed' have been available to the public in the Clerk's office for 4 ½ years, in addition to being available to the public from CVN.

PX 138 – p. 26660

PX 154 – pps. 26923, 27268

PX 236 – p. 27077[7]

On October 5, 2022, Plaintiffs filed their motion to modify the protective order, to reflect the reality that the subject documents had long ago and repeatedly been publicly disclosed, rendering the protective order moot, without any objection by Ford, which amounted to repeated waivers by Ford. Prior to the filing of that Plaintiffs' motion Ford had consented to broadcast of the trials in which such exhibits were used – twice.

On November 7, 2022, Ford responded to Plaintiffs' motion to modify the protective order.  Ford argued it had not waived claimed "confidentiality" as to those eight Plaintiffs' exhibits.  Ford also asserted that "the public's right to access court records is not unlimited, and it can be restricted where a party shows good cause and compelling interest to shield documents from public disclosure."  That is an argument that is directly contrary to the Rules of this Court:

> "Open courtrooms are an indispensable element of an effective and respected judicial system. It is the policy of Georgia's courts to promote access to and understanding of court proceedings not only by the participants in them but also by the general public and by news media who will report on the proceedings to the public."

Ga. Unif. Sup. Ct. R. 22(A).

---

[7] PX 643 was not tendered into evidence during the 2018 trial. PX 218 was tendered into evidence during the 2018 trial.  See Exh. D (McCallister Aff.) ¶4.

Moreover Ford has not even attempted to show "good cause" for hiding the eight Plaintiffs' exhibits from the public and from the press. Ford's response to Plaintiffs' motion speaks very generally of supposed "competitive harm," and "commercially sensitive information," and "highly proprietary Ford information." Ford Resp. to Ps' Motion at 2, 4, 11. But Ford has not identified a single specific statement in a single one of the eight Plaintiffs' exhibits that justifies secreting the document from the public and the press on such supposed grounds. In its response to Plaintiffs' motion, Ford offers only cursory and conclusory statements that a variety of the exhibits may reveal this or that thing. Ford Resp. to Ps' Motion at 11-12 ("a"-"f"). Ford also filed an Affidavit of its recidivist testifier Ramnarian Krishnaswami,[8] whose affidavit 'testimony' repeated the words Ford's lawyers put in Ford's response brief. Ford Resp. Exh. B, pp. 3-4 ("a"-"f"). Ford repeated the same assertions in its own "emergency motion," (Ford Emerg. Mot. at 3-5) and attached the same Krishnaswami affidavit.

---

[8] The Court will recall that Mr. Krishnaswami was Ford's official Corporate Representative to the 2018 trial, and his involvement is noted in this Court's Sanctions Order. ("Ford's corporate representative sat at counsel's table throughout trial, was privy to all that took place, and participated in the misconduct by mentioning seatbelts in his testimony." 7/19/18 Order at 5.) Mr. Krishnaswami is the Ford testifier whose 2018 trial testimony was replayed at the 2022 trial, protesting that the subject roof is "absolutely safe" and "there's nothing at all wrong" with it and that the roof on the Hills' truck "performed as it was designed to perform in this crash" and that "even with the benefit of hindsight Ford wouldn't change anything about the design or strength of the subject pickup truck." 8/5/22 TT (rough draft) at 54/23-55/12.

10

The reason Ford has elected not to even attempt to make a showing of "good cause and compelling interest to shield documents from public disclosure" is surely because there is no basis for such a claim, especially about documents some of which are now 20 years old. According to Ford's own listing of the eight Plaintiffs' exhibits, the 'newest' one, PX 138, dates from 2007 – 15 years ago.

In addition, the first five of the eight Plaintiffs' exhibits all relate to the ERSP Team being awarded the "Henry Ford" prize for technical excellence by creating the five-times-stronger roof for the Super Duty truck that was cheaper to build than the bad roof. (PX 114, 133, 133A,[9] 135, and 138). That ERSP Team roof is a design Ford used in the 2015 Ford F150 pickup trucks, and belatedly, in the 2017 model year Super Duty trucks. There can be nothing in the documents about the design which 'competitors' could not discover by simple reverse engineering of existing Ford products. Moreover to the extent those documents discuss the prior iteration of the Super Duty trucks, for model years 1999-2016, those trucks have been available to competitors for 24 years (since fall, 1998), and one would hope there's nothing about the roof in those trucks supposed 'competitors' would want to learn from. Finally, all the pertinent parts of those

---

[9] As the Court will recall, PX 133A is the version of PX 133 as edited by Ford testifier Michael Leigh, whom Ford put on the witness stand during the 2022 trial. PX 133 was created by ERSP Team member Jason Balzer, whose testimony was presented by Plaintiffs. Leigh 'edited' it to take out words and references made by Balzer.

11

documents – PX 133 and PX 133A – were discussed publicly in both broadcast trials during the testimony of Balzer, Leigh, Krishnaswami, Eikey, and probably Mr. Herbst as well.

The sixth document about which Ford now belatedly complains, PX 154, is nothing but a one-page document that states the federal minimum standard for roof strength – 1.5 SWR; the "Ford standard" – supposedly 1.8 SWR; and the Volvo standard – 3.5 SWR. The entire contents of that document were repeatedly expressed in words during broadcasted testimony during both trials; secreting the document hides nothing from the public and press, making Ford's "emergency motion" pointless.

The seventh document, PX 236, is a three-page document created by Ford engineer Steven Kozak, whose testimony Plaintiffs presented at both trials by videotaped deposition, including about that document. The only pertinence of that September 2005 document is that Kozak, then Ford's "Chief Global Safety Engineer," wrote that the roof strength of the Super Duty Crew Cab ("C/Cab") was 9,000 – which equates to a SWR of about 1.2. That fact from the document was recited in the testimony of multiple witnesses at both trials, making Ford's "emergency motion" as to that document pointless.

The eighth document, PX 643, is an undated one-page document about a model of the Volvo XC 90 that has been out of production for some two decades,

12

whose only utility is the Volvo conclusion "no structural collapse allowed."  PX

643 is one page out of a larger document, PX 218.  PX 218 is a 19 page

PowerPoint presentation by Jonas Bernquist of Volvo, to an industry conference as

the document shows it was printed by "www.autosteel.org."   That is a website of

the American Iron and Steel Institute.   Obviously there was nothing confidential

about that document when Mr. Bernquist made his PowerPoint presentation to

some seminar hosted by the American Iron and Steel Institute. PX 643 was not

used in the 2018 trial.  PX 218 was used in the 2018 trial.  PX 643 and PX 218

were both used in the 2022 trial, both were tendered, and it is believed both were

admitted into evidence.  *See* Exh. D (McCallister Aff.) at ¶¶3-8.

      In sum, there's just no 'there' there in Ford's emergency motion, or in its

response and opposition to Plaintiffs' motion to modify the protective order.

Instead, what Ford's opposition to Plaintiffs' motion and Ford's "emergency

motion" is really about is Ford trying to cook up more accusations against

Plaintiffs' counsel – which Ford explicitly admits!  *See* Ford Resp. to Ps' Motion at

16 (last page; Ford's response was not paginated).  This Court should not be drawn

in to such antics by Ford.

## **CONCLUSION**

      Ford's "emergency" motion should be denied. Plaintiffs' motion to modify

the protective order should be granted.

13

Respectfully submitted this 12th day of December, 2022.

BUTLER PRATHER LLP

*/s/ James E. Butler, Jr.*
James E. Butler, Jr.
Georgia Bar No. 099625
Ramsey B. Prather
Georgia Bar No. 658395
Daniel E. Philyaw
Georgia Bar No. 877765
P.O. Box 2766
105 13th Street
Columbus, GA 31902

Gerald Davidson, Jr.
Georgia Bar No. 206600
MAHAFFEY PICKENS & TUCKER LLP
1550 North Brown Road
Suite 125
Lawrenceville, GA 30043

Michael B. Terry
Georgia Bar No. 702582
Frank M. Lowrey
Georgia Bar No. 410310
Laurie Ann Taylor
Georgia Bar No. 452926
BONDURANT MIXSON & ELMORE
1201 W. Peachtree Street NW
Suite 3900
Atlanta, GA 30309

14

Larry Walker
Georgia Bar No. 732300
Michael G. Gray
Georgia Bar No. 306282
WALKER, HULBERT, GRAY & MOORE
P.O. Box 1770
Perry, GA 31069

## CERTIFICATE OF SERVICE

I certify on this 12th day of December, 2022, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's filing system.  Parties may access this filing through the Court's notice of filing.

Michael R. Boorman
Philip Henderson
Watson Spence LLP
999 Peachtree Street, N.E.
Suite 1130
Atlanta, GA 30309

Paul F. Malek
D. Alan Thomas
Huie Fernambucq & Stewart, LLP
3291 Highway 280, Ste. 200
Birmingham, AL 35243

Michael W. Eady
Thompson Coe Cousins & Irons LLP
2801 Via Fortuna Drive
Suite 300
Austin, TX 78746

William N. Withrow, Jr.
Troutman Pepper Hamilton
Sanders LLP
600 Peachtree Street NE
Suite 3000
Atlanta, GA 30308-2216

J. Randolph Evans
Francisco Rolon
SQUIRE PATTON BOGGS
1201 W. Peachtree Street NW
Suite 3150
Atlanta, GA 30309

This 12th day of December, 2022.

BUTLER PRATHER LLP

BY:  /s/ James E. Butler, Jr.

James E. Butler, Jr.
Georgia Bar No. 099625

16

# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| JAMES EDWARD ("Dusty") BROGDON, JR., as Executor of the Estate of Debra Sue Mills, deceased, and JAMES EDWARD BROGDON, JR., and RONALD BRIAN ("Rusty") BROGDON, Individually and as surviving children of Debra Sue Mills, | : : : : : : | |
| | : | Civil Action File No.: |
| And | : | 4:23-cv-00088-CDL |
| | : | |
| JAMES EDWARD BROGDON, JR., as Executor of the Estate of Herman Edwin Mills, deceased, and JASON EDWIN MILLS, Individually and as surviving child of Herman Edwin Mills, | : : : : : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FORD MOTOR COMPANY, | : | |
| | : | |
| Defendant. | : | |

---

**Exhibit B – Plaintiffs Objections to Ford's Proposed**
**"STIPULATED SHARING AND NON-SHARING PROTECTIVE ORDER"**

---

**Plaintiffs' General Objections to Ford's Proposed Order:**

Ford's proposed "protective order" suffers from inappropriate provisions that: attempt to label as "confidential" documents that have already been made public; shift the burden of persuasion with respect to whether a Ford document may be deemed "confidential;" gives Ford the power to *unilaterally* decide which Ford documents may be shared with counsel litigating similar cases against Ford; ignores this Court's Rule 16 & 26 Order (Doc. 12); and, subvert the federal rules of procedure and evidence.

1

Ford's proposed "protective order" is simply too complex, especially compared to Plaintiffs' proposed confidentiality order.  Ford's proposal creates more work for Plaintiffs' counsel and staff, increases the likelihood for more disputes and the necessity of motions and required intervention by the Court, and creates more opportunities for Ford to make accusations against Plaintiffs' counsel (e.g., claims that a "protective order has been violated)."

Plaintiffs should explain that they have proposed a confidentiality order mainly because Ford typically uses supposed "negotiations" over the terms of such an order to delay discovery. (For example, see 8/2/23 "Joint Report & Proposed Scheduling Order at pp. 23-24.)

Plaintiffs do not agree with the expansive ambit of Ford's claims to 'confidentiality' of Ford documents.  For example, in this case Ford claims that Ford is still entitled to label as "confidential" documents that were tendered into evidence in two *public, televised* trials in *Hill v. Ford,* and that Ford is entitled to label as "confidential" even documents actually *admitted* into evidence in either or both of those trials and thereafter filed in the Gwinnett County Clerk's office.

Plaintiffs respectfully submit that the universe of Ford documents that could legitimately be considered still "confidential" is extremely limited, given that the subject roof was designed 28 years ago, and the subject trucks with the subject roofs were first built and sold 25 years ago (in 1998-1999 as the model year 1999 "Super Duty" trucks), and were last built and sold by Ford some seven years ago (in 2015-2016, as the model year 2016 "Super Duty" trucks).  That necessarily means that Ford's 'competitors' have had a lot of time to reverse engineer the subject roof, if they ever had any inclination to do so (which, given the nature of the roof, is rather unimaginable).

Plaintiffs object to Ford's proposed restrictions on sharing. The dangers of such restrictions have been proved in many auto products cases. The need for that objection was demonstrated in *Hill v. Ford*. For years Ford failed to disclose to plaintiffs in that case the existence of the "Enhanced Roof Strength Project for Super Duty trucks," whereby in 2005 Ford created a team of Ford engineers to design an entirely new roof for the subject trucks, which that team of engineers did in some 16 months, designing a roof five times stronger than the subject roof and cheaper to manufacture (Ford did not use that roof in its "Super Duty" trucks until the model year 2017 trucks). Plaintiffs were able to find out about those crucial facts only from another plaintiffs' lawyer, who had on his own ferreted out that information, in another case.

Such a long, complex, and prolix "protective order" as Ford has proposed is simply not necessary *in this case*. As Plaintiffs have stated, there should be no need for anything but for very limited additional discovery of Ford documents in this case. *See* 8/2/23 Joint Report & Proposed Scheduling Order at 2-4. These same Plaintiffs' counsel went through Ford documents produced by Ford in the *Hill* case and Ford documents obtained from other plaintiffs' attorneys and distilled them down to those tendered at one or both of the *Hill* trials. Those documents cannot possibly be entitled to "confidential" treatment. So the only Ford documents that could be at issue in this case are documents produced by Ford in *Hill* that Plaintiffs' counsel may have somehow missed, and the relatively few 'update' documents produced by Ford in this case. *See* 8/2/23 "Joint Report & Proposed Scheduling Order" at p. 3.

For all of the foregoing reasons, Plaintiffs respectfully submit that use by the Court of Ford's proposed "protective order" in this case, or anything like it, is unnecessary as well as inappropriate and will cause needless delay and disputes.

In order to preserve and maintain the confidentiality of certain confidential, commercial,

and/or proprietary documents and information produced or to be produced by FORD MOTOR COMPANY ("Ford") in this action, it is hereby ordered that:

**Plaintiffs' Position:**

The confidentiality order should be equally applicable to both parties.

1.     Documents or information to be produced or provided by Ford or any party in this litigation that contain confidential, commercially sensitive, private personal information and/or proprietary information may be designated as confidential by marking or placing the applicable notice "Subject to Non-Sharing Protective Order," "Subject to Protective Order," or "Confidential," or substantially similar language on media containing the documents, on the document itself, or on a copy of the document, in such a way that it does not obscure the text or other content of the document.

**Plaintiffs' Position:**

Ford's proposed protective order greatly complicates the discovery process and creates opportunity for discovery gamesmanship by allowing Ford to mark some documents for "sharing" with other plaintiffs' attorneys working on similar litigation and other documents as "non-sharing." Since the parties agree on the scope of relevant vehicles (model year 1999-2016 Ford "Super Duty" trucks[1]) there is no good reason to vest Ford with the power to unilaterally declare that some Ford documents may be shared with other plaintiffs' attorneys litigating similar cases but that other such documents may not be shared.  Moreover, injecting that complexity into a Court "protective order" is intended to be, and is a trap – it enables Ford to accuse Plaintiffs' counsel of sharing the wrong Ford documents.

---

[1] "Super Duty" trucks include those vehicles designated by Ford as F-250, F-350, F-450, and F-550 trucks.

4

2.      As used in this Order, the terms "documents" or "information" mean all written material, electronic data, videotapes and all other tangible items, produced in whatever format (e.g., hard copy, electronic, digital, etc.) and on whatever media (e.g., hard copy, videotape, computer diskette, CD-ROM, DVD, by secure electronic transmission, hard drive or otherwise).

3.      Documents or information designated as "Subject to Non-Sharing Protective Order," "Subject to Protective Order," or "Confidential" or substantially similar language in accordance with the provisions of this Order ("Protected Documents" or "Protected Information") shall only be used, shown or disclosed as provided in this Order. However, nothing in this Order shall limit a party's use or disclosure of his or her own information designated as a Protected Document or Protected Information.

4.      If a receiving party disagrees with the "Protected" designation of any document or information, the party will notify the producing party in a written letter and identify the challenged document(s) with specificity, including Bates-number(s) where available, and the specific grounds for the objection to the designation. If the parties are unable to resolve the issue of confidentiality regarding the challenged document(s), Ford will thereafter timely apply to the Court, within 20 days or a time period mutually agreed to by the parties or ordered by the Court, to set a hearing for the purpose of establishing that the challenged document(s) or information is/are confidential. Protected Documents will continue to be treated as such pending determination by the Court as to the confidential status. If no motion or request to set a hearing is filed by Ford within 20 days or a time period mutually agreed to by the parties or ordered by the Court, the documents in dispute will no longer be deemed "Protected."

**Plaintiffs' Position:**

Plaintiffs object to this paragraph. The burden of persuasion for a protective order belongs on

5

the party seeking the protection of the documents. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (Federal Rule of Civil Procedure "Rule 26(c) places the burden of persuasion on the party seeking the protective order.").  By inclusion of language requiring that Plaintiffs must state *to Ford* "the specific grounds for the objection to the designation" Ford purports to put that burden on Plaintiffs.

A "protective order" should be simple; if Ford declares a Ford document is "confidential" and Plaintiffs disagree, then Ford has to file a motion with the Court or the claim of "confidentiality" is waived. There should be no need for any "hearing" about a dispute about whether Ford may declare that one of its documents shall be treated as "confidential."  The provision "[i]f no motion . . . is filed by Ford within 20 days or a time period mutually agreed to by the parties or ordered by the Court" unnecessarily requires further conferences among counsel. If the parties disagree, Ford should have to file a motion, or there is a waiver - period.

5.      Protected Documents and any copies thereof shall be maintained confidential by the persons authorized to receive the documents pursuant to Paragraph 6 and shall be used only for prosecuting, defending, or attempting to settle this litigation, subject to the limitations set forth herein.

6.      Protected Documents shall be disclosed only to "Qualified Persons."  Qualified Persons are limited to:

    a.      Counsel of Record for the parties, and the parties;

    b.      Paralegals and staff employed by Counsel of Record and involved in the preparation and trial of this action;

    c.      A vendor hired by a party to host data and maintain a database of electronic data or perform other work related to the collection, review or production of

documents in the case;

d.      Experts and non-attorney consultants retained by the parties for the
        preparation and/or trial of this case, provided that no disclosure shall be made
        to any expert or consultant who is employed by a competitor of Ford;

e.      The Court, the Court's staff, witnesses, and the jury in this case; and

f.      With respect to documents designated as "Sharing" or "Subject to Protective
        Order," attorneys representing Plaintiff(s) and the experts and non-attorney
        consultants retained by such attorneys in other cases pending against Ford
        involving a 1999-2016 Ford F-250, F-350, F-450, or F-550 involved in a
        rollover with claims that the roof or restraint system were defective, provided
        no disclosure shall be made to any expert or consultant who is employed by a
        competitor of Ford.

**Plaintiffs' Position:**

Plaintiffs object to this paragraph. Sub-paragraph (f) adds another layer of potential confusion. As stated, there is no good reason to allow Ford to decree that some Ford documents may be 'shared' with other plaintiffs' attorneys working on similar litigation but other Ford documents may not be shared with other such plaintiffs' attorneys. There's no reason for a "protective order" that sets up disputes about whether a particular document may be shared or not.

Plaintiffs also object to the language "provided no disclosure shall be made to any expert or consultant who is employed by a competitor of Ford." That requires that Plaintiffs' counsel ensure that no testifying or consulting expert is doing any consulting work for any other automaker. That is unnecessary, since the design of the subject roofs is ancient – some 28 years

old, and trucks with the subject roof were first sold 25 years ago, fully available to "competitors," if any competitors had any reason to investigate the design of the subject roof, which is highly unlikely, given the obvious and well known (because of so many lawsuits) deficiencies with the subject roof.  The subject trucks have not been sold for seven years. Simply put there is no "competitive advantage" to another automaker from getting Ford documents about this obsolete and now-ditched roof design.

      7.     The receiving party must make reasonable efforts to ensure the individuals described in Paragraphs 6(b), 6(c), 6(d) and 6(f) above are Qualified Persons.

      8.     Before receiving access to any Protected Document or the information contained therein, each person described in Paragraphs 6(b), 6(c), 6(d) and 6(f) above shall execute a "Written Assurance" in the form contained in **Exhibit A**, attached hereto.  The receiving party shall retain each such executed Written Assurance and shall keep a list identifying (a) all persons described in Paragraphs 6(b), 6(c), 6(d) and 6(f) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons.  Each such executed Written Assurance and list shall be submitted to counsel for Ford at the termination of this litigation or upon Order of the Court requiring production, whichever comes first.  However, for consulting experts who were not designated as testifying experts, the receiving party may redact the name, address, and signature of the consultant before disclosing the executed Exhibit A and document list for that person.  To the extent the "Qualified Persons" described in Paragraphs 6(d) and 6(f) above include privileged non-testifying expert consultants, the receiving party shall retain each such executed Exhibit A and shall keep a list identifying (a) all such non-testifying expert consultants described in paragraphs 6(d) and 6(f) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons.  In the event

that the Producing Party seeks to compel the production of each unredacted and executed Exhibit A, the receiving party shall submit each unredacted and executed Exhibit A and list to the Court for *in camera* inspection.  Persons described in paragraph 6(b) shall be covered under the signature of Counsel of Record.

**Plaintiffs' Position:**

Plaintiffs object to this paragraph.

*First*, Plaintiffs' counsel's paralegals, investigator, and staff should not be required to sign a copy of the confidentiality order, as they are under the supervision of counsel.

*Second*, no reason has been stated by Ford for Ford's claim of entitlement to know which other plaintiffs' lawyers have signed the "Written Assurance" and received Ford documents from Plaintiffs' counsel in this case which were produced by Ford in this case.  To the extent in other or future cases Ford seeks to withhold documents (just as Ford withheld the crucial ERSP documents in the *Hill v. Ford* case) giving Ford access to information about with whom these Plaintiffs' counsel shared documents informs Ford about what documents it might safely be able to withhold in other and future cases.  One significant impediment to a corporate defendant withholding evidence in one case is not knowing what evidence the plaintiff in that case already has.  (That is because the fact of withholding might then be provable, possibly resulting in sanctions.)  *In any other case, Ford should honestly and fulsomely respond to the discovery requests made in that case,* and Ford has no real need or entitlement to know what Ford documents the plaintiff in that other case may already have.   In all likelihood those provisions are unnecessary, anyway - Ford always marks their supposedly "confidential" documents with a Bates label that identifies the case where the document was produced, so if in some other case a plaintiff uses a Ford document, Ford will be able to identify where that document came from –

when the document is used.

9.    As the Protected Documents may only be distributed to Qualified Persons, Qualified Persons may not post Protected Documents on any website or internet accessible document repository, excepting a vendor hosted review platform for the sole purpose of reviewing the information for the subject case and not for any other purpose, and shall not under any circumstance sell, offer for sale, advertise, or publicize either the Protected Documents and the Confidential information contained therein or the fact that such persons have obtained the Producing Party's Protected Documents and confidential information.

**Plaintiffs' Position:**

Plaintiffs object to this paragraph because it is overbroad. The phrase "any website or internet accessible document repository" could be interpreted to include websites such as Dropbox, which are essential for efficient transmission of documents and can be used with sufficient protections.

10.    To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony  and/or trial testimony dealing with, referring to, or referencing the Protected Documents or information.  Designation of the portion of the transcript (including exhibits) which contains references to Protected Documents or information shall be made (i) by a statement to such effect on the record during the proceeding in which the testimony is received, or (ii) by written notice served on counsel of record in this Litigation within thirty (30) days after the receipt of the draft or final transcript (whichever is received earlier) of such proceeding (as used herein, the term "draft transcript" does not include an ASCII or rough transcript). However,

before such thirty (30) day period expires, all testimony, exhibits, and transcripts of depositions or other testimony shall be treated as Protected Documents. All portions of transcripts not designated as Confidential within the time frame provided herein shall be deemed not confidential.

**Plaintiffs' Position:**

This paragraph is objectionable.

*First,* the paragraph provides that Ford documents "used as exhibits at [a public] trial . . . shall remain subject to the provisions of this Order" – that is, supposedly "confidential", "along with the transcript pages of the . . . trial testimony dealing with, referring to, or referencing the Protected Documents or information." That is contrary to the Court's Rule 16 & 26 Order. (Doc. 12 at 9) ("the court finds that absent compelling circumstances, that such orders do not apply to exclude evidence from public disclosure when that evidence is relied upon in support of or opposition to any motion or relevant issue in any hearing or trial. There is a presumption that any evidence relied upon in a filed motion or in opposition to any such motion or to be used in a hearing or trial shall be a public record."). There is no doubt that Ford totally disagrees with that provision of this Court's Order:

*Second,* this is but another paragraph sure to foment disputes that are unnecessary. For example, who is to decide which "transcript pages of the . . . trial testimony [deal] with, [refer] to, or [reference] the Protected Documents or information." There's no doubt what Ford intends: Ford is to decide. Ford is still arguing, in this case, just as it is still arguing in *Hill v. Ford*, that documents actually admitted into evidence in one or both of the public, televised *Hill* trials are

11

still "confidential."[2]

*Third,* the paragraph makes every deposition taken in the case "confidential" for at least 30 days while Ford decides whether or not to 'designate' parts of the deposition transcript "confidential." Ford counsel will be present for any deposition; if a document Ford has labeled "protected" is used, it's easy enough for Ford to right then announce that Ford maintains its claim of "confidentiality."

11.    If any party disagrees with the designation of all or part of a deposition transcript designated as "Protected" pursuant to Paragraph 10 above, such party must notify the designating party in a written letter and identify the testimony (by line and page designation) and the specific grounds for the objection to the designation. If the parties are unable to resolve the issue of confidentiality regarding the challenged deposition testimony, the designating party will thereafter timely apply to the Court, within 20 days or a time period mutually agreed to by the parties or ordered by the Court, to set a hearing for the purpose of establishing that the challenged deposition testimony is confidential. The designated deposition testimony at issue, and any related exhibits, will continue to be treated as a Protected Document, in accord with its respective designation, pending determination by the Court as to the confidential status. If no motion or request to set a hearing is filed by the designating party within 20 days or a time period mutually agreed to by the parties or ordered by the Court, the deposition testimony in dispute will no

_____

[2] Ford has refused to agree to Plaintiffs' proposed stipulation that documents tendered in either of those two *Hill* trials shall be deemed to have been produced in this case. *See* 8/2/23 "Joint Report and Proposed Scheduling Order," Exhibit 2. *See also Id.* at n.3. Ford insists that with respect to documents produced in the *Hill* case and used in this *Mills* case these Plaintiffs must abide by the "protective order" entered by the Cobb County State Court in the *Hill* case. *Id.* at p. 7 ("Plaintiffs' proposed stipulations, as currently drafted, do not account for the need to continue to follow the protective order in *Hill* as it relates to the treatment of evidence and testimony subject to that protective order.")

longer be deemed "Protected."

**Plaintiffs' Position:**

Plaintiffs object to this paragraph. The burden of persuasion for a protective order belongs to the party seeking the protection of the documents. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (Federal Rule of Civil Procedure "Rule 26(c) places the burden of persuasion on the party seeking the protective order.").  By inclusion of this language, that Plaintiffs must state *to Ford* "the specific grounds for the objection to the designation" Ford purports to put that burden on Plaintiffs.

This paragraph again requires yet another 'conference' among counsel or intervention by the Court, about some 'time period' other than 20 days that is "mutually agreed to by the parties or ordered by the Court."   This paragraph also presumes the necessity for a hearing on such a relatively trifling matter.

12.     All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed under seal by following the protocols for sealed filings in this Court.  The parties agree that there is good cause and there exist compelling reasons to seal the requested information.  However, if a party believes that documents designated as Protected Documents cannot or should not be sealed, pursuant to the protocols and rules in this Court, then the party wishing to file the materials shall particularly identify the documents or information that it wishes to file to the producing party, in writing.  The parties will then meet and confer, in a good faith effort to resolve the dispute.  Failing agreement, the party wishing to file the materials must request a ruling from the Court on whether the Protected Documents in question must be submitted under seal.  The producing party shall have the burden of justifying that the materials must be submitted under seal.  Absent written permission from the

producing party or a court Order denying a motion to seal, a receiving party may not file in the public record any Protected Documents.

**Plaintiffs' Position:**

*First*, this paragraph is contrary to this Court's Order.  Doc. 12 at 9 ("the court finds that absent compelling circumstances, that such orders do not apply to exclude evidence from public disclosure when that evidence is relied upon in support of or opposition to any motion or relevant issue in any hearing or trial. There is a presumption that any evidence relied upon in a filed motion or in opposition to any such motion or to be used in a hearing or trial shall be a public record. Accordingly, when materials are to be used in the foregoing manner, a party will not be allowed to file the materials under seal just because they are covered by a discovery protective order.").

*Second*, this paragraph is an invitation to needless litigiousness.  The phrase "information taken from any Protected Document shall be filed under seal" is vague and obscure and subject to interpretation.   Who is to decide whether something in the text of a pleading filed by Plaintiffs is "information taken from any Protected Document" that "shall be filed under seal" – and when is that decision to be made? As to the 'who' question, Ford's intent is that Ford shall decide.  As to the 'when' question, Ford does not say.  But Ford surely intends, after a pleading by Plaintiffs is filed, to accuse Plaintiffs' counsel of referencing "information taken from a [supposedly] Protected Document" so that Ford can accuse Plaintiffs' counsel of "violating" the "protective order," thus creating yet another dispute for this Court to mediate.   Ford will litigate, i.e., make accusations, about that.  The only safe way for Plaintiffs' counsel to avoid the accusation and avoid another time-wasting delaying ginned-up 'dispute' is to let Ford preview whatever Plaintiffs' counsel seek to file, so Ford can make its adjudication before filing.  That is another

14

example of Ford attempting to use a "protective order" for improper purposes – litigiousness, delay, and to gain some advantage.

   *Third*, this paragraph requires that counsel engage in yet another time-wasting conference about whether a document shall be filed under seal, and absent agreement by Ford, it is the Plaintiffs, not Ford, who then "must request a ruling from the Court on whether the Protected Documents in question must be submitted under seal." Given that most things Plaintiffs have to file with the Court are subject to deadlines, that means if there's any chance Ford might contend that a document should have been filed under seal or that Ford might contend that the pleading "contain[s] . . . information taken from any Protected Document", Plaintiffs' counsel best give Ford a preview of the pleading and obtain Ford's permission to file, or file under seal. Otherwise Plaintiffs' counsel risks the sideshow of more accusations by Ford and the time-wasting delay of another intervention by the Court. That means more delay and more burden on Plaintiffs' counsel.

   *Fourth*, this paragraph states that "[t]he parties agree that there is good cause and there exist compelling reasons to seal the requested information." That is manifestly untrue. Plaintiffs do not agree to that; it is a pure fact that almost all the Ford documents Plaintiffs will use are documents admitted or at least tendered in one or both of the *Hill v. Ford* public and televised trials, which are not entitled to any claim of "confidentiality". It is also irrefutably true that the Ford documents at issue in this case are all about a roof design Ford abandoned seven years ago, which design is nearly 30 years old (the design process began in 1994) and was used in trucks Ford sold starting 25 years ago.[3] And, as Plaintiffs have stated, there should be no need for

---

[3] *See MicroStraegy, Inc. v. Business Objects, S.A.*, 661 F. Supp. 2d 548 (E.D. Va. 2009) (holding that 9 year old document which referenced products that had not been on the market for over half a decade should no longer be considered trade secret) ("The court finds that the Competitive

anything but for very limited additional discovery of Ford documents in this case. *See* 8/2/23 Joint Report & Proposed Scheduling Order at 2-4.

13.     To the extent Ford is requested to produce documents it has determined should not be subject to the sharing provision of this protective order in Paragraph 6(f), Ford will designate such documents as "Non-Sharing."  Documents designated as "Non-Sharing" shall not be shared under paragraph 6(f).

**Plaintiffs' Position:**

Plaintiffs object to this paragraph. This paragraph provides Ford with the unilateral power to determine which documents may be shared with other plaintiffs' attorneys litigating similar cases against Ford Motor Company.  No justification is required from Ford for a decision that a document is not to be shared.  No reason is articulated by Ford for decreeing that some document is "non-sharing."  Based upon the text of their proposed orders, Plaintiffs and Ford agree that the scope of relevant vehicles include model year 1999-2016 "Super Duty" trucks.  There's no reason not to share such documents with other plaintiffs' attorneys who have litigated with Ford some 200 times about the subject truck roofs.

---

Recipe does not hold any value, economic or otherwise, and that is it not reasonable, under the circumstances, for this document to maintain its secrecy. It is not just the mere passage of time that has rendered the Competitive Recipe valueless, it also no longer holds value because the products it references have not been on the market for over half a decade, and the market for these products is constantly changing."); *Contratto v. Ethicon, Inc.*, 227 F.R.D. 304, 309 (N.D. Cal. 2005) ("I conclude that none of the documents defendants seek to protect contain trade secrets or other confidential research, development, or commercial information that Rule 26 protects. . . The final document in Exhibit G is a memorandum, dated April 13, 1993, summarizing the results of the study. *Id.*, Ex. G. Defendants assert that this information could be useful to a competitor seeking to develop a similar product. The documents are more than ten years old and do not contain the type of information which would appear to injure defendants if publicly disclosed."); *Vendavo, Inc. v. Long,* 397 F. Supp. 3d 1115, 1133 (N.D. Ill. 2019) (holding that documents over 3 years old which contained client information were not protectable as trade secret where evidence showed that company's sales cycle was approximately 2.5 years from start to finish).

16

This paragraph is sure to gin up more disputes about whether a document may or may not be shared.

14.     With respect to Protected Documents designated as "Non-Sharing," within one-hundred and twenty (120) days after the conclusion of this case, counsel for the parties who received Protected Documents, including any documents that any such party disclosed to any person described in paragraph 6(b) or (c) above, shall either (a) return to Ford the Protected Documents; or (b) securely destroy the Protected Documents and certify such destruction to Ford within one hundred and fifty (150) days after the conclusion of this case.

**Plaintiffs' Position:**

Plaintiffs incorporate their response to Paragraph 13 of Ford's proposed confidentiality order, above. There is no good reason for Ford to be able to unilaterally decree that some documents are "non-sharing."

15.     With respect to documents designated as "Sharing" or "Subject to Protective Order," Counsel for the parties shall not be required to return the Protected Documents to the Producing Party after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

**Plaintiffs' Position:**

Plaintiffs incorporate their response to Paragraph 13 of Ford's proposed confidentiality order, above. There is no good reason for Ford to be able to unilaterally declare that certain documents are "sharing" and that others are "non-sharing."

16.     Submission to regulatory agency or governmental entity:

    a.     This Protective Order shall not be construed to prohibit Ford's disclosure or production of safety-related information to a regulatory agency or

17

governmental entity with an interest in the safety-related information. Material subject to this protective order may only be disclosed to a regulatory agency or governmental entity with an interest in the safety-related information by Ford, and such disclosure shall be made pursuant to 49 CFR 512 or similar applicable rules.

**Plaintiffs' Position:**

This subparagraph makes no sense. Paragraph "3" of Ford's long proposed "protective order" states "nothing in this Order shall limit a party's use or disclosure of his or her own information designated as a Protected Document or Protected Information." Obviously Ford may do whatever it wants with those documents it alone has decreed are "Protected Documents."

b. If other parties to this Protective Order have a reasonable belief that certain documents are safety-related and need to be disclosed to a regulatory agency or governmental entity, they are not prohibited from advising the regulatory agency or governmental entity that they believe such documents were produced in this case, however, any disclosure of such documents shall adhere to the procedure described in Paragraph 16(a).

**Plaintiffs' Position:**

As a very practical matter, this subparagraph is unnecessary: surely after 25 years of the subject roof being publicly sold by Ford any "regulatory agency" has all the information it may need or want. But as a matter of principle if Plaintiffs were to come to believe they should submit supposedly "Protected Documents" to, for example, NHTSA, Ford should not be in a position to adjudicate whether Plaintiffs may do so – that is a matter Plaintiffs should, and

would, take up with the Court.[4]

17.     Inadvertent or unintentional production of documents or information containing confidential information that should have been designated as Protected Document(s) shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

18.     The parties may disclose and produce responsive documents to each other in this litigation and seek to do so without risking waiver of any attorney-client privilege, work product, or other applicable privilege or protection.  As such, the parties will adhere to the following procedures with regard to the production of privileged or protected material, should that occur:

    a.      The production of documents (including both paper documents and electronically stored information or "ESI") subject to protection by the attorney-client and/or work product doctrine or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the Producing Party notifies the receiving party, in writing, of the production after its discovery of the same.

    b.      If the Producing Party notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the Producing Party or destroyed or deleted, on request of the Producing Party.  The Producing Party will provide a privilege log providing information upon request or if required by the Federal Rules of Civil Procedure and applicable case law to the receiving party at the time the

---

[4] There seems little or no likelihood that would happen: NHTSA has done nothing about the defective roofs despite 25 years of litigation with some 200 lawsuits; NHTSA seldom takes enforcement actions in such mass defect situations.

19

Producing Party provides the receiving party notice of the Identified Materials. If the receiving party has any notes or other work product reflecting the contents of the Identified Materials, the receiving party will not review or use those materials unless a court later designates the Identified Materials as not privileged or protected.

c.  The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms, and any other location that stores the documents. The receiving party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents have been designated by a court as not privileged or protected.

d.  The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made. The receiving party must take reasonable steps to retrieve the Identified Materials if the receiving party disclosed the Identified Materials before being notified.

e.  If any receiving party is in receipt of a document from a Producing Party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the Producing Party of the production of that document so that the Producing Party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Stipulation and Order.

f.  The party returning the Identified Materials may move the Court for an order

compelling production of some or all of the Identified Material returned or destroyed, but the basis for such motion may not be based on the fact or circumstances of the production.

g.       The disclosure of Identified Materials in this action is not a waiver of the attorney-client privilege, work product doctrine, or any other asserted privilege in any other federal or state proceeding, pursuant to Rule 502(d) of the Federal Rules of Evidence.

**Plaintiffs' Position:**

Plaintiffs object to this paragraph. This provision is unnecessary and is merely a subversion of the federal rules of civil procedure and evidence. Federal Rule of Civil Procedure 26(b)(5)(B), Federal Rule of Evidence 502, and other applicable federal case law provide a party with protections and the guidelines that a party must follow to ensure privileges are retained.

19.     No provision of this stipulated order shall constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine. No provision of this stipulated order is intended to waive or limit in any way either party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent set forth herein.

20.     In the event that a party produces a document without a confidentiality designation as permitted by this Order, the following procedures shall apply:

a.       The Producing Party shall, within fourteen (14) days of the discovery of the disclosure, notify the other party in writing.  The party receiving such notice shall promptly destroy the document, including any copies it has, or return the

document on request of the Producing Party.  Within ten (10) days after such

document is returned or its destruction certified, the Producing Party will

produce a new version of any such document that was returned or destroyed,

which will contain the appropriate confidentiality designation.

b.      If the receiving party disputes the Producing Party's claim of confidentiality,

that party may move the Court to challenge the confidential designation in

accordance with Paragraph 4 of this Order.  If the receiving party elects to file

such a motion, the receiving party may retain possession of the document, but

shall treat it in accordance with the terms of the Protective Order pending

resolution of the motion.  If the receiving party's motion is denied, the parties

shall promptly comply with Paragraph 18(a) of this Order.

c.      The production of such document does not constitute a waiver of any claim of

confidentiality as set forth in this order or any other matter in any other

jurisdiction, unless otherwise ordered by the Court.

**Plaintiffs' Position:**

This paragraph is another formula for needless litigiousness.

For example, how are Plaintiffs to know that Ford has come up with a new claim that an

already-produced document is supposedly "confidential" within "14 days" after whenever it was

Ford claims it 'discovered' that claim?  Impossible, without a sideshow of

emails/letters/conferences, and discovery within discovery.

For example, the paragraph entitles Ford to make Plaintiffs "destroy" an already

produced document without Ford having to first replace it with one marked "confidential." That

22

will be hard to keep up with – another burden on Plaintiffs' counsel, and an opportunity for mischief.

For example, contrary to other parts of Ford's proposed "protective order," when Ford belatedly claims "confidentiality" as to an already-produced Ford document, it is the Plaintiff that must "move the Court" to challenge the Ford claim, rather than Ford bearing the burden of filing a motion, as the law requires. It is not the receiving party's burden to prove non-confidential status. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (Federal Rule of Civil Procedure "Rule 26(c) places the burden of persuasion on the party seeking the protective order.").

21. Complete copies of documents authored by an employee of Ford in the ordinary course of business, without handwriting or marginalia, and produced by Ford in accordance with this Order shall be admissible into evidence without further authentication as true and correct copies of the originals, but objections to admissibility on other grounds are not hereby precluded.

**Plaintiffs' Position:**

Plaintiffs object to the inclusion of the phrase "without handwriting or marginalia."

*First*, documents produced during discovery can be authentic *per se*, whether they have handwriting on them or not. Law Co., Inc. v. Mohawk Const. & Supply Co., Inc., 577 F.3d 1164 (10th Cir. 2009) ("documents produced during discovery that are on letterhead of the opposing, producing party are authentic *per se* for purposes of Federal Rule of Evidence 901."); Robbins v. Lucky Stores, Inc., 243 F.3d 549 n.2 (9th Cir. 2000) ("we have found that the receipt of documents pursuant to a discovery request is sufficient to satisfy the authentication requirements of Rule 901").

*Second*, the term "marginalia" is vague and ambiguous – purposefully so.

*Third*, this is an un-subtle and unannounced attempt to except from the proffered agreement of admissibility crucial documents admitted in to evidence at the Hill v. Ford trials that contained important "marginalia" – such as a document created by one of Ford's expert witnesses at the Hill trial wherein he deleted from a memorandum written by a member of the ERSP team words like "safety," and "failure," and "crush," and "collapse," and "honest."

22.    This Protective Order may not be waived, modified, abandoned, or terminated, in whole or part, except by an instrument in writing signed by the parties.  If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

23.    After termination of this litigation, the provisions of this Order shall continue to be binding.  This Court retains and shall have jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

24.    This Protective Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

**Plaintiffs' Position:**

Plaintiffs object to this paragraph. This provision is a vast overreach that attempts to bind persons that have nothing to do with this litigation, are not considered as persons with whom confidential documents may be shared, and have not agreed to be bound by the terms of this protective order.

24

**SO ORDERED, this _____ day of _____, 2023.**

_____

**CLAY D. LAND**
**UNITED STATES DISTRICT COURT JUDGE**

## EXHIBIT A

**AFFIDAVIT OF** _____, being duly sworn

and personally appearing before the undersigned attesting officer, duly authorized by law to

administer oaths, deposes and says that the within statements are true and correct:

### 1.

I have read the Stipulated Protective Order attached hereto, and I understand its terms and

meanings.

### 2.

I agree that my signature below submits me to the jurisdiction of the USDC for the

Middle District of Georgia, in the above captioned case and binds me to the provisions of the

Stipulated Protective Order, including to all promises undertaken in the Order, as if originally

agreed by me.

Further Affiant sayeth not.

This _____ day of _____, 202___.


_____
                                        **AFFIANT**


SUBSCRIBED AND SWORN to before me
this ____ day of _____, _____.


_____
NOTARY PUBLIC
Name:_____
No.:_____
My Commission Expires: _____

| | |
|---|---|
| **From:** | cmecfhelpdesk@gamd.uscourts.gov |
| **Sent:** | Thursday, August 31, 2023 12:16 PM |
| **To:** | cmecfhelpdesk@gamd.uscourts.gov |
| **Subject:** | Activity in Case 4:23-cv-00088-CDL BROGDON  et al v. FORD MOTOR COMPANY Order on Motion for Protective Order |

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

**U.S. District Court <span style="color:red">[LIVE AREA]</span>**

**Middle District of Georgia**

## Notice of Electronic Filing

The following transaction was entered on 8/31/2023 at 12:16 PM EDT and filed on 8/31/2023

| | |
|---|---|
| **Case Name:** | BROGDON et al v. FORD MOTOR COMPANY |
| **Case Number:** | 4:23-cv-00088-CDL |
| **Filer:** | |
| **Document Number:** | 23(No document attached) |

**Docket Text:**

<span style="color:blue">This is a text only entry; no document issued. **ORDER** deferring ruling on [19] Motion for Protective Order. Defendant proposes a confidentiality protective order essentially verbatim to one the Court previously entered in a similar case which was consented to by the parties in that other case. Plaintiffs in this case object to that order on a myriad of grounds and certainly do not consent to it. As the Court tried to indicate at the scheduling conference in this case, it found its previous order reasonable and found no reason to substantially depart from it in this case. However, the Court does acknowledge that Plaintiff does not agree with its terms. Accordingly, within 7 days, Defendant shall send another draft order to the Court that contains the terms and conditions from the Court's previous order, except any reference in the order that the Plaintiff agrees to any part of the order shall be deleted and/or revised to make clear what the Court is ordering but does not indicate or suggest that Plaintiff agrees with those provisions. Plaintiff, of course, will nevertheless be bound with them. While Defendant shall send Plaintiff's counsel a courtesy copy of what it sends to the Court, the Court has made up its mind and no further squabbling will be fruitful. Ordered by US DISTRICT JUDGE CLAY D LAND on 08/31/2023 (CCL)</span>

**4:23-cv-00088-CDL Notice has been electronically mailed to:**

JAMES E BUTLER, JR    jim@butlerprather.com, beth@butlerprather.com, kim@butlerprather.com, sarah@butlerprather.com, susie@butlerprather.com

HAROLD D MELTON      harold.melton@troutman.com, rebecca.fowler@troutman.com

MICHAEL R BOORMAN      mboorman@watsonspence.com, ahoffman@watsonspence.com, mmiller@watsonspence.com

CHARLES EDWARD PEELER      charles.peeler@troutman.com, rebecca.fowler@troutman.com

LARAE D MOORE      lmoore@pagescrantom.com, dkinder@pagescrantom.com

RAMSEY B PRATHER      ramsey@butlerprather.com, ginger@butlerprather.com

PHILIP HENDERSON      phenderson@watsonspence.com, ahoffman@watsonspence.com, mmiller@watsonspence.com

PAUL F MALEK      pmalek@huielaw.com

DANIEL EVAN PHILYAW      dan@butlerprather.com

ALLISON BRENNAN BAILEY      allison@butlerprather.com

ELIZABETH B WRIGHT      elizabeth.wright@thompsonhine.com, ecfdocket@thompsonhine.com

**4:23-cv-00088-CDL On this date, a copy of this document, including any attachments, has been mailed by United States Postal Service to any non CM/ECF participants as indicated below::**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**COLUMBUS DIVISION**

| | | |
|---|---|---|
| JAMES EDWARD ("Dusty") BROGDON, JR., as Executor of the Estate of Debra Sue Mills, deceased, and JAMES EDWARD BROGDON, JR., and RONALD BRIAN ("Rusty") BROGDON, Individually and as surviving children of Debra Sue Mills, | : : : : : : : | Civil Action File No.: 4:23-cv-00088-CDL |
| And | : : | |
| JAMES EDWARD BROGDON, JR., as Executor of the Estate of Herman Edwin Mills, deceased, and JASON EDWIN MILLS, Individually and as surviving child of Herman Edwin Mills, | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | |
| FORD MOTOR COMPANY, | : : | |
| Defendant. | : | |

## SHARING AND NON-SHARING PROTECTIVE ORDER

In order to preserve and maintain the confidentiality of certain confidential, commercial and/or proprietary documents and information produced or to be produced by FORD MOTOR COMPANY ("Ford") in this action, it is ordered that:

1.      Documents or information to be produced or provided by Ford or any party in this litigation that contain confidential, commercially sensitive, private personal information and/or proprietary information may be designated as confidential by marking or placing the applicable notice "Subject to Non-Sharing Protective Order," "Subject to Protective Order," or "Confidential," or substantially similar language on media containing the documents, on the

document itself, or on a copy of the document, in such a way that it does not obscure the text or other content of the document.

2.      As used in this Order, the terms "documents" or "information" mean all written material, electronic data, videotapes and all other tangible items, produced in whatever format (e.g., hard copy, electronic, digital, etc.) and on whatever media (e.g., hard copy, videotape, computer diskette, CD-ROM, DVD, by secure electronic transmission, hard drive or otherwise).

3.      Documents or information designated as "Subject to Non-Sharing Protective Order," "Subject to Protective Order," or "Confidential" or substantially similar language in accordance with the provisions of this Order ("Protected Documents" or "Protected Information") shall only be used, shown or disclosed as provided in this Order.  However, nothing in this Order shall limit a party's use or disclosure of his or her own information designated as a Protected Document or Protected Information.

4.      If a receiving party disagrees with the "Protected" designation of any document or information, the party will notify the producing party in a written letter and identify the challenged document(s) with specificity, including Bates-number(s) where available, and the specific grounds for the objection to the designation.  If the parties are unable to resolve the issue of confidentiality regarding the challenged document(s), Ford will thereafter timely apply to the Court, within 20 days or a time period mutually agreed to by the parties or ordered by the Court, to set a hearing for the purpose of establishing that the challenged document(s) or information is/are confidential. Protected Documents will continue to be treated as such pending determination by the Court as to the confidential status.  If no motion or request to set a hearing is filed by Ford within 20 days or a time period mutually agreed to by the parties or ordered by the Court, the documents in dispute will no longer be deemed "Protected."

5.      Protected Documents and any copies thereof shall be maintained confidential by the persons authorized to receive the documents pursuant to paragraph 6 and shall be used only for prosecuting, defending, or attempting to settle this litigation, subject to the limitations set forth herein.

6.      Protected Documents shall be disclosed only to "Qualified Persons."   Qualified Persons are limited to:

a.      Counsel of Record for the parties, and the parties;

b.      Paralegals and staff employed by Counsel of Record and involved in the preparation and trial of this action;

c.      A vendor hired by a party to host data and maintain a database of electronic data or perform other work related to the collection, review or production of documents in the case;

d.      Experts and non-attorney consultants retained by the parties for the preparation and/or trial of this case, provided that no disclosure shall be made without first obtaining an order of the Court to any expert or consultant who is employed by a competitor of Ford;

e.      The Court, the Court's staff, witnesses, and the jury in this case; and

f.      With respect to documents designated as "Sharing" or "Subject to Protective Order," attorneys representing Plaintiff(s) and the experts and non-attorney consultants retained by such attorneys, in other cases pending against Ford involving a 1999-2016 Ford F-250, F-350, F-450, or F-550 involved in a rollover with claims that the roof or restraint system were defective, provided no disclosure shall be made without first obtaining an

3

order of the Court to any expert or consultant who is employed by a competitor of Ford.

7.     The receiving party must make reasonable efforts to ensure the individuals described in paragraphs 6(b), 6(c), 6(d) and 6(f) above are Qualified Persons.

8.     Before receiving access to any Protected Document or the information contained therein, each person described in paragraphs 6(b), 6(c), 6(d) and 6(f) above shall execute a "Written Assurance" in the form contained in Exhibit A, attached hereto.  The receiving party shall retain each such executed Written Assurance and shall keep a list identifying (a) all persons described in paragraphs 6(b), 6(c), 6(d) and 6(f) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons.  Each such executed Written Assurance and list shall be submitted to counsel for Ford at the termination of this litigation or upon Order of the Court requiring production, whichever comes first.  However, for consulting experts who were not designated as testifying experts, the receiving party may redact the name, address, and signature of the consultant before disclosing the executed Exhibit A and document list for that person.  To the extent the "Qualified Persons" described in paragraph 6(d) and 6(f) above include privileged non-testifying expert consultants, the receiving party shall retain each such executed Exhibit A and shall keep a list identifying (a) all such non-testifying expert consultants described in paragraphs 6(d) and 6(f) above to whom Protected Documents have been disclosed, and (b) all Protected Documents disclosed to such persons.  In the event that Ford (or the producing party) seeks to compel the production of each unredacted and executed Exhibit A for good cause, the receiving party shall submit each unredacted and executed Exhibit A and list to the Court for *in camera* inspection.  Persons described in paragraph 6(b) shall be covered under the signature of Counsel of Record.

9.      As the Protected Documents may only be distributed to Qualified Persons, Qualified Persons may not post Protected Documents on any website or internet accessible document repository, excepting a vendor hosted review platform for the sole purpose of reviewing the information for the subject case and not for any other purpose, and shall not under any circumstance sell, offer for sale, advertise, or publicize either the Protected Documents and the Confidential information contained therein or the fact that such persons have obtained Ford's (or the producing party's) Protected Documents and confidential information.

10.     To the extent that Protected Documents or information obtained therefrom are used in the taking of depositions (including exhibits) or other pretrial testimony and/or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony dealing with, referring to or referencing the Protected Documents or information.  Designation of the portion of the transcript (including exhibits) which contains references to Protected Documents or information shall be made (i) by a statement to such effect on the record during the proceeding in which the testimony is received, or (ii) by written notice served on counsel of record in this Litigation within thirty (30) business days after the receipt of the draft or final transcript (whichever is received earlier) of such proceeding (as used herein, the term "draft transcript" does not include an ASCII or rough transcript).  However, before such thirty (30) day period expires, all testimony, exhibits and transcripts of depositions or other testimony shall be treated as Protected Documents.  All portions of transcripts not designed as Confidential within the time frame provided herein shall be deemed not confidential.

11.     If any party disagrees with the designation of all or part of a deposition transcript designated as "Protected" pursuant to Paragraph 10 above, such party must notify the designating

party in a written letter and identify the testimony (by line and page designation) and the specific grounds for the objection to the designation. If the parties are unable to resolve the issue of confidentiality regarding the challenged deposition testimony, the designating party will thereafter timely apply to the Court, within 20 days or a time period mutually agreed to by the parties or ordered by the Court, to set a hearing for the purpose of establishing that the challenged deposition testimony is confidential. The designated deposition testimony at issue, and any related exhibits, will continue to be treated as a Protected Document, in accord with its respective designation, pending determination by the Court as to the confidential status. If no motion or request to set a hearing is filed by the designating party within 20 days or a time period mutually agreed to by the parties or ordered by the Court, the deposition testimony in dispute will no longer be deemed "Protected."

12. All documents that are filed with the Court that contain any portion of any Protected Document or information taken from any Protected Document shall be filed under seal by following the protocols for sealed filings in this Court. However, if a party believes that documents designated as Protected Documents cannot or should not be sealed, pursuant to the protocols and rules in this Court, then the party wishing to file the materials shall particularly identify the documents or information that it wishes to file to the producing party, in writing. The parties will then meet and confer, in a good faith effort to resolve the dispute. Failing agreement, the party wishing to file the materials must request a ruling from the Court on whether the Protected Documents in question must be submitted under seal. The producing party shall have the burden of justifying that the materials must be submitted under seal. Absent written permission from the producing party or a court Order denying a motion to seal, a receiving party may not file in the public record any Protected Documents.

13.    To the extent Ford (or the producing party) is requested to produce documents it has determined should not be subject to the sharing provision of this protective order in paragraph 6(f), Ford (or the producing party) will designate such documents as "Non-Sharing." Documents designated as "Non-Sharing" shall not be shared under paragraph 6(f).

14.    With respect to Protected Documents designated as "Non-Sharing," within one hundred and twenty (120) days after the conclusion of this case, counsel for the parties who received Protected Documents, including any documents that any such party disclosed to any person described in paragraph 6(b) or (c) above, shall either (a) return to Ford (or the producing party) the Protected Documents; or (b) securely destroy the Protected Documents and certify such destruction to Ford (or the producing party) within one hundred and fifty (150) days after the conclusion of this case.

15.    With respect to documents designated as "Sharing" or "Subject to Protective Order," Counsel for the parties shall not be required to return the Protected Documents to Ford after the conclusion of this case and may retain the documents pursuant to the terms of this Order.

16.    Submission to regulatory agency or governmental entity:

a.    This protective order shall not be construed to prohibit Ford's disclosure or production of safety-related information to a regulatory agency or governmental entity with an interest in the safety-related information. Material subject to this protective order may only be disclosed to a regulatory agency or governmental entity with an interest in the safety-related information by Ford, and such disclosure shall be made pursuant to 49 CFR 512 or similar applicable rules.

      b.    If other parties to this protective order have a reasonable belief that certain documents are safety-related and need to be disclosed to a regulatory agency or governmental entity, they are not prohibited from advising the regulatory agency or governmental entity that they believe such documents were produced in this case, however, any disclosure of such documents shall adhere to the procedure described in Paragraph 16(a).

17.    Inadvertent or unintentional production of documents or information containing confidential information that should have been designated as Protected Document(s) shall not be deemed a waiver in whole or in part of the party's claims of confidentiality.

18.    The parties may disclose and produce responsive documents to each other in this litigation, and seek to do so without risking waiver of any attorney-client privilege, work product or other applicable privilege or protection.  As such, the parties will adhere to the following procedures with regard to the production of privileged or protected material, should that occur:

      a.    The production of documents (including both paper documents and electronically stored information or "ESI") subject to protection by the attorney-client and/or work product doctrine or by another legal privilege protecting information from discovery, shall not constitute a waiver of any privilege or other protection, provided that the producing party notifies the receiving party, in writing, of the production after its discovery of the same.

      b.    If the producing party notifies the receiving party after discovery that privileged materials (hereinafter referred to as the "Identified Materials") have been produced, the Identified Materials and all copies of those materials shall be returned to the producing party or destroyed or deleted,

on request of the producing party. The producing party will provide a privilege log containing the information upon request or if required by the Federal Rules of Civil Procedure, and applicable case law to the receiving party at the time the producing party provides the receiving party notice of the Identified Materials. If the receiving party has any notes or other work product reflecting the contents of the Identified Materials, the receiving party will not review or use those materials unless a court later designates the Identified Materials as not privileged or protected.

c. The Identified Materials shall be deleted from any systems used to house the documents, including document review databases, e-rooms and any other location that stores the documents. The receiving party may make no use of the Identified Materials during any aspect of this matter or any other matter, including in depositions or at trial, unless the documents have been designated by a court as not privileged or protected.

d. The contents of the Identified Materials shall not be disclosed to anyone who was not already aware of the contents of them before the notice was made. The receiving party must take reasonable steps to retrieve the Identified Materials if the receiving party disclosed the Identified Materials before being notified.

e. If any receiving party is in receipt of a document from a producing party which the receiving party has reason to believe is privileged, the receiving party shall in good faith take reasonable steps to promptly notify the producing party of the production of that document so that the producing

party may make a determination of whether it wishes to have the documents returned or destroyed pursuant to this Order.

      f.      The party returning the Identified Materials may move the Court for an order compelling production of some or all of the Identified Material returned or destroyed, but the basis for such motion may not be based on the fact or circumstances of the production.

      g.      The disclosure of Identified Materials in this action is not a waiver of the attorney-client privilege, work product doctrine or any other asserted privilege in any other federal or state proceeding, pursuant to Rule 502(d) of the Federal Rules of Evidence.

19.    No provision of this order shall constitute a concession by any party that any documents are subject to protection by the attorney-client privilege, the work product doctrine or any other potentially applicable privilege or doctrine. No provision of this order is intended to waive or limit in any way either party's right to contest any privilege claims that may be asserted with respect to any of the documents produced except to the extent set forth herein.

20.    In the event that a party produces a document without a confidentiality designation as permitted by this Order, the following procedures shall apply:

      a.      The producing party shall, within fourteen (14) days of the discovery of the disclosure, notify the other party in writing. The party receiving such notice shall promptly destroy the document, including any copies it has, or return the document on request of the producing party. Within ten (10) days after such document is returned or its destruction certified, the producing party

will produce a new version of any such document that was returned or destroyed, which will contain the appropriate confidentiality designation.

b.    If the receiving party disputes the producing party's claim of confidentiality, that party may move the Court to challenge the confidential designation in accordance with Paragraph 4 of this Order.  If the receiving party elects to file such a motion, the receiving party may retain possession of the document, but shall treat it in accordance with the terms of the Protective Order pending resolution of the motion.  If the receiving party's motion is denied, the parties shall promptly comply with Paragraph 18(a) of this Order.

c.    The production of such document does not constitute a waiver of any claim of confidentiality as set forth in this order or any other matter in any other jurisdiction, unless otherwise ordered by the Court.

21.    Complete copies of documents authored by an employee of Ford in the ordinary course of business, without handwriting or marginalia, and produced by Ford in accordance with this Order shall be admissible into evidence without further authentication as true and correct copies of the originals, but objections to admissibility on other grounds are not hereby precluded.

22.    This Protective Order may not be waived, modified, abandoned or terminated, in whole or part, except by an instrument in writing signed by the parties.  If any provision of this Protective Order shall be held invalid for any reason whatsoever, the remaining provisions shall not be affected thereby.

23.    After termination of this litigation, the provisions of this Order shall continue to be binding.  This Court retains and shall have jurisdiction over the parties and recipients of the

11

Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

24.     This Protective Order shall be binding upon the parties hereto, upon their attorneys, and upon the parties' and their attorneys' successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries, divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

25.     THE COURT NOTIFIES THE PARTIES THAT IT HAS MADE CHANGES TO THE PROPOSED LANGUAGE.  The Court finds that good cause exists for the entry of this Protective Order with the following condition: Notwithstanding anything to the contrary in the foregoing Order, the Court finds that the Protective Order shall not apply to exclude evidence from public disclosure when that evidence is relied upon in support of or opposition to any motion or during any hearing or trial.  **If a party seeks to rely upon any evidence covered by this Protective Order in support of or in opposition to any motion or during any hearing or trial, that party shall notify the opposing party at least 14 days prior to filing the motion or opposition and/or 14 days prior to the hearing or pretrial conference. The opposing party shall have 7 days to respond objecting to the public disclosure of the information, and the opposing party may also file a motion to seal stating a <u>compelling reason</u> to require that the materials be filed under seal.  Any response to the motion to seal shall be filed within 7 days. Although any motion to seal must be filed on the public docket, any briefs in support of or opposition to the motion to seal, along with exhibits thereto, may be filed with restricted access so they are accessible only by the Court and the opposing party; the parties must contemporaneously file redacted versions of the briefs on the public docket.  <u>The parties should not count on a same-day or next-day ruling on a motion to seal.</u>** The Court will closely

scrutinize any such requests at that time, with the presumption that any evidence relied upon in a

filed motion or in opposition to any such motion or to be used in a hearing or trial shall be public

record. Accordingly, when materials are to be used in the foregoing manner, a party will not be

allowed to file the materials under seal just because they are covered by this discovery Protective

Order. **In the meantime, before the Court has had the opportunity to rule upon whether a**

**motion that contains protected material should be permitted to be filed under seal, the party**

**filing the document that includes the protected material shall file its motion/filing with**

**restricted access so that it may be accessed only by the Court and the opposing party and**

**shall contemporaneously file a redacted copy of the motion/filing on the public record that**

**redacts the protected material. If a motion to seal is denied, the Court will direct the Court**

**to un-restrict the restricted filing.**

IT IS SO ORDERED, this 7th day of September, 2023.

s/Clay D. Land
CLAY D. LAND
U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

**SUBMITTED BY:**

**_/s/ Michael R. Boorman_**
Michael R. Boorman
Georgia Bar No.: 067798
Philip A. Henderson
Georgia Bar No.: 604769
WATSON SPENCE LLP
999 Peachtree Street NE
Suite 1130
Atlanta, GA 30309
Telephone: 229-436-1545
mboorman@watsonspence.com
phenderson@watsonspence.com

Harold D. Melton
Georgia Bar No.: 501570
Charles E. Peeler
Georgia Bar No.: 570399
TROUTMAN PEPPER HAMILTON SANDERS LLP
600 Peachtree Street, N.E., Suite 3000
Atlanta, GA 30308-2216
harold.melton@troutman.com
Charles.peeler@troutman.com

Elizabeth B. Wright
*Admitted Pro Hac Vice*
Thompson Hine LLP
3900 Key Center
127 Public Square
Cleveland, OH 44114
Elizabeth.wright@thompsonhine.com

Paul F. Malek
*Admitted Pro Hac Vice*
HUIE, FERNAMBUCQ & STEWART, LLP
3291 US Highway 280, Suite 200
Birmingham, AL 35243
pmalek@huielaw.com

*Attorneys for Defendant Ford Motor Company*

14

## EXHIBIT A

**AFFIDAVIT OF** _____, being duly sworn and

personally appearing before the undersigned attesting officer, duly authorized by law to administer

oaths, deposes and says that the within statements are true and correct:

1.

I have read the Sharing and Non-Sharing Protective Order attached hereto, and I understand

its terms and meanings.

2.

I agree that my signature below submits me to the jurisdiction of the United States District

Court for the Middle District of Georgia in the above captioned case and binds me to the provisions

of the Sharing and Non-Sharing Protective Order, including to all promises undertaken in the

Order, as if originally agreed by me.

Further Affiant sayeth not.

This _____ day of _____, 202__.


_____
                                                    **AFFIANT**


SUBSCRIBED AND SWORN to before me
this ____ day of _____, ____.


_____
NOTARY PUBLIC
Name:_____
No.:_____
My Commission Expires: _____