## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

CAROLINE PATTON GRIFFIN,       :
Individually and as Surviving Spouse :
and Executor of the Estate of LEE :
DIXON GRIFFIN, JR.,            :
                               :
    Plaintiff,               :       Civil Action File No.:
                               :       1:23-cv-03107-TWT
v.                             :
                               :
TOYOTA MOTOR CORPORATION,      :
TOYOTA MOTOR NORTH             :
AMERICA, INC.; TOYOTA MOTOR    :
SALES, U.S.A., INC.; TOYOTA    :
MOTOR ENGINEERING &            :
MANUFACTURING NORTH            :
AMERICA, INC.; and TOYOTA      :
MOTOR MANUFACTURING,           :
TEXAS, INC.,                   :
                               :
    Defendants.              :
                               :

## TOYOTA DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendants Toyota Motor Corporation, Toyota Motor North America, Inc.,

Toyota Motor Sales, U.S.A. Inc., Toyota Motor Engineering & Manufacturing

North America, Inc., and Toyota Motor Manufacturing, Texas, Inc. (collectively,

the "Toyota Defendants") submit this brief in Support of their Motion for Partial

Summary Judgment.

## I.    <u>INTRODUCTION</u>

### A. Summary of Arguments.

Plaintiff cannot prevail on her failure to warn claims because: a) the Toyota Defendants had no duty to warn of the obvious and known danger of leaving an automobile's engine running inside an enclosed, attached garage; and b) Plaintiff cannot establish a causal link between the Toyota Defendants' allegedly inadequate warnings and the subject incident. The Court should also enter summary judgment as to any claim premised on the Toyota Defendants' failure to recall the 2017 Tacoma pickup because Georgia law does not recognize this legal theory. Additionally, Plaintiff cannot recover punitive damages in this case where, as here, there is a bona fide dispute as to the propriety of the Toyota Defendants' design choices. The Toyota Defendants are also entitled to summary judgment as to Plaintiff's factually unsupported "joint venture, alter ego, and piercing the corporate veil" claims and her legally unfounded claim that joint and several liability should be imposed on the Toyota Defendants. Thus, Plaintiff's only liability theory that can survive summary judgment is the disputed claim that the 2017 Tacoma is defectively designed because it lacks an automatic engine shut-off device.

### B.  The Subject Incident and Plaintiff's Claims.

Plaintiff alleges that the decedent, Lee Griffin, Jr., died and she sustained injuries from carbon monoxide poisoning after Mr. Griffin parked his 2017 Toyota

Tacoma pickup in the garage attached to their residence sometime during the day on July 4, 2022, left the engine running, exited the vehicle with the Smart Key[1] fob on his person, and then the couple went to sleep in their bedroom. <u>See</u> Exhibit[2] 1, at p. 6. Plaintiff alleges that the Tacoma was defective because Toyota did not provide an automatic engine shut-off feature or provide additional or different warnings. <u>See</u> Exhibit 5, at p. 33. More specifically, Plaintiff's experts allege that Toyota should have provided different audible warnings and an external visual alert to notify the decedent that he had left the Tacoma's engine running. <u>See id.</u>; Exhibit 1 at pp. 12-14; Exhibit 6, at pp. 91-92.

## II.    <u>ARGUMENT</u>

### <u>SUMMARY JUDGMENT STANDARD</u>

A claim can survive summary judgment only if a plaintiff produces counter-summary judgment evidence sufficient to create a genuine issue of fact as to every essential element.  Fed. R. Civ. P. 56(e); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  The party moving for summary judgment on the ground that such evidence is lacking has no burden of production.  "Instead, … the burden on the moving party may be discharged by 'showing', that is, pointing out to the district court, that there

---

[1] The 2017 Toyota Tacoma is equipped with "keyless" or push button ignition, which the Toyota Defendants refer to as the "Smart Key System." <u>See</u> Exhibit 4 (contains confidential information that the Toyota Defendants seek to file under seal), at p. 9.

[2] All exhibits cited in this brief are identified and submitted with the Toyota Defendants' Separate Statement of Material Facts As to Which There Is No Genuine Issue To Be Tried In Support of Their Motion for Summary Judgment, dated January 3, 2025.

is an absence of evidence to support the nonmoving party's case." <u>Id.</u>  Once the moving party satisfies this initial burden, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings … [T]he adverse party's response must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); <u>see also</u> <u>Welch v. General Motors Corp.</u>, 949 F. Supp. 843, 844 (N.D. Ga. 1996).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a reasonable jury could reasonably find for plaintiff."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986); <u>see also</u> <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002) (A party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict.").  Where "the summary judgment evidence establishes that one of the essential elements of the Plaintiff's cause of action does not exist as a matter of law, all other contested issues of fact are rendered immaterial."  <u>Celotex</u>, 477 U.S. at 323.

**A.    Plaintiff's Failure to Warn Claims Fail As a Matter of Law.**

**1.    <u>The Toyota Defendants Had No Duty to Warn of the Obvious and Known Danger of Leaving an Automobile's Engine Running Inside An Enclosed Garage.</u>**

The risk of injury or death from carbon monoxide produced by an automobile engine left running inside an enclosed garage is generally well understood.  See Exhibit 7, at p. 1; Exhibit 4, at p. 10 (citing, e.g., published warnings from Georgia Department of Public Health). Moreover, it is undisputed that Plaintiff and decedent both knew prior to the subject incident that it was dangerous to leave an automobile's engine running inside a garage and that it was dangerous to inhale carbon monoxide fumes. See Exhibit 8, at p. 120. A manufacturer has no duty to warn where the danger associated with a product is obvious or known to individuals using the product. Moore v. ECI Mgmt., 246 Ga. App. 601, 606, 542 S.E.2d 115, 121 (2000). The open and obvious nature of a product is determined from an objective point of view, and the rule of no duty to warn for open and obvious dangers "applies where it appears that the person using the product should know of the danger, or should in using the product discover the danger." Yaeger v. Stith Equip. Co., 177 Ga. App. 835, 341 S.E.2d 492, 493 (1986) (citations omitted); see also Vickery v. Waste Mgmt. of Ga., Inc., 249 Ga. App. 659, 660 (2001) (finding no duty to warn of the danger associated with a truck backing up when "the fact that the truck which back[ed] over [plaintiff] would sometimes move in reverse was an obvious and well-known danger.").

The decedent purchased the Tacoma as a new vehicle on November 10, 2017. See Exhibit 9. He was its primary driver leading up to the subject incident. See Exhibit 8, at p. 35. There is no evidence that the decedent ever left the Tacoma's

engine running on any prior occasion, meaning that he must have known how to properly shut off its engine.  See id. at p. 122. The decedent only had to simply press the Tacoma's engine stop button as he had done numerous times before and, at least under Plaintiff's theory of the case, he and his wife would not have been exposed to carbon monoxide from the Tacoma. As Plaintiff's own testimony demonstrates, both Plaintiff and the decedent understood the basic premise of personal safety that vehicle operators should not leave an automobile's engine running inside an enclosed garage. Thus, Toyota had no duty to warn under the circumstances of this case.

### 2.  Plaintiff Cannot Establish a Causal Link Between the Toyota Defendants' Allegedly Inadequate Warning and the Subject Incident.

Plaintiff's failure to warn claims fail for the separate reason that Plaintiff cannot establish causation. In addition to showing that a manufacturer has breached its duty to warn, a plaintiff must also show that the manufacturer's failure to warn was the proximate cause of her injuries.  Jackson v. Johnson & Johnson., 2022 WL 3701620 (N.D. Ga., Aug. 26, 2022), at *1 ("In Georgia, proximate causation is an essential element in a cause of action for design defect or failure to warn, whether

premised on a negligence or strict-liability theory."); <u>Wilson Foods Corp. v. Turner</u>, 218 Ga. App. 74, 75 (1995).

As Plaintiff's testimony establishes, she and decedent both knew prior to the subject incident that it was dangerous to leave an automobile's engine running inside a garage and that it was dangerous to inhale carbon monoxide fumes. <u>See</u> Exhibit 8, at p. 120. Failure to provide a warning about a risk already known cannot be the proximate cause of Plaintiff's injuries. The purpose of warnings is to inform and provide critical knowledge. Plaintiff admitted she and the decedent already possessed the knowledge needed. There is, therefore, no causation.

Plaintiff's inadequate warning claim also fails because there is no evidence that the decedent or Plaintiff read the 2017 Tacoma's owner's manual's warnings and instructions regarding the operation of its Smart Key System prior to the subject incident. <u>See</u> Exhibit 8 at p. 45. In <u>Wilson</u>, a minor suffered burns when an adult used shortening to cook food, poured the hot shortening back into its original container, and the hot shortening dissolved the container and fell on the minor. 218 Ga. App. at 74. On behalf of the minor, the plaintiff sued the defendant (the manufacturer of the shortening container) and contended that the defendant failed to warn the plaintiff of the danger of pouring hot shortening into the container. <u>Id.</u> The court of appeals determined the plaintiff's complaint alleged a deficiency in the content of the warning, i.e., a deficiency in the adequacy of the warning regarding

the potential risk of the product. Id. at 76. It also found that the plaintiff's failure to read instructions or printed warnings prevents him "from recovering on a claim grounded on failure to provide adequate warning of the product's potential risk." Id. at 74. Because there was no evidence that the adult who had cooked with the shortening ever read the warning, a directed verdict in the defendant's favor was proper. Id. at 76-77.[3]

Plaintiff also has no evidence that any inadequacies in the Tacoma's exterior audible alerts, or the lack of exterior visual alerts, caused or contributed to the decedent's failure to turn off the Tacoma's engine after parking it in his garage. The presence (or lack thereof) of a proposed alternative warning is crucial to the proximate cause inquiry. See Thomas v. Hubtex Maschinenbau GmbH & Co. KG, No. 7:06-cv-81, 2008 WL 4371977, at *10 (M.D. Ga. 2008); see also Ebenhoech v. Koppers Indus., Inc., 239 F. Supp.2d 455, 468 (D. N.J. 2002) (explaining that "expert testimony which concludes that warnings are deficient in placement, design, orientation and content is unreliable if the expert has not created or even designed a warning device which would have been more appropriate or tested its effectiveness,

---

[3] See also Gaddy v. Terex Corp., No. 1:14-CV-1928-WSD, 2017 WL 1493615, at *8-*9 (N.D. Ga. 2017) (summary judgment warranted on failure to warn claims where "Plaintiff fails to present evidence to show that Plaintiff read the warnings"); Dozier Crane & Machinery, Inc. v. Gibson, 284 Ga. App. 496, 500 (2007) ("Generally, where there is no evidence that a plaintiff read the allegedly inadequate warning, causation cannot be shown."); Thornton v. E.I. Du Pont De Nemours & Co., 22 F.3d 284, 290 (11th Cir. 1994) (finding that failure to read warning printed on product precludes recovery against manufacturer); Lamb by Shepard v. Sears, Roebuck & Co., 1 F.3d 1184, 1191 (11th Cir. 1993) (holding no proximate cause existed between alleged failure to warn and plaintiff's injuries); Powell v. Harsco Corp., 209 Ga. App. 348, 349-350 (1993) (alleged inadequacy of instructions cannot be proximate cause of injury when instructions were not read).

has not read the warnings which were present on the product, and has not pointed to other manufacturers using better warnings.").

Plaintiff has no evidence to demonstrate that a different written, audible or visual alert would have caused the decedent to shut off the Tacoma's engine at the time of the subject incident. Plaintiff's keyless ignition design and warnings expert, Peter Leiss, deferred the issue of warnings causation to a human factors expert. See Exhibit 6, at p. 109 (testifying that whether different warnings would have changed Mr. Griffin's behavior "would be outside of my scope of work. I believe that would fall more to human factors.").

Moreover, Plaintiff's human factors expert, Joellen Gill, offered no opinions in her report on what alternative warning the Toyota Defendants should have given, or whether the absence of such a warning was the proximate cause of Plaintiff's alleged harm (see Exhibit 1, at pp. 18-20), and confirmed she had no such opinions at her deposition. Exhibit 11, at pp. 65-68. In a second report issued *after* her deposition, Ms. Gill claims, with no supporting explanation or evidence, that it would have been "an effective external audible warning" to design the Tacoma to "blow its horn," and "[a]n effective audible alert would have resulted in Mr. Griffin recognizing he had not turned off his vehicle and therefore would have resulted in a change in his behavior." Exhibit 7, at p. 4. Ms. Gill disclosed no testing, evaluations, data or scientific evidence of any kind to support these conclusory opinions and as

such, they are unreliable and inadmissible under Fed. R. Evid. 702.[4] They are also

untimely and should therefore be excluded under Fed. R. Civ. P. 37(c)(1).[5]

### B.    Plaintiff's Failure to Recall Claim Fails As a Matter of Law.

Paragraph 87 of Plaintiff's Complaint alleges that the Toyota Defendants have

"a duty . . . to remedy such [unreasonably] dangerous conditions" in the subject

Tacoma pickup. Plaintiff's Complaint, Dkt. No. 1-1. Likewise, Paragraph 89 of the

Complaint alleges that the Toyota Defendants breached a duty owed to Plaintiff and

the decedent because they "did not remedy the dangers and defects in the Toyota

Tacoma." Failure to recall a product (i.e., failure to remedy a defect) claims are not

recognized stand-alone liability theories in Georgia.  Failure to recall claims validly

arise only where a manufacturer has voluntarily undertaken the duty to recall (but

has done so inadequately), or where the regulating government agency has ordered

a remedy or recall. See Ford Motor Co. v. Reese, 300 Ga. App. 82, 85 (2009) ("no

common law duty exists under Georgia law requiring a manufacturer to recall a

product after the product has left the manufacturer's control."); Williamson v.

Walmart Stores, Inc., No. 3:14–CV–97, 2015 WL 1565474, at *6 (M.D. Ga. 2015).

Neither of those circumstances are present in this case, and Plaintiff has not alleged

---

[4] See Toyota Defendants' separate Motion to Exclude Warnings Opinions of Joellen Gill Pursuant to Fed. R. Evid. 702, dated January 3, 2025.
[5] See id., sec. V.

otherwise.  Thus, summary judgment should be granted on Plaintiff's claims that the Toyota Defendants negligently failed to recall the Tacoma.

### C.    Plaintiff's Punitive Damages Claim Fails As a Matter of Law.

#### 1.  <u>Georgia's Punitive Damages Statute</u>.

Georgia's punitive damages statute permits an award of punitive damages in limited situations:

> (b) Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions *showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences*.

O.C.G.A. 51-12-5.1 (emphasis added).  Mere negligence, even gross negligence, will not support an award of punitive damages.  <u>Harris v. Leader</u>, 231 Ga. App. 709, 712 (1998). A plaintiff bears a high burden to establish punitive liability under Georgia law - the highest burden in a civil case. O.C.G.A. § 51-12-5.1(b). "Clear and convincing" is a more stringent standard than mere preponderance and requires a greater quantum and a high quality of proof in plaintiff's favor. <u>Barber v. Perdue</u>, 194 Ga. App. 287, 289 (1989). "There must be circumstances of aggravation or outrage, such as spite or 'malice,' or fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called willful or wanton."  <u>Lewis v. Suttles Truck Leasing, Inc.</u>, 869 F. Supp. 947, 949 (S.D. Ga. 1994) (quoting <u>Colonial Pipeline</u>, 258 Ga. 115, 365 S.E.2d 827, 832 (1988)).

In <u>Ivy v. Ford Motor Co.</u>, 646 F.3d 769 (11th Cir. 2011), the Eleventh Circuit, relying upon <u>Chrysler Corp. v. Batten</u>, 264 Ga. 723 (1994), held that willful conduct demonstrates "an actual intent to do harm or inflict injury" and "wanton conduct" is that which "is so reckless or so charged with indifference to consequences…[as to be the] equivalent in spirit to actual intent." 646 F.3d at 773. The <u>Ivy</u> court also recognized that "***the wanton and willful standard is not satisfied where there is a bona fide dispute as to the propriety of the defendant's actions***." <u>Id.</u> at 777 (emphasis added). The Eleventh Circuit went on to further explain:

> As a matter of common sense and common experience with respect to the meaning of wanton conduct, merely finding an after-the-fact expert to opine that a product is defective cannot be sufficient to create a jury question on the issue of wantonness—defined as willful conduct based on an actual intention to do harm or wanton conduct that is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit of actual intent—***when the product satisfied the government and industry standards extant at the earlier relevant time***.

<u>Id.</u> (emphasis added). As explained below, it is undisputed that the 2017 Toyota Tacoma's Smart Key System met all applicable government and industry standards that existed as of the date of its initial sale and *even through today*. At most, Toyota's decision not to install automatic engine shut-off in the 2017 Tacoma reflects a bona fide engineering dispute that cannot support the imposition of punitive damages.

**2.  Plaintiff Is Not Entitled to Punitive Damages Where, As Here, There is a Bona Fide Dispute As to the Propriety of the Toyota Defendants' Actions.**

Here, Plaintiff's design expert, Peter Leiss, does not dispute that the 2017 Tacoma fully complied with Federal Motor Vehicle Safety Standard ("FMVSS") 114, the applicable safety standard for automobile starting (ignition) systems promulgated by the National Highway Traffic Safety Administration ("NHTSA"), the federal agency responsible for vehicle safety.  Exhibit 6, p. 47; see also Exhibit 12 at 6.  NHTSA's enabling statute requires FMVSS to "meet the need for motor vehicle safety."  49 U.S.C. § 30111(a).  Therefore, by definition, a vehicle that complies with FMVSS standards meets the need for motor vehicle safety.  It is also undisputed that the 2017 Tacoma complied with the only published industry standard that applies to electronic ignition systems, SAE J2948, entitled "Keyless Ignition Control Design," adopted in January 2011 by the Society of Automotive Engineers ("SAE"), attached as Exhibit 13.  See Exhibit 6, at p. 48.

The evidence demonstrates that the Toyota Defendants not only met the requirements of the applicable federal safety standards, they exceeded them. FMVSS 114, which is intended to reduce thefts and vehicle rollaway accidents, does not require manufacturers to provide additional warnings for vehicles equipped with keyless ignition systems. Nevertheless, the Toyota Defendants' Smart Key System in the 2017 Tacoma incorporated various additional warnings not required by

FMVSS 114, including an exterior buzzer that sounds three times when the driver parks the vehicle, leaves the engine running, closes the door, and exits with the Smart Key fob.  See Exhibit 4, at p. 24.  It is also undisputed that the 2017 Tacoma complies with the only published industry standard that applies to electronic ignition systems (Exhibit 13).  See Exhibit 6, at p. 48.

Beyond the Toyota Defendants' undisputed compliance with FMVSS 114 and SAE J2948, NHTSA's position on Plaintiff's design defect theory -- the alleged need for automatic engine shut-off -- supports Toyota Motor Corporation's ("TMC") design decision not to include automatic shut-off and further demonstrates the absence of any willful and wanton conduct necessary to submit the question of punitive damages to the jury. In December 2011, NHTSA published its Notice of Proposed Rulemaking ("NPRM") regarding a possible amendment to FMVSS 114 to, among other things, "address safety issues arising from increasing variations of keyless ignition controls, and the operation of those controls," including situations where operators inadvertently left keyless ignition vehicles' engines running, thereby "increasing the chances of . . . carbon monoxide poisoning in an enclosed area."  See Exhibit 14. Significantly, in the NPRM, NHTSA expressly recognized the difficulties involved in identifying specific implementation standards, and declined to propose a requirement for automatic engine shut-off:

> NHTSA is not proposing regulatory text to require these automatic shut off systems. We have been unable to conclude that there is a specified

period of time after which the propulsion system should be shut down to effectively address various scenarios mentioned in VOQs submitted to the agency. There are scenarios, such as leaving pets in the vehicle with the air conditioning or heating system on while the driver shops or is at a restaurant, where an automatic shut off of the propulsion system would have adverse results. It is our understanding that some drivers may stay in their vehicles for hours, for example, to sleep, with the air conditioning or heating system on. . . . We believe that the new alert that we are proposing would refocus the driver's attention on the vehicle when s/he is leaving if s/he has inadvertently left the propulsion system active. For these reasons, we tentatively conclude that we do not need to regulate vehicle propulsion automatic shut off systems at this time, however, we request comment on this issue.

See id. Exhibit 14, at 77194-77195. NHTSA has yet to withdraw or amend its position on automatic engine shut-off.[6]

_____

[6] See Exhibit 6, at p. 49 (acknowledging that "I have not seen any proposed rule-making that would require [auto engine shut-off]."). In 2021, Congress passed legislation requiring NHTSA to enact a rule to require automatic engine shut-off for keyless ignition vehicles, with enforcement of the new rule to take effect by September 1, 2024; i.e., for the 2025 model year. See 135 Stat. 820, Public Law 117-58 (Nov. 15, 2021), at sec. 24205(b). That timing was not met and NHTSA currently plans to issue a second NPRM on FMVSS 114 by May 2025. See Exhibit 15 (this exhibit contains confidential information that the Toyota Defendants seek to file under seal), at p. 40.
[7] Exhibit 16 contains confidential information that the Toyota Defendants seek to file under seal.
[8] Exhibit 17 contains confidential information that the Toyota Defendants seek to file under seal.

████████████████████████████████████████

███████████████

TMC's and NHTSA's position to not require automatic engine shut-off for keyless ignition vehicles is also consistent with SAE's Recommended Practice J2948, which the SAE issued in January 2011. The SAE intended J2948 to, among other things, minimize user instigated errors, including "exiting the vehicle while the vehicle propulsion system is enabled." See Exhibit 13. Yet, J2948 makes no mention of automatic engine shut-off. See id.

TMC's decision not to offer automatic engine shut-off for the subject Tacoma also reflects the overall state of industry technology for the 2017 model year. The Toyota Defendants' expert in this case surveyed owners' manuals of 255 models of different vehicles available in the 2017 model year. Of these 255 models, 214 (or 84%) did not offer automatic engine shut-off, while 41 models (or only 16 percent) of the survey population did offer this technology. See Exhibit 12, at p. 6. In the 2017 model year, there were 7 different automotive brands to offer automatic engine shut-off for the keyless ignition vehicles, versus 25 different automotive brands that did not offer this technology. See id. at p. 5. The fact that there were far more vehicle models not offering this technology in 2017 than those that did precludes punitive damages because it demonstrates there was a bona fide difference of opinion within the industry as to whether auto engine shut-off was appropriate or necessary.

In sum, there can be no rational argument that the Toyota Defendants' conduct was outrageous for failing to adopt a design feature where:

- SAE did not endorse in its Recommended Practice for keyless ignition systems;
- NHTSA expressly decided not to recommend in its proposed amendment to FMVSS 114 in December 2011—and to this day has not included in a proposed amendment to FMVSS 114 -- ██████████ ████████████████████████████████
- 84 percent of model vehicles surveyed in the 2017 model year did not offer automatic engine shut-off; and
- Toyota's Smart Key System indisputably complies with FMVSS 114.[9]

Similarly, the fact that the Toyota Defendants did not equip the 2017 Tacoma with an external visual alert or a different audible warning for situations where the driver inadvertently left the engine running cannot constitute willful or wanton conduct that could support the imposition of punitive damages. Plaintiff's expert Peter Leiss could not identify any production vehicle, *even as of today*, that has an external visual alert for the scenario where the operator inadvertently leaves the engine running. See Exhibit 6, at pp. 54-55. Nor could Leiss identify any manufacturers' keyless ignition vehicles that have what he considers to be the proper

---

[9] Toyota recognizes that in Georgia, a manufacturer's compliance with applicable safety regulations may not necessarily preclude punitive damages if there is other evidence of "culpable behavior." See Little v. Ford Motor Co., 2017 WL 6994586 (N.D. Ga. Dec. 21, 2017), at *17; Woodard v. Ford Motor Co., 2007 WL 1858542 (N.D. Ga., June 25, 2007), at *3, citing General Motors Corp. v. Moseley, 213 Ga.App. 875 (1994) overruled on other grounds by Williams v. Harvey, 311 Ga. 439 (2021). However, unlike Little, Woodard, and Moseley, there is no evidence that Toyota failed to address a potential safety risk due to economic considerations. ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

combination of audible and visual external warnings. <u>See id.</u> at pp. 106-107.

Similarly, Plaintiff's human factors expert, Joellen Gill, is "not going to offer

specific opinions about what warnings should have been present" in the 2017

Tacoma. <u>See</u> Exhibit 11, at pp. 65-67. Furthermore, NHTSA in its December 2011

NPRM on FMVSS 114 did not propose that manufacturers utilize an external visual

warning to alert vehicle operators that they had left the engine running. <u>See</u> Exhibit

14.



███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

█████████████

Thus, there is zero evidence of willful or wanton conduct by the Toyota Defendants - let alone clear and convincing proof. At most, Plaintiff alleges that the Toyota Defendants should be liable because they should have introduced automatic engine shut-off a few model years before the 2020 model year and that their warnings were inadequate because they failed to provide a combination of exterior warnings that included a visual alert that no other manufacturer offered. There is no proof upon which reasonable jurors could find the Toyota Defendants liable for punitive damages under Georgia law. See Order from Dotson v. TMC, et al., Civ. Action No. 20-CI-1932, Fayette Circuit Court (Ky.), 8th Div., Jan. 3, 2023 (sustaining Toyota's Motion for Partial Summary Judgment as to punitive damages in carbon monoxide exposure case alleging 2016 model year RAV4's Smart Key System was defective because it lacked visual exterior alerts and automatic engine shut-off), attached as Exhibit 28; cf. Lawson v. FCA US, LLC, 2021 WL 3727236 (W.D. Va., Aug. 23, 2021) (granting complete summary judgment to FCA on a claim

---

[10] Exhibit 18 contains confidential information that the Toyota Defendants seek to file under seal.

that the 2016 model year Dodge keyless ignition car was defectively designed because it lacked automatic engine shut-off).

**D.    Plaintiff's "Joint Venture, Alter Ego, Agency and Piercing the Corporate Veil of Toyota" Are Unsupported and Therefore Fail.**

Plaintiff alleges in Count Five of her Complaint that all the Toyota defendants acted in a joint venture, and as such, they should be treated as one corporate entity and the negligent acts of one can be attributable to all. This premise is inconsistent with Georgia law and the facts in the record.

The "respect for corporate distinctions" is a "bedrock principle" of law "deeply ingrained in our economic and legal systems." U.S. v. Bestfoods, 524 U.S. 51, 61-62 (1998); Anderson v. Abbott, 321 U.S. 349, 362 (1944) ("Limited liability is the rule, not the exception …"). To sustain a claim to pierce a corporate veil, a "Plaintiff must show that the defendant disregarded the separateness of legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate properties, records or control." Fuda v. Kroen, 204 Ga. App. 836, 837 (1992). As shown below, Plaintiff has no such evidence.

All named Toyota defendants - Toyota Motor Corporation ("TMC"), Toyota Motor North America, Inc. ("TMNA"), Toyota Motor Sales, U.S.A., Inc. ("TMS"), Toyota Motor Engineering & Manufacturing North America, Inc. (TEMA), and Toyota Motor Manufacturing, Texas, Inc. ("TMMTX") - are separate legal entities. While Plaintiffs undertook absolutely no discovery to dispute this, the Toyota

Defendants made it clear through their written discovery responses that each entity was separate and distinct.

Specifically, TMC is responsible for the overall design, development, and testing of Toyota and Lexus motor vehicles. Exhibit 19, pg. 1. TMC also manufactures and/or assembles, in the ordinary course of its business, numerous models of Toyota and Lexus motor vehicles. Id. at pp. 1-2.

TMNA is responsible for the business efficiency and coordination among Toyota's North American sales, manufacturing, and engineering operations. Exhibit 20, pp. 1-2. TMNA's functions include external and governmental affairs, technical and regulatory affairs, corporate and project planning, research and planning, and administrative functions. Id.

TMS is the authorized importer and a distributor of Toyota and Lexus motor vehicles in certain geographic areas of the continental United States. Exhibit 21, pg. 1. TMS does not, and did not design, developmentally test, manufacture, or assemble Toyota or Lexus motor vehicles in the ordinary course of its business. Id. at pp. 1-2.

TEMA supports Toyota's manufacturing operations throughout North America, and the planning and administration functions of Toyota's North American manufacturing, research, and development operations. Exhibit 22, pp. 1-2. TEMA also continues to direct North American research and development from TEMA's

Toyota Technical Center facilities in Ann Arbor, Michigan and Saline, Michigan. Id. at p. 2.

TMMTX is the manufacturer of certain Toyota vehicles. Exhibit 23, pg. 1. TMMTX does not design, developmentally test, distribute, or market Toyota motor vehicles in the ordinary course of business. Id. at pp. 1-2.

As highlighted above, each of these entities perform separate functions and, as such, responded separately to Plaintiff's various discovery requests throughout the course of this case. Notably, in the various Toyota Defendants' general objections, each of the entities pointed this fact out. For example, in TMNA's general objection No. 5, it stated:

> TMNA objects that Plaintiff's definition of "Toyota," "you," "your," and "Defendant" is overly broad, overreaching, and goes beyond the scope of permissible discovery to the extent it includes independent corporate entities such as subsidiaries, predecessors, successors and parents, past officers and employees, "corporate affiliates," and others, including agents, representatives, attorneys, independent contractors, advisors, and consultants. TMNA also objects to the extent the definitions ask TMNA to respond on behalf of entities other than itself, as well as on behalf of agents and employees of TMNA, or of other entities. These definitions are overly broad, overreaching, and beyond the scope of permissible discovery. These responses are on behalf of TMNA only, and, accordingly, TMNA has construed such terms to refer to TMNA only.

Exhibit 20, pp. 4-5. Each named Toyota Defendant's Interrogatory responses contained a similar general objection clarifying for Plaintiff that each named entity has its own identity and its own knowledge (or lack thereof) of the questions

presented. In their responses, the entities continuously outlined their roles and directed Plaintiff to the correct entity that may have responsive information.

Conversely, Plaintiff did absolutely no discovery on this issue. Plaintiff did not serve a single Interrogatory or Request for Production directed at the distinctions between the Toyota defendants. Further, Plaintiff elected not to take a single Rule 30(b)(6) deposition, let alone a 30(b)(6) deposition for each of these separate entities to address this claim. Plaintiff thus can point to no evidence to show that each of these entities engaged in a manner that would justify a claim for joint venture, alter ego, agency, or piercing the corporate veil. As such, summary judgment on this claim is warranted.

### E.    Plaintiff's "Joint and Several Liability of Defendants" Claim Fails Because Georgia Abolished Joint and Several Liability.

Plaintiff alleges in her Complaint that the Toyota defendants "jointly and concurrently committed tortious acts and omissions" and are "jointly and severally liable to Plaintiff for the claims described herein." Plaintiff's Complaint ¶117. However, joint and several liability was plainly abolished by statute in 2005. According to the current law in Georgia:

> Where an action is brought against one or more persons for injury to person or property and the plaintiff is to some degree responsible for the injury or damages claimed, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall determine the percentage of fault of the plaintiff and the judge shall reduce the amount of damages otherwise awarded to the plaintiff in proportion to his or her percentage of fault. . . . Damages apportioned by the trier of fact as

provided in this Code section shall be the liability of each person against whom they are awarded, ***shall not be a joint liability among the persons liable***, and shall not be subject to any right of contribution.

O.C.G.A. § 51-12-33 (a) – (b) (emphasis added).

Because joint and several liability has been statutorily abolished in Georgia, Plaintiff cannot pursue any damages under a theory of joint and several liability. Indeed, instructing the jury on joint and several liability is contrary to O.C.G.A. § 51-12-33 and would require a new trial. See I.A. Group, Ltd. Co. v. RMNANDCO, Inc., 336 Ga. App. 461 (2016); see also Zurich American Ins. Co. v. Heard, 321 Ga. App. 325, 330 (2013) ("Based upon the plain language of subsection (b), joint liability and the right of contribution no longer exist when damages have been apportioned by the trier of fact under this subsection").

O.C.G.A. § 51-12-33 adopts a *broad* comparative fault statutory scheme. See Zaldivar v. Prickett, 297 Ga. 589 (2015); see also Wade v. Allstate Fire and Cas. Co., 324 Ga. App. 491 (2013), 751 S.E.2d 153 (2013) ("The purpose of the apportionment statute, OCGA § 51-12-33, is to ensure that each tortfeasor responsible for the plaintiff's harm, including the plaintiff himself, be held responsible only for his or her respective share of the harm.")

The Toyota Defendants' potential liabilities in this case are several – the separate Toyota entities can each be held liable to Plaintiff, if at all, only based upon their own proportionate fault, when compared with that of plaintiff, decedent, and

any other designated liable nonparty. Therefore, the Court should grant summary judgment on Plaintiff's claim for joint and several liability.

## III.  <u>CONCLUSION</u>

For the foregoing reasons, the Toyota Defendants respectfully request that this Court grant summary judgment as to Plaintiff's failure to warn, failure to recall, punitive damages, joint venture-veil piercing, and joint and several liability claims. The sole liability claims that can survive summary judgment are whether the 2017 Tacoma was defectively or negligently designed because it did not include automatic engine shut-off.

Respectfully submitted this 3rd day of January, 2025.

WATSON SPENCE LLP

*/s/ Michael R. Boorman*

Michael R. Boorman
Georgia Bar No.: 067798
Philip A. Henderson
Georgia Bar No.: 604769
Bank of America Plaza
600 Peachtree Street NE, Suite 2320
Atlanta, GA 30308
Telephone: 229-436-1545
mboorman@watsonspence.com
phenderson@watsonspence.com

Bard D. Borkon
(*Admitted Pro Hac Vice*)
Jessica Garrity
(*Admitted Pro Hac Vice*)

BOWMAN AND BROOKE LLP
150 S. 5th Street, Suite 3000
Minneapolis, MN 55402
Telephone:  612-339-8682
Bard.borkon@bowmanandbrooke.com
Jessica.garrity@bowmanandbrooke.com

and

Harold D. Melton
Georgia Bar No.:  501570
Elizabeth P. Waldbeser
Georgia Bar No.: 430797
Troutman Pepper Hamilton Sanders LLP
600 Peachtree Street NE, Suite 3000
Atlanta, GA  30308
Telephone: 404.885.3000
Harold.melton@troutman.com
Elizabeth.waldbeser@troutman.com

***Attorneys for Toyota Defendants***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

James E. Butler, Jr.
Ramsey B. Prather
Daniel E. Philyaw
Allison B. Bailey
Caroline W. Schley
BUTLER PRATHER LLP
105 13th Street
Post Office Box 2766
Columbus, GA 31902
jim@butlerprather.com
ramsey@butlerprather.com
dan@butlerprather.com
allison@butlerprather.com
caroline@butlerprather.com

This 3rd day of January, 2025.

WATSON SPENCE LLP

*/s/ Michael R. Boorman*

Michael R. Boorman
Georgia Bar No.: 067798

27